**CASE NO. 23-1069**

---

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

---

STEPHEN FOOTE, individually and as Guardian and next friend of B.F. and G.F.,
minors and MARISSA SILVESTRI, individually and as Guardian and next friend
of B.F. and G.F., minors,
Plaintiffs - Appellants,

JONATHAN FELICIANO; SANDRA SALMERON,
Plaintiffs,

v.

LUDLOW SCHOOL COMMITTEE; TODD GAZDA, former Superintendent;
LISA NEMETH, Interim Superintendent; STACY MONETTE, Principal, Baird
Middle School; MARIE-CLAIRE FOLEY, school counselor, Baird Middle
School; JORDAN FUNKE, former librarian, Baird Middle School; TOWN OF
LUDLOW

Defendants - Appellees.

Appeal from the United States District Court for the District of Massachusetts
Springfield Division

Case No. 3:22-cv-30041-MGM

**PLAINTIFFS-APPELLANTS' APPENDIX**

Andrew Beckwith
Samuel J. Whiting
Massachusetts Family Institute
401 Edgewater Place, Suite 580
Wakefield, MA 01880
781.569.0400
andrew@mafamily.org
sam@mafamily.org

Mary E. McAlister
Vernadette R. Broyles
Child & Parental Rights Campaign, Inc.
5805 State Bridge Rd., Suite G310
Johns Creek, GA 30097
770.448.4525
mmcalister@childparentrights.org
vbroyles@childparentrights.org
Attorneys for Plaintiffs – Appellants

**TABLE OF CONTENTS**

1. Docket Sheet for *Foote v. Ludlow,* 3:22-cv-30041-MGM ...................................................1

2. Amended Complaint .............................................................................................11

   Filed 6/21/2022

3. Statement by Todd Gazda...................................................................................98

   Made 6/8/2021

4. Transcript of Oral Argument on Motion to Dismiss.......................................100

   Argued 10/17/2022

5. Order on Defendants' Motion to Dismiss........................................................151

   Issued 12/14/2022

6. Notice of Appeal ...............................................................................................170

   Filed 1/11/2023

APPEAL

# United States District Court
## District of Massachusetts (Springfield)
## CIVIL DOCKET FOR CASE #: 3:22-cv-30041-MGM

Foote et al v. Ludlow School Committee et al
Assigned to: Judge Mark G. Mastroianni
Case in other court: USCA - First Circuit, 23-01069
Cause: 42:1983 Civil Rights Act

Date Filed: 04/12/2022
Date Terminated: 12/14/2022
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: Federal Question

### Plaintiff

**Mr. Stephen Foote**                    represented by    **Mary E. McAlister**
                                                           Child & Parental Rights Campaign, Inc.
                                                           5805 State Bridge Rd., Suite G310
                                                           Johns Creek, GA 30097
                                                           770-448-4525
                                                           Email: mmcalister@childparentrights.org
                                                           *LEAD ATTORNEY*
                                                           *PRO HAC VICE*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Vernadette Ramirez Broyles**
                                                           Child & Parental Rights Campaign
                                                           5805 State Bridge Road, Suite G310
                                                           Johns Creek, GA 30092
                                                           770-448-4525
                                                           Email: vbroyles@childparentrights.org
                                                           *LEAD ATTORNEY*
                                                           *PRO HAC VICE*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Andrew D. Beckwith**
                                                           5 Batchelder Park
                                                           Wenham, MA 01984
                                                           978-518-1955
                                                           Email: andrew.beckwith@gmail.com
                                                           *ATTORNEY TO BE NOTICED*

### Plaintiff

**Marissa Silvestri**                    represented by    **Mary E. McAlister**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *PRO HAC VICE*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Vernadette Ramirez Broyles**
                                                           (See above for address)

*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Andrew D. Beckwith**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Jonathan Feliciano**                    represented by    **Mary E. McAlister**
*TERMINATED: 10/17/2022*                                   (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *PRO HAC VICE*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Vernadette Ramirez Broyles**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *PRO HAC VICE*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Andrew D. Beckwith**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Sandra Salmeron**                       represented by    **Mary E. McAlister**
*TERMINATED: 10/17/2022*                                   (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *PRO HAC VICE*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Vernadette Ramirez Broyles**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *PRO HAC VICE*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **Andrew D. Beckwith**
                                                           (See above for address)
                                                           *ATTORNEY TO BE NOTICED*

<u>**Plaintiff**</u>

**Massachusetts Association of School**    represented by    **Massachusetts Association of School**
**Superintendents**                                        **Superintendents**
                                                           209 Burlington Rd
                                                           Suite 113
                                                           Bedford, MA 01730
                                                           PRO SE

V.

<u>**Defendant**</u>

**Ludlow School Committee**                    represented by  **David S. Lawless**
                                                              Robinson Donovan, P.C.
                                                              Tower Square
                                                              1500 Main Street
                                                              Suite 2300
                                                              Springfeild, MA 01115
                                                              413-732-2301
                                                              Fax: 413-785-4658
                                                              Email: dlawless@robinson-donovan.com
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Nancy Frankel Pelletier**
                                                              Robinson Donovan, PC
                                                              1500 Main Street
                                                              Suite 2300
                                                              Springfield, MA 01115
                                                              413-732-2301
                                                              Fax: 413-785-4658
                                                              Email: npelletier@robinson-donovan.com
                                                              *ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>
**Lisa Nemeth**                                represented by  **David S. Lawless**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Nancy Frankel Pelletier**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>
**Todd Gazda**                                 represented by  **David S. Lawless**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Nancy Frankel Pelletier**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>
**Stacy Monette**                              represented by  **David S. Lawless**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

                                                              **Nancy Frankel Pelletier**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

<u>**Defendant**</u>
**Marie-Claire Foley**                         represented by  **David S. Lawless**
                                                              (See above for address)
                                                              *ATTORNEY TO BE NOTICED*

**Nancy Frankel Pelletier**
(See above for address)
*ATTORNEY TO BE NOTICED*

<u>Defendant</u>

**Jordan Funke**                    represented by    **David S. Lawless**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

                                                      **Nancy Frankel Pelletier**
                                                      (See above for address)
                                                      *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

**GLBTQ Legal Advocates & Defenders**    represented by    **Bennett H. Klein**
                                                          GLBTQ Legal Advocates & Defenders
                                                          18 Tremont Street, Suite 950
                                                          Suite 950
                                                          Boston, MA 02108
                                                          617-426-1350
                                                          Email: bklein@glad.org
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Christopher M. Erchull**
                                                          GLBTQ Legal Advocates & Defenders
                                                          18 Tremont Street
                                                          Boston, MA 02108
                                                          617-426-1350
                                                          Email: cerchull@glad.org
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Gary D. Buseck**
                                                          GLBTQ Legal Advocates & Defenders
                                                          Suite 950
                                                          18 Tremont St
                                                          Boston, MA 02108
                                                          617.426.1350
                                                          Fax: 617-426-3594
                                                          Email: gbuseck@glad.org
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Mary L. Bonauto**
                                                          GLBTQ Legal Advocates and Defenders
                                                          18 Tremont Street
                                                          Suite 950
                                                          Boston, MA 02108
                                                          617-426-1350
                                                          Fax: 617-426-3590
                                                          Email: mbonauto@glad.org
                                                          *ATTORNEY TO BE NOTICED*

<u>Amicus</u>

| | | |
|---|---|---|
| **Massachusetts Association of School Superintendents** | represented by | **Bennett H. Klein**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Christopher M. Erchull**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Gary D. Buseck**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| | | **Mary L. Bonauto**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Amicus** | | |
| **Family Institute of Connecticut** | represented by | **Carl F. Schmitt**<br>Schmitt & Dillon<br>233 Main Street<br>Lancaster, MA 01523<br>978-368-7500<br>Fax: 978-368-7501<br>Email: cschmitt@sdslawyers.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

Email All Attorneys

Email All Attorneys and Additional Recipients

| Date Filed | # | Docket Text |
|---|---|---|
| 04/12/2022 | 1 | COMPLAINT against All Defendants Filing fee: $ 402, receipt number AMADC-9272303 (Fee Status: Filing Fee paid), filed by Jonathan Feliciano, Stephen Foote, Sandra Salmeron, Marissa Silvestri. (Attachments: # 1 Civil Cover Sheet, # 2 JS45 Local Category Sheet)(Beckwith, Andrew) (Entered: 04/12/2022) |
| 04/13/2022 | 2 | ELECTRONIC NOTICE of Case Assignment. Judge Mark G. Mastroianni assigned to case. If the trial Judge issues an Order of Reference of any matter in this case to a Magistrate Judge, the matter will be transmitted to Magistrate Judge Katherine A. Robertson. (Finn, Mary) (Entered: 04/13/2022) |
| 04/13/2022 | 3 | Summons Issued as to All Defendants. **Counsel receiving this notice electronically should download this summons, complete one for each defendant and serve it in accordance with Fed.R.Civ.P. 4 and LR 4.1. Summons will be mailed to plaintiff(s) not receiving notice electronically for completion of service.** (Zamorski, Michael) (Entered: 04/13/2022) |
| 04/27/2022 | 4 | AFFIDAVIT OF SERVICE Executed by Marissa Silvestri, Stephen Foote, Sandra Salmeron. Todd Gazda served on 4/15/2022, answer due 5/6/2022. Acknowledgement filed by Marissa Silvestri; Stephen Foote; Sandra Salmeron. (Beckwith, Andrew) (Entered: 04/27/2022) |
| 04/27/2022 | 5 | AFFIDAVIT OF SERVICE Executed by Jonathan Feliciano, Marissa Silvestri, Stephen Foote, Sandra Salmeron. Marie-Claire Foley served on 4/27/2022, answer due 5/18/2022. |

|  |  | Acknowledgement filed by Jonathan Feliciano; Marissa Silvestri; Stephen Foote; Sandra Salmeron. (Beckwith, Andrew) (Entered: 04/27/2022) |
|---|---|---|
| 04/27/2022 | [6](#) | AFFIDAVIT OF SERVICE Executed by Jonathan Feliciano, Marissa Silvestri, Stephen Foote, Sandra Salmeron. Lisa Nemeth served on 4/27/2022, answer due 5/18/2022. Acknowledgement filed by Jonathan Feliciano; Marissa Silvestri; Stephen Foote; Sandra Salmeron. (Beckwith, Andrew) (Entered: 04/27/2022) |
| 04/27/2022 | [7](#) | AFFIDAVIT OF SERVICE Executed by Jonathan Feliciano, Marissa Silvestri, Stephen Foote, Sandra Salmeron. Ludlow School Committee served on 4/27/2022, answer due 5/18/2022. Acknowledgement filed by Jonathan Feliciano; Marissa Silvestri; Stephen Foote; Sandra Salmeron. (Beckwith, Andrew) (Entered: 04/27/2022) |
| 04/27/2022 | [8](#) | AFFIDAVIT OF SERVICE Executed by Jonathan Feliciano, Marissa Silvestri, Stephen Foote, Sandra Salmeron. Stacy Monette served on 4/27/2022, answer due 5/18/2022. Acknowledgement filed by Jonathan Feliciano; Marissa Silvestri; Stephen Foote; Sandra Salmeron. (Beckwith, Andrew) (Entered: 04/27/2022) |
| 04/28/2022 | [9](#) | NOTICE of Appearance by Nancy Frankel Pelletier on behalf of Marie-Claire Foley, Jordan Funke, Todd Gazda, Ludlow School Committee, Stacy Monette, Lisa Nemeth (Pelletier, Nancy) (Entered: 04/28/2022) |
| 04/28/2022 | [10](#) | NOTICE of Appearance by David S. Lawless on behalf of Marie-Claire Foley, Jordan Funke, Todd Gazda, Ludlow School Committee, Stacy Monette, Lisa Nemeth (Lawless, David) (Entered: 04/28/2022) |
| 04/28/2022 | [11](#) | MOTION for Leave to Appear Pro Hac Vice for admission of Vernadette R. Broyles Filing fee: $ 100, receipt number BMADC-9297732 by Jonathan Feliciano, Stephen Foote, Sandra Salmeron, Marissa Silvestri.(Beckwith, Andrew) (Entered: 04/28/2022) |
| 04/28/2022 | [12](#) | MOTION for Leave to Appear Pro Hac Vice for admission of Mary E. McAlister Filing fee: $ 100, receipt number AMADC-9297783 by Jonathan Feliciano, Stephen Foote, Sandra Salmeron, Marissa Silvestri.(Beckwith, Andrew) (Entered: 04/28/2022) |
| 04/29/2022 | [13](#) | MOTION for Extension of Time to 06/28/2022 to File Answer re [1](#) Complaint, *or to file motion to dismiss* by Marie-Claire Foley, Jordan Funke, Todd Gazda, Ludlow School Committee, Stacy Monette, Lisa Nemeth. (Attachments: # [1](#) Exhibit Exhibit 1)(Lawless, David) (Entered: 04/29/2022) |
| 04/29/2022 | 14 | Judge Mark G. Mastroianni: ELECTRONIC ORDER entered. Given the time-sensitive nature of [13](#) Defendants' Motion for an Extension of Time in which to Respond to Plaintiffs' Complaint, Plaintiffs opposition, if any, shall be due on or before 5/6/2022. (Zamorski, Michael) (Entered: 04/29/2022) |
| 05/06/2022 | [15](#) | AFFIDAVIT OF SERVICE Executed by Jonathan Feliciano, Marissa Silvestri, Stephen Foote, Sandra Salmeron. All Defendants. Acknowledgement filed by Jonathan Feliciano, Marissa Silvestri, Stephen Foote, Sandra Salmeron. (Beckwith, Andrew) (Entered: 05/06/2022) |
| 05/06/2022 | [16](#) | MEMORANDUM in Opposition re [13](#) MOTION for Extension of Time to 06/28/2022 to File Answer re [1](#) Complaint, *or to file motion to dismiss* filed by Jonathan Feliciano, Stephen Foote, Sandra Salmeron, Marissa Silvestri. (Beckwith, Andrew) (Entered: 05/06/2022) |
| 05/10/2022 | 17 | Judge Mark G. Mastroianni: ELECTRONIC ORDER entered granting in part [13](#) Defendants' Motion for an Extension of Time in which to Respond to Plaintiffs' Complaint. Defendants' response to Plaintiffs Complaint shall be due forty-five days from the date of this order. Defendants' request that their deadline to respond to the complaint be delayed until after Plaintiffs file a notice of constitutional challenge as set forth in Fed. R. Civ. P. |

| | | |
|---|---|---|
| | | 5.1 is denied. Rule 5.1 requires the filing of notice with a state attorney general only when the constitutionality of a state (or federal) statute is drawn into question. Plaintiffs have clarified in their response (Dkt. No. 16) that their complaint does not contest the constitutionality of Mass. Gen. Laws c. 76, s. 5 and such challenge is waived. Plaintiffs reference to the statute is not sufficient to put its constitutionality in doubt. (Zamorski, Michael) (Entered: 05/10/2022) |
| 05/23/2022 | 18 | Judge Mark G. Mastroianni: ELECTRONIC ORDER entered granting 11 Motion for Leave to Appear Pro Hac Vice Added Vernadette R. Broyles.<br><br>**Attorneys admitted Pro Hac Vice must have an individual PACER account, not a shared firm account, to electronically file in the District of Massachusetts. To register for a PACER account, go the Pacer website at https://pacer.uscourts.gov/register-account.**<br><br>Pro Hac Vice Admission Request Instructions https://www.mad.uscourts.gov/caseinfo/nextgen-pro-hac-vice.htm.<br><br>A Notice of Appearance must be entered on the docket by the newly admitted attorney.<br><br>(Zamorski, Michael) (Entered: 05/23/2022) |
| 05/23/2022 | 19 | Judge Mark G. Mastroianni: ELECTRONIC ORDER entered granting 12 Motion for Leave to Appear Pro Hac Vice Added MARY E. MCALISTER.<br><br>**Attorneys admitted Pro Hac Vice must have an individual upgraded PACER account, not a shared firm account, to electronically file in the District of Massachusetts. Counsel may need to link their CM/ECF account to their upgraded individual pacer account.** Instructions on how to link CM/ECF accounts to upgraded pacer account can be found at https://www.mad.uscourts.gov/caseinfo/nextgen-current-pacer-accounts.htm#link-account.<br><br>(Zamorski, Michael) (Entered: 05/23/2022) |
| 05/23/2022 | 20 | NOTICE of Appearance by Mary E. McAlister on behalf of Jonathan Feliciano, Stephen Foote, Sandra Salmeron, Marissa Silvestri (McAlister, Mary) (Entered: 05/23/2022) |
| 05/23/2022 | 21 | NOTICE of Appearance by Vernadette Ramirez Broyles on behalf of Jonathan Feliciano, Stephen Foote, Sandra Salmeron, Marissa Silvestri (Broyles, Vernadette) (Entered: 05/23/2022) |
| 06/21/2022 | 22 | AMENDED COMPLAINT against All Defendants, filed by Jonathan Feliciano, Stephen Foote, Sandra Salmeron, Marissa Silvestri.(McAlister, Mary) (Entered: 06/21/2022) |
| 06/29/2022 | 23 | Assented to MOTION for Extension of Time to 07/29/2022 to respond to amended complaint by Marie-Claire Foley, Jordan Funke, Todd Gazda, Ludlow School Committee, Stacy Monette, Lisa Nemeth.(Lawless, David) (Entered: 06/29/2022) |
| 06/30/2022 | 24 | Judge Mark G. Mastroianni: ELECTRONIC ORDER entered granting 23 Defendants' Assented-to Motion for an Extension of Time in which to Respond to Plaintiffs' Amended Complaint. Defendants' response to Plaintiffs Amended Complaint shall be due on or before July 29, 2022. (Zamorski, Michael) (Entered: 06/30/2022) |
| 07/29/2022 | 25 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Marie-Claire Foley, Jordan Funke, Todd Gazda, Ludlow School Committee, Stacy Monette, Lisa Nemeth. (Lawless, David) (Entered: 07/29/2022) |

| 07/29/2022 | 26 | MOTION for Leave to File *Excess Pages* by Marie-Claire Foley, Jordan Funke, Todd Gazda, Ludlow School Committee, Stacy Monette, Lisa Nemeth. (Attachments: # 1 Exhibit Memorandum in Support of Motion to Dismiss)(Lawless, David) (Entered: 07/29/2022) |
|---|---|---|
| 08/01/2022 | 27 | Judge Mark G. Mastroianni: Electronic Order entered granting 26 Defendants' Motion for Leave to File Excess Pages. Counsel for Defendant, should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. (Zamorski, Michael) (Entered: 08/01/2022) |
| 08/01/2022 | 28 | MEMORANDUM in Support re 25 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Marie-Claire Foley, Jordan Funke, Todd Gazda, Ludlow School Committee, Stacy Monette, Lisa Nemeth. (Attachments: # 1 Exhibit 1)(Lawless, David) (Entered: 08/01/2022) |
| 08/12/2022 | 29 | MEMORANDUM in Opposition re 25 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Stephen Foote, Marissa Silvestri. (McAlister, Mary) (Entered: 08/12/2022) |
| 08/31/2022 | 30 | Assented to MOTION for Leave to File *Reply* by Marie-Claire Foley, Jordan Funke, Todd Gazda, Ludlow School Committee, Stacy Monette, Lisa Nemeth.(Lawless, David) (Entered: 08/31/2022) |
| 09/02/2022 | 31 | Judge Mark G. Mastroianni: ELECTRONIC ORDER entered granting 30 Defendants' Assented-Motion for Leave to File a Reply. Defendants shall file a reply not to exceed five pages of substantive material. Counsel for Defendants, should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. (Zamorski, Michael) (Entered: 09/02/2022) |
| 09/09/2022 | 32 | REPLY to Response to 25 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by Marie-Claire Foley, Jordan Funke, Todd Gazda, Ludlow School Committee, Stacy Monette, Lisa Nemeth. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(Lawless, David) (Entered: 09/09/2022) |
| 09/12/2022 | 33 | Judge Mark G. Mastroianni: ELECTRONIC ORDER entered. The court will schedule a hearing in this matter to take place at Western New England University School of Law, which is located at 1215 Wilbraham Road, Springfield, MA, in the moot courtroom at 12:00 p.m. on October 17, 2022. Counsel should be aware that law students will be in attendance and courtroom technology may be limited. The court has allotted up to an hour for arguments in this case, to be split between the parties; counsel should be prepared to make comprehensive arguments for the benefit of the law students. In order to adequately plan for this event, the parties are instructed that any motion for a continuance (or similar requests or actions which may affect the hearing) shall be filed no later than September 26, 2022.(Rivera, Christina) (Entered: 09/12/2022) |
| 09/12/2022 | 34 | ELECTRONIC NOTICE Setting Hearing on Motion: 25 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM : Motion Hearing set for **10/17/2022 at 12:00 PM** in Springfield before Judge Mark G. Mastroianni.<br><br>**\*\*PLEASE NOTE: This hearing will take place at: Western New England University School of Law: 1215 Wilbraham Road, Springfield, MA, in the moot courtroom\*\*** (Rivera, Christina) (Entered: 09/12/2022) |
| 10/07/2022 | 35 | MOTION for Leave to File *Amici Curiae Memorandum in Support of Defendants Motion to Dismiss* by GLBTQ Legal Advocates & Defenders, Massachusetts Association of School Superintendents. (Attachments: # 1 Exhibit Memorandum of Law of Amicus |

| | | |
|---|---|---|
| | | Curiae in Support of Defendants' Motion to Dismiss)(Erchull, Christopher) (Entered: 10/07/2022) |
| 10/10/2022 | 36 | Opposition re 35 MOTION for Leave to File *Amici Curiae Memorandum in Support of Defendants Motion to Dismiss* filed by Stephen Foote, Marissa Silvestri. (McAlister, Mary) (Entered: 10/10/2022) |
| 10/11/2022 | 37 | Judge Mark G. Mastroianni: Electronic Order entered granting 35 Motion by GLBTQ Legal Advocates & Defenders and the Massachusetts Association of School Superintendents for Leave to File *Amici Curiae* Memorandum in Support of Defendants' Motion to Dismiss. The hearing on Defendants' Motion to Dismiss will continue as scheduled. The court will consider any additional motions for leave to make amicus filed on or before 10/21/2022 before issuing a decision on Defendants Motion to Dismiss. Counsel for GLAD and M.A.S.S. should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. (Zamorski, Michael) (Entered: 10/11/2022) |
| 10/11/2022 | 38 | MEMORANDUM in Support re 35 MOTION for Leave to File *Amici Curiae Memorandum in Support of Defendants Motion to Dismiss*, 25 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM filed by GLBTQ Legal Advocates & Defenders, Massachusetts Association of School Superintendents. (Erchull, Christopher) (Entered: 10/11/2022) |
| 10/12/2022 | 39 | NOTICE of Appearance by Christopher M. Erchull on behalf of GLBTQ Legal Advocates & Defenders, Massachusetts Association of School Superintendents (Erchull, Christopher) (Entered: 10/12/2022) |
| 10/13/2022 | 40 | NOTICE of Appearance by Gary D. Buseck on behalf of GLBTQ Legal Advocates & Defenders, Massachusetts Association of School Superintendents (Buseck, Gary) (Entered: 10/13/2022) |
| 10/13/2022 | 41 | NOTICE of Appearance by Mary L. Bonauto on behalf of GLBTQ Legal Advocates & Defenders, Massachusetts Association of School Superintendents (Bonauto, Mary) (Entered: 10/13/2022) |
| 10/13/2022 | 42 | NOTICE of Appearance by Bennett H. Klein on behalf of GLBTQ Legal Advocates & Defenders, Massachusetts Association of School Superintendents (Klein, Bennett) (Entered: 10/13/2022) |
| 10/17/2022 | | Electronic Clerk's Notes for proceedings held before Judge Mark G. Mastroianni: By Plaintiff's Oral Motion, Jonathan Feliciano and Sandra Salmeron terminated. (Attorneys present: Atty McAlister, Atty Beckwith, Atty Lawless, Atty Frankel Pelletier) (Rivera, Christina) (Entered: 10/19/2022) |
| 10/19/2022 | 43 | Electronic Clerk's Notes for proceedings held before Judge Mark G. Mastroianni: Motion Hearing held on 10/19/2022. (Attorneys present: Atty McAlister, Atty Beckwith, Atty Lawless, Atty Frankel Pelletier)<br><br>Plaintiffs moves to remove Plaintiff(s): Jonathan Feliciano and Sandra Salmeron from suit. Court allows oral Motion to remove named plaintiffs. Court hears arguments re 25 DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM . Court takes matter under advisement. A separate Order shall Issue.<br><br>(Court Reporter: Leigh Gershowitz, email: leighjoeem@gmail.com.) (Rivera, Christina) (Entered: 10/19/2022) |
| 10/21/2022 | 44 | Amicus Curiae APPEARANCE entered by Carl F. Schmitt on behalf of Family Institute of Connecticut. (Schmitt, Carl) (Entered: 10/21/2022) |

| 10/21/2022 | 45 | MOTION for Leave to File *Amicus Curiae Memorandum in Opposition to Defendants' Motion to Dismiss* by Family Institute of Connecticut. (Attachments: # 1 Exhibit Amicus Memorandum of Law)(Schmitt, Carl) (Entered: 10/21/2022) |
| --- | --- | --- |
| 10/25/2022 | 46 | Judge Mark G. Mastroianni: Electronic Order entered granting 45 Motion of Family Institute of Connecticut for Leave to File Amicus Curiae Memorandum in Opposition to Defendants' Motion to Dismiss Plaintiffs' First Amended Complaint. Counsel for Family Institute of Connecticut should now file the document for which leave to file has been granted in accordance with the CM/ECF Administrative Procedures. (Zamorski, Michael) (Entered: 10/25/2022) |
| 10/26/2022 | 47 | AMICUS BRIEF filed by Family Institute of Connecticut *In Opposition to Defendants' Motion to Dismiss*. (Schmitt, Carl) (Entered: 10/26/2022) |
| 10/26/2022 | 48 | Transcript of Hearing held on October 17, 2022, before Judge Mark G. Mastroianni. The Transcript may be purchased through the Court Reporter, viewed at the public terminal, or viewed through PACER after it is released. Court Reporter Name and Contact Information: Leigh B. Gershowitz, leighjoeem@gmail.com. Redaction Request due 11/16/2022. Redacted Transcript Deadline set for 11/28/2022. Release of Transcript Restriction set for 1/24/2023. (Coppola, Katelyn) (Entered: 11/04/2022) |
| 10/26/2022 | 49 | NOTICE is hereby given that an official transcript of a proceeding has been filed by the court reporter in the above-captioned matter. Counsel are referred to the Court's Transcript Redaction Policy, available on the court website at http://www.mad.uscourts.gov/caseinfo/transcripts.htm (Coppola, Katelyn) (Entered: 11/04/2022) |
| 11/07/2022 | 50 | Notice of Supplemental Authorities re 25 MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM (McAlister, Mary) (Entered: 11/07/2022) |
| 12/14/2022 | 51 | Judge Mark G. Mastroianni: ORDER entered granting 25 Motion to Dismiss for Failure to State a Claim. (Zamorski, Michael) (Entered: 12/14/2022) |
| 01/11/2023 | 52 | NOTICE OF APPEAL as to 51 Order on Motion to Dismiss for Failure to State a Claim by Stephen Foote, Marissa Silvestri Filing fee: $ 505, receipt number AMADC-9663258 Fee Status: Not Exempt. NOTICE TO COUNSEL: A Transcript Report/Order Form, which can be downloaded from the First Circuit Court of Appeals web site at http://www.ca1.uscourts.gov MUST be completed and submitted to the Court of Appeals. **Counsel shall register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf. Counsel shall also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at http://www.ca1.uscourts.gov/cmecf.** US District Court Clerk to deliver official record to Court of Appeals by 1/31/2023. (McAlister, Mary) (Entered: 01/11/2023) |
| 01/11/2023 | 53 | Certified and Transmitted Abbreviated Electronic Record on Appeal to US Court of Appeals re 52 Notice of Appeal (Paine, Matthew) (Entered: 01/11/2023) |
| 01/12/2023 | 54 | USCA Case Number 23-1069 for 52 Notice of Appeal, filed by Marissa Silvestri, Stephen Foote. (Paine, Matthew) (Entered: 01/12/2023) |

| **PACER Service Center** |
| --- |
| **Transaction Receipt** |
| 03/02/2023 15:26:14 |

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

SPRINGFIELD DIVISION


STEPHEN FOOTE, individually, and as )
Guardian and next friend of B.F. and G.F. )          Case No. 3:22-cv-30041-MGM
minors, MARISSA SILVESTRI, )
individually and as Guardian and )          AMENDED COMPLAINT
next friend of B.F. and G.F., minors, )          FOR INJUNCTIVE RELIEF,
JONATHAN FELICIANO, )          DECLARATORY
SANDRA SALMERON, )          JUDGMENT, AND
                                                      )          DAMAGES
                         Plaintiffs, )
                                                      )          JURY TRIAL REQUESTED
                                                      )
v. )
                                                      )
TOWN OF LUDLOW, LUDLOW )
SCHOOL COMMITTEE, LISA NEMETH, )
individually and in her official capacity )
as Interim Superintendent of Ludlow Public )
Schools, TODD GAZDA, individually, )
and in his official capacity as former )
Superintendent of  Ludlow Public Schools, )
STACY MONETTE, individually and in )
her official capacity as Principal of Baird )
Middle School, MARIE-CLAIRE FOLEY, )
individually and in her official capacity )
as school counselor for Baird Middle School)
JORDAN FUNKE, individually and in her )
official capacity as former librarian at Baird )
Middle School, )
                                                      )
                         Defendants. )
_____)

Plaintiffs, Stephen Foote, individually, and as Guardian and next friend of B.F. and G.F., minors, Marissa Silvestri, individually and as Guardian and next friend of B.F. and G.F., minors, Jonathan Feliciano, and Sandra Salmeron, by and through their attorneys of record, file their First Amended Complaint against Town of Ludlow, Ludlow School Committee, Lisa Nemeth, Todd Gazda, Stacy Monette, Marie-Claire Foley, and Jordan Funke, Defendants, and in support thereof, allege as follows:

## INTRODUCTION

1.      Defendants have exceeded the bounds of legitimate pedagogical concerns and usurped the role of Plaintiffs Stephen Foote and Marissa Silvestri, Jonathan Feliciano and Sandra Salmeron, to direct the upbringing of their children, make medical and mental health decisions for their children, and to promote and preserve family privacy and integrity.

2.      Defendants' protocol and practice of concealing from parents information related to their children's gender identity and efforts to affirm a discordant student gender identity at school violate parents' fundamental rights under the United States Constitution and violate children's reciprocal rights to the care and custody of their parents, familial privacy, and integrity. As to Plaintiffs Jonathan Feliciano and Sandra Salmeron, it also violates their fundamental right to free exercise of religion under the United States Constitution.

1

3.     Plaintiffs Stephen Foote and Marissa Silvestri are seeking injunctive and declaratory relief and damages under 42 U.S.C. §1983 on behalf of themselves and their minor children, B.F. and G.F., for violation of their constitutional rights. Plaintiffs Jonathan Feliciano and Sandra Salmeron are seeking injunctive and declaratory relief and damages under 42 U.S.C. §1983 for violation of their constitutional rights. Plaintiffs also seek costs and attorneys' fees pursuant to 42 U.S.C. §1988.

## JURISDICTION AND VENUE

4.     This action is filed pursuant to 42 U.S.C. § 1983 seeking redress of injuries suffered by Plaintiffs from deprivation, under color of state law, of rights secured by the First and Fourteenth Amendments to the United States Constitution, by the laws of the United States and the laws of the Commonwealth of Massachusetts. Jurisdiction is proper in this Court pursuant to 28 U.S.C. §§ 1331 and 1343(a). Jurisdiction is also proper under 28 U.S.C. § 1332(a)(1) in that the amount in controversy exceeds $75,000 and is between citizens of different states.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and other applicable law because the events and omissions giving rise to the claims in this action arose in the Town of Ludlow, Massachusetts which is situated within the district and divisional boundaries of the Springfield Division of the U.S. District

Court for the District of Massachusetts. Venue is also proper in this Court because Defendants reside or have their principal place of business in this District.

6.     This Court is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, implemented through Federal Rule of Civil Procedure 57, and to issue injunctive relief under Federal Rule of Civil Procedure 65.

7.     An actual controversy exists between the parties involving substantial constitutional issues, in that Plaintiffs allege that Defendants' policies, procedures, directives and actions taken in accordance with them violate the United States Constitution and have infringed Plaintiffs' rights, while Defendants will allege that their policies, procedures, directives, and actions comport with the U.S. Constitution and Massachusetts law.

8.     This Court is authorized to grant Plaintiffs' prayer for relief regarding costs, including a reasonable attorney's fee, under 42 U.S.C. § 1988.

## PARTIES

9.     Stephen Foote is a resident of the Town of Ludlow and is the father of B.F. and G.F., minor children who are students in Ludlow Public Schools.

10.    Marissa Silvestri is a resident of Connecticut and is the mother of B.F. and G.F., minor children who are students in Ludlow Public Schools.

11.     B.F. is the daughter of Stephen Foote and Marissa Silvestri and at all times relevant to the claims set forth herein was and is a student in Ludlow Public Schools.

12.     G.F. is the son of Stephen Foote and Marissa Silvestri and at all times relevant to the claims set forth herein was and is a student in Ludlow Public Schools.

13.     Jonathan Feliciano is a resident of the Town of Ludlow, the husband of Sandra Salmeron, and is the father of two children who attend Ludlow Public Schools.

14.     Sandra Salmeron is the wife of Jonathan Feliciano, a resident of the Town of Ludlow, and the mother of two children who attend Ludlow Public Schools.

15.     Defendant Town of Ludlow ("Town"), with a principal address of 488 Chapin Street Ludlow, MA 01056 is a body corporate under G.L. c. 40 §1, with the authority to sue and be sued under G.L. c. 40 §2.

16.     Defendant Ludlow School Committee, with a principal address of 205 Fuller Street Ludlow, MA 01056, is the governing board with final policymaking authority over the Town's public school system.  G.L. c. 71 § 37.

17.      Defendant Lisa Nemeth is the Interim Superintendent of Ludlow Public Schools. Pursuant to G.L. c. 71 § 59 Superintendent Nemeth is required to manage the school district in a fashion consistent with the United States

Constitution, state law and the policy determinations of the School Committee. She is sued in her individual and official capacities.

18.     Defendant Todd Gazda was at all times relevant herein the Superintendent of Ludlow Public Schools until July 2021. Pursuant to G.L. c. 71 §59 until July 2021, Defendant Gazda was required to manage the school district in a fashion consistent with United States Constitution, state law and the policy determinations of the School Committee. He is sued in his individual and official capacities.

19.     Defendant Stacy Monette was at all times relevant to Plaintiffs' claims Principal at Baird Middle School, which is part of Ludlow Public Schools. She is sued in her individual and official capacities.

20.     Defendant Marie-Claire Foley is, and at all relevant times was, School Counselor at Baird Middle School, which is part of Ludlow Public Schools. She is sued in her individual and official capacities.

21.     Defendant Jordan Funke was at all times relevant to Plaintiffs' claims, until May 2021, librarian at Baird Middle School, which is part of Ludlow Public Schools. She is sued in her individual and official capacities.

## FACTUAL ALLEGATIONS

**Development of statewide guidance for school policies related to transgender students**

22.     In June 2012, the Massachusetts Board of Elementary and Secondary Education (Board) revised the Access to Equal Education Opportunity Regulations, 603 CMR 26.00, to include gender identity as a protected class to conform to the Legislature's revision of Massachusetts' student anti-discrimination provision in Mass. G.L. c. 76, §5.

23.     The Board directed the Department of Elementary and Secondary Education ("DESE") to provide guidance to school districts to assist in implementing the revised regulations.

24.     In response to the Board's directive, DESE published "Guidance for Massachusetts Public Schools Creating a Safe and Supportive School Environment," ("Guidance") offering suggestions for school policies and procedures to address the changes in laws and regulations.

25.     The Guidance document has not been adopted as a regulation nor enacted as a statute and therefore does not mandate particular policies or have the force of law.

26.     On March 26, 2013, then-DESE Commissioner Mitchell Chester stated at a  public meeting that the Guidance is not a mandate, but advice offered to school administrators and staff.

27.    In the Guidance, DESE suggests that:

Consistent with the statutory standard, a school should accept a
student's assertion of his or her gender identity when there is "consistent
and uniform assertion of the gender-related identity, or any other
evidence that the gender-related identity is sincerely held as part of a
person's core identity." If a student's gender-related identity,
appearance, or behavior meets this standard, the only circumstance in
which a school may question a student's asserted gender identity is
where school personnel have a credible basis for believing that the
student's gender-related identity is being asserted for some improper
purpose. https://www.doe.mass.edu/sfs/lgbtq/ GenderIdentity.html

28.    The Guidance further suggests:

Some transgender and gender nonconforming students are not openly
so at home for reasons such as safety concerns or lack of acceptance.
School personnel **should speak with the student first before
discussing a student's gender nonconformity or transgender status
with the student's parent or guardian**. For the same reasons, school
personnel should discuss with the student how the school should refer
to the student, *e.g.,* appropriate pronoun use, in written communication
to the student's parent or guardian. *Id.* (emphasis added).

29.    In the Guidance, DESE states that in the case of "young students"

parents should be consulted regarding issues of disclosure of the students' assertion

of a discordant gender identity. *Id.* The Guidance does not define "young students."

30.    DESE's Guidance also says:

Transgender and gender nonconforming students may decide to discuss
and express their gender identity openly and may decide when, with
whom, and how much to share private information. A student who is
14 years of age or older, or who has entered the ninth grade, may
consent to disclosure of information from his or her student record. **If
a student is under 14 and is not yet in the ninth grade, the student's
parent (alone) has the authority to decide on disclosures and other
student record matters.**

*Id.* (emphasis added) (citing Section 23.01 of Title 603 of the Code of Massachusetts Regulations (603 CMR §23.01).

31.     Information regarding a student's sex, name change for gender identity purposes, gender transition, medical or mental health treatment related to gender identity, or any other information of a similar nature, regardless of its form, is part of the individual's student record, subject to 603 CMR §23.01.

32.     Pursuant to 603 CMR §23.01 consent to disclosure of information regarding a student's sex, name change for gender identity purposes, gender transition, and/or medical or mental health treatment related to gender identity lies exclusively with parents until the student is in ninth grade or age 14, unless a local school committee has adopted an alternative policy.

**Defendants' Re-interpretation of DESE Guidance And Development of Protocol to Conceal Information From Parents.**

33.     Plaintiffs are informed and believe and based thereon allege that the School Committee has not adopted a formal written policy superseding 603 CMR §23.01 to provide students under the age of 14 or below grade 9 with the sole authority to give or withhold consent to disclosure of information regarding sex, name change for gender identity purposes, gender transition or medical or mental health treatment related to gender identity.

34.     Plaintiffs are informed and believe and based thereon allege that the School Committee, acting as final policymaker for the Town, has re-interpreted the DESE guidance as a mandate requiring that staff shall not speak with parents regarding gender identity issues at all unless the child consents, instead of suggesting that school personnel should speak with a student first before discussing gender identity issues with parents.

35.     Plaintiffs are informed and believe and based thereon allege that the School Committee, acting as final policymaker for the Town, has used its reinterpretation of the DESE Guidance to give children of any age the authority to determine whether their parents will be notified about decisions related to affirming the child's discordant gender identity, which is a mental health issue, thereby usurping Plaintiffs' fundamental parental rights to direct the upbringing and mental health care of their children.

36.     Plaintiffs are informed and believe and based thereon allege that the School Committee and individual Defendants have used the School Committee sanctioned re-interpretation of DESE Guidance to establish and implement a protocol (hereinafter sometimes "Protocol") that parents are not to be informed of their child's transgender status and gender-affirming social transition to a discordant gender identity unless the child, of any age, consents.

37.     Plaintiffs are informed and believe and based thereon allege that until July 2021 Defendant Gazda as Superintendent of Ludlow Public Schools implemented the Protocol throughout Ludlow Public Schools so that administrators, teachers, counselors and other staff at all schools would conceal from parents information regarding their child's transgender status and social transition to a discordant gender identity, including adoption of alternative names and pronouns, unless the child consented.

38.     Plaintiffs are informed and believe and based thereon allege that from July 2021 to the present Defendant Nemeth, as Interim Superintendent of Ludlow Public Schools, has continued to implement the Protocol throughout Ludlow Public Schools so that administrators, teachers, counselors and other staff at all schools conceal from parents information regarding their child's transgender status and social transition to a discordant gender identity, including adoption of alternative names and pronouns, unless the child consents.

39.     Plaintiffs are informed and believe and based thereon allege that Defendant Stacy Monette in her role as Principal implemented the Protocol at Baird Middle School so that administrators, teachers, counselors, and other staff conceal from parents, including Plaintiffs, information regarding their child's transgender status and social transition to a discordant gender identity, including adoption of alternative names and pronouns, unless the child consents.

40.     Plaintiffs are informed and believe and based thereon allege that the Protocol continues to be implemented in all schools in Ludlow Public Schools, meaning that District staff are directed to deliberately and intentionally conceal from parents, including all Plaintiffs, information regarding their child's (regardless of age) transgender status and social transition to a discordant gender identity, including adoption of alternative names and pronouns, unless the child consents.

41.     Plaintiffs are informed and believe and based thereon allege that the Protocol further provides that District staff are to deliberately deceive parents, including all Plaintiffs, by continuing to refer to their child by his or her birth name and pronouns in the presence of the parents, but to use the child's preferred alternative name and pronouns at all other times.

42.     Plaintiffs are informed and believe and based thereon allege that throughout the time that they have sanctioned and implemented the Protocol, Defendants have known or have reason to know that "social transitioning," including assertion of an alternate name and pronouns, is recognized as a medical/mental health treatment for children with gender dysphoria[1]:

> For young transgender children, the treatment of gender dysphoria consists of social transition, which involves changes that bring the child's outer appearance and lived experience into alignment with the child's core gender. Changes often associated with a social transition

---

[1]     By describing gender affirmation as a medical/mental health treatment for gender dysphoria, plaintiffs are not waiving any claims to challenge the medical or scientific validity of such therapies.

include changes in clothing, name, pronouns, and hairstyle. *Adams v. The Sch. Bd. of St. Johns Cty, Fla.,* No. 3:17-cv-00739, (M.D.Fla. June 28, 2017), Diane Ehrensaft Exp. Rep. 10-11 ECF 137-2.

"Social role transition is a critical component of the treatment for Gender Dysphoria" for adults and children. *G.G. v. Gloucester Cty Sch. Bd.*, No. 4:15-cv-54 (E.D.Va. June 11, 2015) Randi Ettner Correct Exp. Decl. 5, ECF 58-2

43.    By engaging in "social transitioning" with children, as provided in the Protocol, Defendants are "implementing a psychosocial treatment..."[2] without the knowledge or consent of parents.

44.    Defendants know or should know that under Massachusetts law, parents must consent to medical treatment, including mental health treatment, of their children under age 18 unless the child is emancipated, married, in the armed forces, pregnant or contracted a sexually transmitted disease, none of which applies to Plaintiffs' children. M.G.L. ch. 231, §85P, M.G.L. ch. 112 §12F.

45.    By approving and implementing the Protocol, Defendants are acting contrary to law by deliberately concealing from Plaintiffs that their minor children are receiving mental health care, *i.e.* social transitioning to a discordant gender identity, at school without the parents' knowledge or consent.

---

[2]    Kenneth Zucker*, The Myth of Persistence: Response to "A Critical Commentary on Follow-Up Studies & 'Desistance' Theories about Transgender & Gender Non-Conforming Children" by Temple Newhook et al.*, 19:2 INTERNATIONAL JOURNAL OF TRANSGENDERISM 231 (2018), https://www.researchgate.net/publication/325443416.

46.     Plaintiffs are informed and believe and based thereon allege that as part of implementing the Protocol, the School Committee acting as final policymaker for the Town has sanctioned, and individual Defendants have implemented customs, practices and procedures that introduce and promote the concept of gender-affirming social transitioning, *i.e.,* mental health treatment, and experimentation with discordant gender identities to children without the knowledge or consent of their parents.

47.     Among the customs, practices and procedures implemented by individual Defendants was Defendant Funke's practice of directing incoming sixth grade students at Baird Middle School to create biographic videos in which they were to state their "gender identity" and preferred pronouns and upload the videos onto school owned platforms.

48.     The videorecording and identification of a gender identity (an aspect of mental health) was done without the knowledge and consent of parents.

49.     Plaintiffs Foote and Silvestri became aware after the fact that their 11-year-old daughter, B.F. was given that video and identification assignment.

50.     Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that their son G.F. was also given the video and identification assignment by Defendant Funke without their knowledge and consent.

51.    It remains unknown to Plaintiffs Foote and Silvestri how these videos of their children, made without their consent, were used or who has been allowed to view them.

52.    Plaintiffs are informed and believe and based thereon allege that Defendant Funke, acting in accordance with the Committee's approved Protocol and with the knowledge and consent of other individual Defendants, engaged in other customs, practices and procedures aimed at promoting exploration and experimentation of discordant gender identities and engaging in gender-affirming social transitioning, concepts which involve mental health issues, to Plaintiffs' children and other Baird Middle School students without notice to or consent of parents, including Plaintiffs.

53.    Plaintiffs are informed and believe and based thereon allege that Defendant Funke regularly communicated privately with their children one-on-one to discuss their gender identity (mental health) issues, provide materials promoting exploration of alternate gender identities, and otherwise encourage children to experiment with alternate gender identities without notifying parents or obtaining parental consent.

54.    Plaintiffs are informed and believe and based thereon allege that Defendant Funke instructed their children not to use the terms "boys" and "girls,"

but to use alternative terms rooted in gender identity ideology, which were posted on the walls of the library and circulated to students as a handout.

55.    Plaintiffs were not informed of Defendant Funke's efforts to compel their children to speak falsely (in accordance with the ideology being promoted by Defendant Funke) and to conceal important information from their parents.

56.    Plaintiffs are informed and believe and based thereon allege that other teachers, counselors and staff, with the knowledge and consent of Defendants in accordance with the Committee's Protocol, engaged in other customs, practices and procedures to introduce and promote the concepts of experimenting with discordant gender identities and engaging in gender-affirming social transitioning (which involves mental health treatment), to their children and other students without notice to or consent of parents, including Plaintiffs.

57.    Because Defendants' Protocol requires secrecy, full information regarding the customs, practices and procedures utilized by school staff to introduce and facilitate gender-affirming social transitioning to Plaintiffs' children (and others) has been concealed from Plaintiffs.

**Defendants' Implementation of the Protocol with Plaintiffs' Children**

58.    On or about December 14, 2020, B.F., then an 11-year-old sixth grade student at Baird Middle School, asked to meet with her teacher Bonnie Manchester virtually after school to discuss some issues.

59.     On December 15, 2020, B.F. met virtually with Ms. Manchester and told her that she was experiencing insecurity, low self-esteem, poor self-image, and a perceived lack of popularity.

60.     Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that prior to the meeting with Ms. Manchester B.F. had received unsolicited LGBTQ-themed video suggestions on her school Google account on her school-issued computer

61.     Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that after viewing these suggested videos B.F. began questioning whether she might be attracted to girls and whether she might have "gender identity" issues.

62.     B.F. told Ms. Manchester that she was depressed and needed help but was not sure how to ask her parents about getting help.

63.     Ms. Manchester offered to call B.F.'s parents and B.F. agreed. B.F. told Ms. Manchester that she was relieved and grateful that Ms. Manchester was calling her parents because B.F. was unsure how to broach the subject.

64.     On December 16, 2020, during a planning meeting, Ms. Manchester and other teachers said that they had observed that B.F. seemed to be depressed and agreed that B.F.'s parents should be contacted. Ms. Manchester agreed to contact them since she had already discussed doing so with B.F.

65.     On December 17, 2020, Ms. Manchester contacted Mrs. Silvestri and informed her of the conversation with B.F. and concerns about B.F. feeling depressed.

66.     Ms. Manchester also told Mrs. Silvestri that B.F. had said that she might be attracted to the same sex and was having issues with self-image.

67.     Mrs. Silverstri responded that she had recently observed that there was something troubling B.F. and that she had struggled with self-image issues at B.F.'s age.

68.     Mrs. Silvestri was grateful that Ms. Manchester had contacted her so that she and the children's father, not the school, could address B.F.'s mental health issues.

69.     Mrs. Silvestri and Mr. Foote retained a private therapist to work with B.F. soon after the call with Ms. Manchester.

70.     On December 21, 2020, Mrs. Silvestri sent the following email to B.F.'s teachers, Defendant Monette, Defendant Gazda, and the members of Defendant School Committee:

> It has been brought to the attention of both Stephen and myself that some of B's teachers are concerned with her mental health. I appreciate your concern and would like to let you know that her father and I will be getting her the professional help she needs at this time. With that being said, we request that you do not have any private conversations with B. in regards to this matter. Please allow us to address this as a family and with the proper professionals.

17

71.    Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that Defendants Gazda and Monette and Baird Middle School teachers who had received the email disregarded the parents' instructions and Defendants Gazda and Monette failed and refused to direct Baird Middle School staff to respect Plaintiffs' instructions regarding their 11-year-old daughter's mental health care.

72.    Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that prior to June 2021 Defendant Gazda, and since June 2021 Defendant Nemeth, along with Defendant Monette and Baird Middle School teachers who received the email, have and are continuing to disregard the parents' instructions, as evidenced by the fact that Plaintiffs are now aware that B.F. has changed her preferred name at least twice since December 2020 without Plaintiffs' knowledge or consent. To this date staff continue to address B.F. by whatever iteration of her name she has indicated she prefers.

73.    Teachers at Baird Middle School have inadvertently revealed that they are continuing to disregard the parents' instructions by sending email communications related to school assignments for B.F., but referencing a child with a first name other than "B."

74.    Plaintiffs Foote and Silvestri have learned that, in reckless disregard of their parental rights to make mental health decisions for their children and in direct

contravention to their explicit instructions, Baird Middle School staff, and in particular Defendant Foley, have engaged in regular private meetings and conversations with B.F. in which B.F. has talked about having a discordant gender identity and requested to be affirmed in that identity and called by a male name "R," *i.e.,* engage in gender-affirming social transitioning (mental health treatment). In addition, Baird Middle School staff and Defendant Foley in particular intentionally concealed that information from Plaintiffs in accordance with the Protocol.

75.    Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that Defendants Funke and Monette and other Baird Middle School staff have also disregarded and are continuing to disregard the parents' instructions and the parents' right to make mental health decisions for their son G.F.

76.    G.F. has been diagnosed with ADHD and has in place an Accommodation Plan under Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701 *et. seq.* ("504 Plan").

77.    Defendants knew or should have known of G.F.'s status as a 504 Plan recipient and that such status meant that G.F. had underlying mental health issues which required parental notice and input.

78.    Plaintiffs Foote and Silverstri are informed and believe and based thereon allege that Defendants Funke and Monette and other Baird Middle School staff, knowing that G.F. had underlying mental health issues requiring parental

notice and input, engaged in private meetings and conversations with G.F. on multiple occasions to promote experimenting with alternative genders and facilitate his gender-affirming social transitioning, *i.e.* offer mental health treatment.

79.   Said Baird Middle School staff did not notify Plaintiffs of these private meetings and conversations, but followed the Protocol to conceal the gender-affirming social transitioning of G.F. from Plaintiffs Foote and Silvestri in the same manner as they concealed the gender-affirming social transitioning of B.F.

80.   Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that Defendants have stated in writing in G.F.'s student health record that G.F.'s discordant gender identity and alternate name are to be concealed from his parents and that staff are to intentionally deceive parents by using "G.F." in their presence and G.F.'s alternate name at all other times.

**Plaintiffs Discover Defendants' Subterfuge**

81.   Unbeknownst to Plaintiffs, on February 28, 2021, B.F. sent the following email to Defendant Foley, Defendant Gazda, and teachers at Baird Middle School, including Ms. Manchester:

> Hello everyone, If you are reading this you are either my teacher or guidance counselor. I have an announcement to make and I trust you guys with this information. I am genderqueer. Basically, it means I use any pronouns (other than it/its). This also means I have a name change. My new name will be R****.  Please call me by that name. If you deadname me or use any pronouns I am not comfortable with I will politely tell you. I am telling you this because I feel like I can trust you. A list of pronouns you can use are: she/her he/him they/them

fae/faerae/aer  ve/ver xe/xem ze/zir. I have added a link so you can look
at how to say them. Please only use the ones I have listed and not the
other ones. I do not like them. Thank you. R*** F***.

82.     Plaintiffs Foote and Silvestri are informed and believe and based
thereon allege that the text of the email sent by B.F. resembles sample emails found
on internet sites that promote gender ideology and offer resources to children and
adolescents.

83.     Plaintiffs Foote and Silvestri are informed and believe and based
thereon allege that on March 1, 2021, Defendant Foley sent an email after meeting
privately with B.F., in direct contradiction to their explicit instructions, and wrote:
"R**** [B****] is still in the process of telling his [sic] parents and is requesting
that school staff refer to him [sic] as B**** and use she/her pronouns with her
parents and in written emails/letters home."

84.     In so doing, Defendant Foley was, in keeping with the School
Committee sanctioned Protocol, directing Baird Middle School staff to deliberately
and intentionally deceive Plaintiffs Foote and Silvestri by actively concealing the
fact that school staff were engaging in gender-affirming social transitioning (mental
health treatment) of their daughter by affirming an alternative name and identity.

85.     Plaintiffs Foote and Silvestri are informed and believe and based
thereon allege that on March 1, 2021 some teachers at Baird Middle School

immediately began to refer to B.F. as "R" and to change name tags to reflect that name without notifying B.F.'s parents, in keeping with the Protocol.

86.    Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that on or about March 1, 2021, Defendant Foley referred B.F. to Defendant Funke for further private meetings and conversations to promote and facilitate B.F.'s gender-affirming social transitioning (mental health treatment) without notifying Plaintiffs.

87.    Mr. Foote and Mrs. Silvestri only learned about B.F.'s February 28, 2021 email to her teachers and counselors after a conversation with Ms. Manchester.

88.    Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that on March 8, 2021, after the conversation between Plaintiffs and Ms. Manchester, Ms. Foley sent an email to the entire staff at Baird Middle School informing them of B.F.'s request to be called "R***" and explicitly instructing staff that her parents were not to be told.

89.    Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that on and before March 4, 2021 G.F.'s teachers at Baird Middle School were also complying with and implementing the Protocol with regard to G.F. and facilitating G.F.'s gender-affirming social transitioning without the knowledge or consent of Mr. Foote and Mrs. Silvestri.

90.     Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that on March 10, 2021 during a planning meeting, Ms. Manchester and other Baird Middle School teachers discussed B.F.'s email and discussed that they were also calling B.F.'s brother G.F. by his preferred name "S."

91.     Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that during the planning meeting on March 10, 2021 Ms. Foley told the teachers present that "the law" says that school staff do not have to tell parents about their children's requests to change their name or otherwise be socially affirmed in an asserted transgender identity.

92.     Massachusetts law provides that parents exercise access to, and have exclusive control over, information in their child's student record until the child reaches age 14 or enters the ninth grade. *See* 603 CMR §23.07(2).

93.     At the time that Ms. Foley claimed that "the law" does not require informing parents regarding their child's gender identity, B.F. was 11 years old and G.F. was 12 years old, meaning that their parents, Plaintiffs Foote and Silvestri, had the right to access and control over the information in their records, including their assertions of discordant gender identities, under Massachusetts law.

94.     Even the DESE Guidance, which Defendants know is not a law, does not proscribe notifying parents regarding their children's discordant gender

identities, but merely suggests speaking with students before speaking with parents about the issue.

95.    Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that on March 11, 2021, Defendant Foley, without notification to or consent from Mr. Foote or Mrs. Silvestri, initiated a private conversation with B.F. through an online chat inquiring about issues related to her gender identity, *i.e.*, mental health.

96.    Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that on March 11, 2021, Defendant Foley, without notification to or consent from Mr. Foote or Mrs. Silvestri privately informed B.F. that she could use any bathroom that she preferred, including the boys' bathroom, girls' bathroom, or one of three gender neutral bathrooms at the school. Defendant Foley offered to show B.F. where the gender neutral bathrooms were located.

97.    Therefore, as of March 11, 2021, Mr. Foote's and Mrs. Silvestri's 11-year-old daughter was being told that she could use the boys' privacy facilities at school, where she would be exposed to middle school boys in various states of undress and vice-versa, without Mr. Foote and Mrs. Silvestri being informed or consenting to same.

98.    Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that on March 11, 2021, Defendant Foley told B.F. in an online chat

24

that B.F. was "brave and awesome" for telling her teachers and guidance counselor that she was "genderqueer" and wanted to be referred to by the name "R."

99.    On March 18, 2021, Plaintiffs Foote and Silvestri met with Defendant Monette to discuss the Defendants' disregard of the Plaintiffs' parental rights and of the Plaintiffs' specific instructions that school staff not engage with their children regarding mental health issues, which they were addressing with the help of a mental health professional, in keeping with their fundamental parental rights to direct the mental health care of their children.

100.    Mr. Foote and Mrs. Silvestri attempted to discuss the issues related to their children with Defendant Monette and to convey that Defendants were acting improperly and illegally in disregarding their parental rights and failing to notify them regarding their children's assertion of discordant gender identities and names.

101.    Defendant Monette refused to discuss the issues with Mr. Foote and Mrs. Silvestri, but intimated that the school knew better than did the parents about what was best for B.F. and G.F. with regard to the gender identity issue and abruptly ended the meeting.

102.    On March 21, 2021, Mrs. Silvestri informed Defendant Gazda that she and Mr. Foote objected to the staff's deliberate disregard of their rights as parents to make decisions regarding their children's mental health and upbringing evident in

concealing information regarding the gender-affirming social transitioning of their children.

103.   Mrs. Silvestri said that their children telling teachers and fellow students "that they want to be called by a different name (of the opposite sex) is something that will follow the children through school and not be forgotten by classmates."

104.   Mrs. Silvestri told Mr. Gazda that parents, not the school, should be the primary source of help and guidance to navigate their children through such decisions with long-term effects, and the school's exclusion of her and Mr. Foote from that decision-making was unacceptable.

105.   Mrs. Silvestri reminded Mr. Gazda that no one to whom their original December 20, 2020 email was addressed responded. Instead, the parents were ignored by teachers, guidance counselors, Ms. Monette, Mr. Gazda, and the School Committee, who utterly disregarded the parents' explicit instructions to not engage in conversations with their children related to their mental health to permit the parents to exercise their primary authority to oversee their children's mental health care.

106.   Mr. Gazda acknowledged that he and the School Committee had received the parents' December 20, 2020 email, but that neither he nor anyone from the School Committee had responded.

107.   Mr. Gazda expressly asserted that Ms. Foley acted appropriately in concealing information from Plaintiffs when B.F. sent the February 28, 2021 email to Baird Middle School teachers and Ms. Foley.

108.   Mr. Gazda stated that Ms. Foley properly followed DESE Guidance that "School personnel should speak with the student first before discussing a student's gender nonconformity or transgender status with the student's parent or guardian" when she forwarded the B.F.'s February 28, 2021 email to other staff and told staff that parents were not to be told.

109.   Mr. Gazda's statement that directing school staff to conceal information from parents was a proper action by Ms. Foley evidences that Mr. Gazda was aware of and approved the School Committee's sanctioned Protocol granting children of any age the power to determine whether their parents will be informed about the child's gender-affirming social transitioning (mental health treatment).

110.   Mr. Gazda further evidenced his knowledge and acceptance of the Protocol when he told Mrs. Silvestri that Defendant Foley's directive to staff that Plaintiffs not be informed of their daughter's preferred alternate pronouns and be intentionally misinformed and lied to in conversations concerning their daughter was an appropriate response in light of the DESE Guidance suggesting that staff speak to children first.

27

111.   Mr. Gazda further claimed that concealing information regarding Plaintiffs' 11-year-old daughter's asserted discordant gender identity and alternate names and pronouns did not violate 603 CMR §23.01 because no "disclosure" was made, presumably meaning that there was no disclosure to a third party.

112.   Mr. Gazda did not explain how a regulation that granted Plaintiffs access and control of their children's records could be utilized to deny them access to information in those records.

113.   Mr. Gazda reiterated his conclusions during a meeting with Mr. Foote and Mrs. Silvestri on March 26, 2021, but still did not explain how DESE suggestions about speaking with students about gender identity issues before speaking with parents could be interpreted to mean that minor students had absolute veto power over their parents being informed about their child's social transitioning.

114.   At the March 26, 2021 meeting, Mr. Foote and Mrs. Silvestri again demanded that school staff not talk to their children about discordant gender identities and that school staff use the children's proper names, but they received no response.

115.   Plaintiffs Foote and Silverstri are informed and believe and based thereon allege that Ms. Foley, Ms. Funke and perhaps other staff members at Baird Middle School continued to knowingly, intentionally, and recklessly disregard Mr. Foote's and Mrs. Silvestri's explicit instructions not to engage with their children

regarding alternative genders, preferred names, and mental health issues by surreptitiously setting up meetings to discuss B.F.'s and G.F.'s assertion discordant gender identities without the knowledge and consent of their parents.

116. Plaintiffs Foote and Silverstri are informed and believe and based thereon allege that, without the knowledge or consent of the Plaintiffs, Ms. Funke directed 11-year-old B.F. to translategender.org, an organization with which Funke is affiliated that "works to generate community accountability individuals to self-determine their own genders and gender expressions."

117. Plaintiffs Foote and Silverstri are informed and believe and based thereon allege that Ms. Funke used translategender.org to groom 11-year-old B.F. through promotion of materials and events, including workshops entitled "Green, Yellow, Red, Stoplights For Mental Health," and "The Sex Education You Didn't Get in School," without the knowledge or consent of her parents.

118. Plaintiffs Foote and Silverstri are informed and believe and based thereon allege that after they had repeated their request to Principal Monette and Superintendent Gazda that Baird Middle School staff cease talking with their children regarding gender issues, Ms. Foley encouraged B.F. to meet privately with her weekly to discuss B.F.'s gender issues and mental health and to promote and facilitate B.F.'s social transition.

119.   Plaintiffs Foote and Silverstri are informed and believe and based thereon allege that on March 30, 2021, Ms. Foley told B.F. that she was worried about B.F. based on a conversation with B.F. the day before.

120.   Ms. Foley said that she wanted B.F. to speak to another counselor, "I can't be the only person that you talk to because we don't have enough time together and I can't be there to keep you safe," thereby signaling to B.F. that her parents were not "safe."

121.   Despite claiming to be concerned about B.F.'s safety, Ms. Foley did not contact B.F.'s parents to share her concerns, further evidencing that Ms. Foley was implying that B.F.'s parents were "unsafe."

122.   Plaintiffs Foote and Silverstri are informed and believe and based thereon allege that when B.F. informed Ms. Foley that she was seeing a counselor chosen by her parents, Ms. Foley questioned whether B.F. was as comfortable discussing issues with that counselor as she was discussing issues with Ms. Foley.

123.   Ms. Foley's question sent a message to B.F. that her parents' choice might not be in her best interest.

124.   Ms. Foley further stated that she believed that B.F. needed to get help and support, sending the message to B.F. that her parents could not be trusted to provide help and support.

125.   Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that Ms. Foley continued to question whether B.F.'s parents were providing B.F. with appropriate care in online chats in which she asked B.F. whether the counselor chosen by her parents was providing adequate care, and in stating that she was "behind" B.F., sending the message that B.F. needed further or different care than was being offered by her parents.

126.   Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that on April 7, 2021, Ms. Foley again questioned whether B.F.'s parents were properly caring for B.F. in an online chat in which Ms. Foley asked B.F. whether B.F. could keep herself safe when she was feeling down.

127.   Plaintiffs Foote and Silvestri are informed and believe and based thereon allege that throughout April and May 2021, Ms. Foley continued to surreptitiously correspond with B.F. via online chats and text messages and continued to affirm and applaud B.F.'s assertion of alternate genders and alternate names, intentionally disregarding B.F.'s parents' rights to direct their daughter's mental health care and their explicit instructions that Baird Middle School staff was not to engage in such conversations with their children.

128.   Ms. Foley's continuing surreptitious meetings with B.F. and repeated questioning of Plaintiffs' decisions regarding B.F.'s care has interfered with and is

interfering with Plaintiffs' exercise of their right to direct B.F.'s mental health care as well as disrupting the parent-child relationship.

129.   On April 23, 2021, Mr. Foote received a card in the mail addressed to "R F****," congratulating "R. F****," Mr. Foote's daughter B.F., for winning a bumper sticker contest put on by one of her teachers. The teacher enclosed an Amazon Gift Card with "Congratulations R" written on it, demonstrating Defendants' continuing adherence to the Protocol and blatant disregard for Plaintiffs' parental rights.

130.  Defendants' conduct in encouraging young students to conceal important information from their parents and undermining parental authority explicitly and implicitly by openly questioning their parents' decisions violates Plaintiffs' fundamental parental rights to direct the upbringing of their children, make mental health decisions for their children and protect family integrity and privacy.

131.  As to Plaintiffs Feliciano and Salmeron, Defendants' conduct also infringes on their sincerely held religious beliefs which include respect for parental authority, truthfulness, and adherence to a Biblical understanding of male and female, commandment to honor one's parents, and standards of behavior, all of which are disregarded in the Protocol.

132.   Because the intent of the Protocol is to conceal information from parents, Plaintiffs Feliciano and Salmeron are deliberately hindered from ascertaining whether their children are being secretly socially transitioned, *i.e.*, being provided mental health treatment, without their knowledge or consent.

133.   Defendants and other staff in Ludlow Public Schools acting under the authority and direction of Defendants Gazda, Nemeth, Monette, and the School Committee acting as final policymaker for the Town have intentionally acted in reckless disregard of Plaintiffs' rights to direct the upbringing and mental health care of their children and in direct contravention of Plaintiffs Foote and Silverstri's explicit instructions to Defendant Gazda, Defendant Monette, the School Committee, and other Ludlow Public Schools staff.

### Defendants' Public Ratification of the Protocol and Derogation of Parental Rights

134.   Members of Defendant School Committee and Mr. Gazda have publicly acknowledged and ratified the existence and continuing implementation of the Protocol and its intentional and purposeful concealment of children's mental health information from parents.

135.   Plaintiffs are informed and believe and based thereon allege that Ms. Monette terminated Ms. Manchester for failing to comply with the Protocol and respecting the rights of B.F.'s parents by providing them information regarding their 11-year-old daughter's assertion of a discordant gender identity, further

33

demonstrating that the Protocol was an established procedure sanctioned by the School Committee acting as final policymaker for the Town and implemented by District leadership.

136.   On May 25, 2021 during a School Committee public meeting, a tenth grade student in Ludlow Public Schools submitted a public comment via email, which was the only participation vehicle that the School Committee provided for the public meeting that was held in an empty meeting room.

137.   In the email read aloud during the meeting, the writer said that staff members were pushing extreme ideas to children 11 to 14 years old as part of an agenda aimed at "trying to convince children to change who they are and change their sexuality and gender at an age that many of them do not yet fully understand the concepts of sexuality and gender." The writer further stated that the School Committee and staff were ignoring parents' rights.

138.   After the email was read, Mr. Gazda read a prepared rebuttal. Mr. Gazda did not dispute the District's actions alleged in the statement, but instead defended the conduct, saying the District's actions were about "inclusion" and making schools "safe" for children.

139.   Mr. Gazda's statements imply that children are not "safe" with their parents.

140.   Mr. Gazda also stated publicly what he had told Plaintiffs privately, *i.e.,* that the District's actions (*e.g.,* the Protocol) are "in compliance" with the laws and regulations of Massachusetts and DESE Guidance.

141.   Mr. Gazda further stated publicly, without refutation from the School Committee, that parents' concerns about the concealment of information amounted to "intolerance of LGBTQ people thinly veiled" behind a "camouflage of parental rights."

142.   Mr. Gazda further stated that schools, not homes, are the true "safe space" for children because schools supply "caring adults" where students can discuss problems and find support for their "true identities," implying that children do not receive such care from their parents. He said, "For many students school is their only safe place, and that safety evaporates when they leave the confines of our buildings," sending the message that safety is not to be found in their parents' homes.

143.   Mr. Gazda said that the middle school would absolutely continue to help the children "express who they are" despite parents' wishes to the contrary.

144.   Defendant School Committee, acting as final policymaker for the Town, has condoned and facilitated the continued implementation of the Protocol, and in particular the intentional and blatant disregard for parental rights reflected in concealing information from parents regarding their children's gender-affirming social transitioning and in actively deceiving parents by directing staff to use

children's given names and pronouns when speaking with parents but using the child's asserted preference for alternative names and pronouns at all other times.

145.   Defendant School Committee's action and inaction have evidenced its adoption of the Protocol as *de facto* policy in public statements, including those at the June 8, 2021 public meeting.

146.   After an emailed public comment from a group of parents was read during the June 8, 2021 meeting, then Committee Chairman Michael Kelliher repeated Defendant Gazda's claim that the District's actions were "in compliance" with state and federal laws. Mr. Kelliher defended the actions of district staff as "simply doing their jobs" of "being welcoming and supporting to the children."

147.   Expressing disdain and disregard for the rights of Ludlow Public School parents, Mr. Kelliher said that parents who were making their concerns known to the Committee were opposing "inclusive policies of the Ludlow Public Schools" and were "under the spell" of "outside groups."

148.   At the June 8, 2021 School Committee meeting Mr. Gazda further evidenced Defendants' disdain and disregard for parental and religious exercise rights by characterizing parents' concerns about not being notified and their decisions not being honored regarding their children's upbringing and gender identity issues as "prejudice and bigotry."

149.   No committee member has disagreed with or corrected Mr. Gazda's and Mr. Kelliher's public statements or otherwise refuted that the District's accepted Protocol, *i.e. de facto* policy, was to conceal critical information regarding their children's upbringing and mental health from parents and to disregard parents' instructions regarding their children's assertion of a discordant gender identity.

150.   As parents of children who attend Ludlow Public Schools, all of the Plaintiffs are subjects of Defendants' Protocol, actions, disdain, and attendant reckless disregard for their fundamental rights.

151.   So long as the Protocol remains in effect and is being implemented by Defendants, Plaintiffs continue to suffer deprivation of their fundamental parental rights to direct the upbringing of their children and particularly to direct the mental health care of their children.

152.   So long as the Protocol remains in place, Plaintiffs' children are subject to surreptitious meetings, conversations, counseling sessions, online chats, and other communications with Ludlow Public Schools staff regarding and even promoting socially transitioning to a discordant gender identity, a recognized form of mental health care, without the knowledge or consent of their parents.

153.   Plaintiffs' parental rights continue to be violated by the Protocol's instructions that parents are to be deliberately deceived by staff who are directed to use their child's legal name and pronouns corresponding to their sex when speaking

with parents, but children's preferred alternative names and pronouns at all other times in school-related communications.

154.   The continuing existence and implementation of the Protocol also infringes on and violates Plaintiffs Feliciano's and Salmeron's rights to free exercise of religion in that their sincerely held religious beliefs require truthfulness in speech, obedience to parents, and that their children's identities as being created male or female be respected regardless of contrary personal beliefs and ideologies of school staff members.

155.   Defendants' Protocol that affirms children's desires to be called by an alternate gender discordant name and pronouns and actively promotes the idea that they can socially transition to another gender involves significant mental health decisions affecting children's well-being with potentially life-long consequences. Pursuant to the Protocol, these decisions are being made without the knowledge or consent of parents.

156.   Defendants have acted with reckless disregard for the rights of Plaintiffs Foote and Silvestri as the parents of B.F. and G.F. and substituted their judgment for that of the parents in providing unauthorized mental health counseling and intervention without the knowledge or consent of B.F.'s and G.F.'s fit parents

157.   Defendants have intentionally and purposefully disrupted Plaintiffs' relationships with their children, fostered distrust of parents, caused the children to

question whether their parents can appropriately care for them and keep them safe, and otherwise irreparably harmed the parent-child relationship.

158.   In adopting and continuing to implement the Protocol, Defendants have substituted, and continue to substitute, their judgment for that of the parents in directing the upbringing and mental health care for the children of Ludlow Public Schools.

159.   Defendants' actions and public statements evidence a reckless disregard and disdain for the fundamental rights of Plaintiffs regarding decision-making related to children's assertion of a discordant gender identity and request to socially transition, a recognized mental health treatment.

160.   Defendants' reckless disregard for the rights of Plaintiffs has impermissibly supplanted the rights of the parents to make mental health decisions and direct the upbringing of their children, interfered with the privacy rights of the family, created uncertainty and distrust between parents and children and between parents and educators, and threatened religious free exercise rights.

161.   Unless and until Defendants, *inter alia*, a) publicly rescind the Protocol, b) cease communicating to and instructing Ludlow Public School staff that parents are not to be notified, c) publicly establish a policy that parents will be notified when children raise issues related to their mental health and discordant gender identity, d) cease meeting with children to provide counsel, advice and advocacy related to

39

mental health and discordant gender identity without parental notice and consent, e) cease deceiving parents by using one set of names and pronouns when communicating with them and another at school, and f) abide by parents' instructions concerning their child's mental health treatment and assertion of a discordant gender identity, Plaintiffs' fundamental rights to direct the upbringing of their children, to make decisions regarding their children's medical and mental health, right of familial privacy, and free exercise rights will continue to be violated.

162.   Defendants' ongoing violations of Plaintiffs' fundamental parental rights have caused and will continue to cause irreparable harm unless and until discontinued.

**FIRST CAUSE OF ACTION**
**VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983**
**(Violation of Plaintiffs' Substantive Due Process Fundamental Parental Right to Direct the Education and Upbringing of Their Children under the U.S. Constitution)**
**(By All Plaintiffs Against all Defendants)**

163.   Plaintiffs incorporate the preceding factual allegations in paragraphs 9-162 by reference as if set forth in full.

164.   The Due Process Clause in the 14th Amendment to the United States Constitution protects the fundamental right of parents to direct the upbringing, care, custody, and control of their children. *Pierce v. Society of Sisters*, 268 U.S. 510 (1925); *Troxel v. Granville*, 530 U.S. 57, 68 (2000)

165. Defendants have violated and are continuing to violate Plaintiffs' fundamental right to make decisions regarding the upbringing, custody, care, and control of their children in establishing and implementing the Protocol that prohibits informing parents regarding their children's assertions regarding gender non-conformity, transgender status and attendant requests to affirm alternate identities unless their minor children of any age consent.

166. Defendants have acted and are continuing to act with reckless disregard for Plaintiffs' fundamental parental rights by purposefully and intentionally concealing critical information and decisions regarding the upbringing and care of their children, *i.e.,* that the children are asserting a discordant gender identity, that the children have requested to be addressed by an opposite sex name and pronouns and other information and decisions associated with affirming the children's assertions.

167. Defendants have acted and are acting with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience as described *infra.*

**Allegations Regarding School Committee and Town**

168. Defendant School Committee acting as final policymaker for Defendant Town has acted and is continuing to act with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that

a) the School Committee knows that the DESE Guidance is not a legal mandate, but claims that it requires that school staff conceal information from parents; b) the School Committee knows that the DESE Guidance suggests only that school staff should speak to students before speaking to parents, but claims that it supports Defendant's Protocol that parents are not to be told about children's social transitioning unless the child consents; c) the School Committee knows that under Massachusetts law parents have sole control and access to information in their child's records until the child is age 14 or in the ninth grade, but authorizes and sanctions the deliberate concealment of information from parents of children under age 14 unless the child consents; and d) the School Committee knows that under Massachusetts law parents must be informed of and consent to medical/mental health care for their children who are under 18, but have approved and implemented a Protocol that directs staff to encourage, facilitate, develop and implement gender-affirming social transitioning, a known mental health treatment, with children under age 18  without informing or gaining consent from parents.

**Allegations Against Defendant Gazda**

169.   Defendant Gazda, as superintendent charged with implementing policies sanctioned by the School Committee through June 2021, acted with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that a) Mr. Gazda knew that the DESE Guidance is not a legal mandate

but claimed that it requires that school staff conceal information from parents; b) Mr. Gazda knew that the DESE Guidance suggests only that school staff should speak to students before speaking to parents, but claimed that it supports Defendants' Protocol that parents are not to be told about children's gender-affirming social transitioning unless the child consents; c) Mr. Gazda knew that under Massachusetts law parents have sole control and access to information in their child's records until the child is age 14 or in the ninth grade, but authorized and directed school staff to deliberately conceal information from parents of children under age 14 unless the child consents; and d) Mr. Gazda knew that under Massachusetts law, parents must be informed of and consent to medical/mental health care for their children who are under 18, but approved and implemented a Protocol that directs staff to encourage, facilitate, develop and implement gender-affirming social transitioning, a known mental health treatment, with children under age 18  without informing or obtaining consent from parents.

170.  Defendant Gazda, as superintendent charged with implementing policies sanctioned by the School Committee, through June 2021, acted with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that Mr. Gazda knew that Plaintiffs Foote and Silvestri had exercised their parental rights to direct the upbringing of their children by securing a private therapist for B.F. and requested that school staff not engage with their

children regarding mental health issues. Nevertheless, Defendant Gazda failed to adequately supervise and train employees to not implement the Protocol or actively encouraged employees to implement the Protocol and engage with Plaintiffs' children without notifying Plaintiffs.

171. Defendant Gazda acted with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that Mr. Gazda publicly stated during School Committee meetings that parents with concerns about not being notified and their decisions not being honored regarding their children's gender identity issues (i.e., upbringing) were driven by "prejudice and bigotry," and "under the spell" of "outside groups," and that school officials would continue with their policies regardless of what parents thought.

**Allegations Against Defendant Nemeth**

172. Defendant Nemeth, as interim superintendent charged with implementing policies sanctioned by the School Committee, since June 2021, has acted and is acting with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that a) Ms. Nemeth knows that the DESE Guidance is not a legal mandate, but claims that it requires that school staff conceal information from parents; b) Ms. Nemeth knows that the DESE Guidance suggests only that school staff should speak to students before speaking to parents, but claims that it supports Defendants' Protocol that parents are not to be told about children's

gender-affirming social transitioning unless the child consents; c) Ms. Nemeth knows that under Massachusetts law parents have sole control and access to information in their child's records until the child is age 14 or in the ninth grade, but nonetheless authorizes and directs school staff to deliberately conceal information from parents of children under age 14 unless the child consents; d) Ms. Nemeth knows that under Massachusetts law parents must be informed of and consent to medical/mental health care for their children who are under 18, but implements a Protocol that directs staff to encourage, facilitate, develop and implement gender-affirming social transitioning, a known mental health treatment, with children under age 18  without informing or obtaining consent from parents.

### Allegations Against Defendant Monette

173.   Defendant Monette, as principal of Baird Middle School charged with implementing policies sanctioned by the School Committee at the school, has acted with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that a) Ms. Monette knew or should have known that the DESE Guidance is not a legal mandate, but claimed that it requires that school staff conceal information from parents; b) Ms. Monette knew or should have known that the DESE Guidance suggests only that school staff should speak to students before speaking to parents, but claimed that it supports Defendants' Protocol that parents are not to be told about children's gender-affirming social transitioning unless the

child consents; c) Ms. Monette knew or should have known that under Massachusetts law parents have sole control and access to information in their child's records until the child is age 14 or in the ninth grade, but nonetheless authorized and directed school staff to deliberately conceal information from parents of children under age 14 unless the child consents; d) Ms. Monette knew or should have known that under Massachusetts law parents must be informed of and consent to medical/mental health care for their children who are under 18, but implemented a Protocol that directs staff to encourage, facilitate, develop and implement gender-affirming social transitioning, a known mental health treatment, with children under age 18  without informing or obtaining consent from parents.

174.   Defendant Monette as principal of Baird Middle School acted with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that Ms. Monette knew that Plaintiffs Foote and Silvestri had exercised their parental rights to direct the upbringing of their children by securing a private therapist for B.F. and requested that school staff not engage with their children regarding mental health issues. Nevertheless, Defendant Monette but failed to adequately supervise and train employees to not implement the Protocol or actively encouraged employees to implement the Protocol and engage with Plaintiffs' children without notifying Plaintiffs.

**Allegations Against Defendant Foley**

175.   Defendant Foley, as school counselor at Baird Middle School, has acted and continues to act with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that a) Ms. Foley knows or should have known that the DESE Guidance is not a legal mandate, but claims that it requires that school staff conceal information from parents; b) Ms. Foley knows or should have known that the DESE Guidance suggests only that school staff should speak to students before speaking to parents, but claims that it supports Defendants' Protocol that parents are not to be told about children's gender-affirming social transitioning unless the child consents; c) Ms. Foley knows or should have known that under Massachusetts law parents have sole control and access to information in their child's records until the child is age 14 or in the ninth grade, but deliberately concealed information and authorized and directed others to deliberately conceal information from parents of children under age 14 unless the child consents; d) Ms. Foley knows or should have known that under Massachusetts law parents must be informed of and consent to medical/mental health care for their children who are under 18, but encouraged, facilitated, developed and implemented gender-affirming social transitioning, a known mental health treatment, with children under age 18 without informing or obtaining consent from parents; e) Ms. Foley knows or should have known that under Massachusetts law parents have sole control over their

children's information until children are 14 years old or in grade nine and that parents must consent to mental health treatment for their children, but advised and instructed Baird Middle School staff that the law did not require that staff provide information related to gender identity to parents of children under age 14.

176.   Defendant Foley acted and continues to act with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that Ms. Foley knew that Plaintiffs Foote and Silvestri had exercised their parental rights to direct the upbringing of their children by securing a private therapist for B.F. and requested that school staff not engage with their children regarding mental health issues, but actively engaged with B.F. regarding her mental health issues related to a discordant gender identity without notifying Plaintiffs.

177.   Defendant Foley acted and continues to act with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that Ms. Foley knew that Plaintiffs Foote and Silvestri had exercised their parental rights to direct the upbringing of their children by securing a private therapist for B.F. and requested that staff not engage with their children, but actively and intentionally defied the parents' instructions by soliciting and participating in private meetings with B.F. and questioning whether B.F.'s parents could keep her safe or provide proper therapeutic care.

178.   Defendant Foley acted and continues to act with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that Ms. Foley knew that Plaintiffs Foote and Silvestri had exercised their parental rights to direct the upbringing of their children by securing a private therapist for B.F. and requested that staff not engage with their children, but actively and intentionally defied the parents' instructions by soliciting and participating in private meetings with B.F. and referring B.F. to Defendant Funke for private meetings aimed at facilitating and promoting social transitioning to a discordant gender identity without the knowledge and consent of her parents.

**Allegations Against Defendant Funke**

179.   Defendant Funke, when school librarian at Baird Middle School, acted with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that a) Ms. Funke knew or should have known that the DESE Guidance is not a legal mandate but claimed that it requires that school staff conceal information from parents; b) Ms. Funke knew or should have known that the DESE Guidance suggests only that school staff should speak to students before speaking to parents, but claimed that it supports Defendants' Protocol that parents are not to be told about children's gender-affirming social transitioning unless the child consents; c) Ms. Funke knew or should have known that under Massachusetts law parents have sole control and access to information in their child's records until

49

the child is age 14 or in the ninth grade, but deliberately concealed information and directed others to deliberately conceal information from parents of children under age 14 unless the child consents; d) Ms. Funke knew or should have known that under Massachusetts law parents must be informed of and consent to medical/mental health care for their children who are under 18, but nonetheless encouraged, facilitated, promoted and implemented gender-affirming social transitioning, a known mental health treatment, with children under age 18  without informing or gaining consent from parents.

180. Defendant Funke acted with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that Ms. Funke knew or should have known that Plaintiffs Foote and Silvestri had exercised their parental rights to direct the upbringing of their children by securing a private therapist for B.F. and requested that school staff not engage with their children regarding mental health issues, but actively engaged with B.F. regarding gender-affirming social transitioning without Plaintiffs' consent.

181. Defendant Funke acted with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that Ms. Funke actively defied the parents' instructions by meeting privately with B.F. and G.F. and promoting social transitioning through private meetings and conversations, recommendation of and referral to advocacy-driven sites, materials and activities to

experiment with discordant gender identities and socially transition without the knowledge and consent of their parents.

### General Allegations

182.   By approving and implementing the Protocol, all Defendants have and are explicitly and intentionally excluding Plaintiffs from significant decision-making directly related to their children's upbringing and care in a manner that Defendants know to be contrary to law.

183.   Defendants' reckless disregard for Plaintiffs' rights has resulted in and is resulting in deprivation of their fundamental constitutional rights.

184.   Plaintiffs' constitutionally protected right to direct the upbringing of their children was violated as the plainly obvious consequence of Defendants' actions in intentionally and explicitly concealing information and purposefully deceiving Plaintiffs in accordance with and through implementation of the Protocol.

185.   Plaintiffs' constitutionally protected right to direct the upbringing of their children was violated as the plainly obvious consequence of Defendants' actions in, *inter alia,* a) meeting secretly with their children to engage in counseling and advocacy related to mental health and discordant gender identity without parental notice and consent, b) deceiving parents by using one set of names and pronouns when communicating with them and another at school, c) directing children to speak untruthfully by instructing them to use alternate gender pronouns

and names for their peers, d) actively defying Plaintiffs' explicit instructions to not

engage in mental health discussions with their children, e) actively and intentionally

nurturing distrust for parents through secret meetings in which parents' decisions

and ability to act in the best interest of their children are questioned, and f) publicly

dismissing and demeaning parents' challenges to the Protocol as "bigotry" driven

by outside groups and pledging to continue to defy parental rights.

186.   Defendants cannot assert a compelling interest for disregarding

Plaintiffs' long-established fundamental constitutional right to direct the upbringing,

care, and custody of their children, and Defendants' protocol and actions in

furtherance thereof is not narrowly tailored.

187.   Defendants' violation of Plaintiffs' fundamental constitutional rights

has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

188.   Plaintiffs have no adequate remedy at law to correct the continuing

deprivation of their fundamental rights.

**SECOND CAUSE OF ACTION**
**VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983**
**(Violation of Plaintiffs' Fundamental Parental Right to Direct the Medical
and Mental Health Decision-making for Their Children Under the U.S.
Constitution)**
**(By All Plaintiffs Against all Defendants)**

189.   Plaintiffs incorporate the factual allegations in paragraphs 9-162 by

reference as if set forth in full.

190.   The Due Process Clause in the 14th Amendment to the United States Constitution protects the fundamental right of parents to direct the medical and mental health decision-making for their children. *Parham v. J. R.*, 442 U.S. 584 (1979). *See also, Custody of a Minor*, 375 Mass. 733, 747 (1978) (Parents, as the "natural guardians of their children," have the right to consent to routine, non-emergency treatment of a minor child).

191.   Social transitioning, or affirming a child's asserted discordant gender identity involves significant mental health and medical decisions affecting the well-being of children with potentially life-long consequences.

192.   Defendants' adoption and implementation of the Protocol that directs school administrators, teachers, counselors and staff to conceal from parents information and decisions regarding their children's assertion of a discordant gender identity and gender-affirming social transitioning (mental health treatment), and deceive parents by using given names and pronouns in their presence and children's preferred names and pronouns at all other times unless the children consent, infringes Plaintiffs' fundamental constitutional right as fit parents to make mental health decisions for their children.

193.   In adopting and implementing the Protocol, Defendants have usurped Plaintiffs' responsibility for the health and well-being of their children and sought to substitute their authority for Plaintiffs' authority as fit parents to be the ultimate

decisionmakers regarding the physical and mental health of their children, including decisions related to their children's assertion of discordant gender identities and request to socially transition, which is a known mental health treatment for gender dysphoria.

194.   Defendants have violated and are violating Plaintiffs' fundamental right to make decisions regarding the mental health of their children by adopting and implementing the Protocol providing that a) Parents are not to be informed if their children express a discordant gender identity and ask to socially transition unless the children consent; b) Parents are presumed to pose a danger to their children's health and well-being if informed of their child's assertion of a discordant gender identity and desire to socially transition; c) Parents are to be intentionally misled and lied to when school staff discuss their children, in that staff are to use the children's legal name and biologically accurate pronouns when talking to parents but not in other circumstances; and d) Parents' directives that school staff not interfere with parents' decisions regarding therapy for their children are to be ignored.

195.   By excluding parents from discussions regarding their children's assertion of a discordant gender identity and adopting and implementing the Protocol requiring secrecy unless children consent, Defendants have made and continue to make decisions that affect the mental health of Plaintiffs' children in contravention of Plaintiffs' fundamental rights as enumerated in the U.S. Constitution.

196.   Defendants have acted and continue to act with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience as described *infra*.

**Allegations Regarding School Committee and Town**

197.  Defendant School Committee, acting as final policymaker for Defendant Town, has acted and continues to   act with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that a) The School Committee knows that the DESE Guidance is not a legal mandate but claims that it requires that school staff conceal information from parents; b) The School Committee knows that the DESE Guidance suggests only that school staff should speak to students before speaking to parents, but claims that it supports Defendant's Protocol that parents are not to be told about children's gender-affirming social transitioning unless the child consents; c) The School Committee knows that under Massachusetts law parents have sole control and access to information in their child's records until the child is age 14 or in the ninth grade, but sanctions the deliberate concealment of information from parents of children under age 14 unless the child consents; d) The School Committee knows that under Massachusetts law parents must be informed of and consent to medical/mental health care for their children who are under 18, but has approved and implemented a Protocol that directs staff to encourage, facilitate, promote and implement gender-

55

affirming social transitioning, a known mental health treatment, with children under age 18  without informing or gaining consent from parents.

**Allegations Against Defendant Gazda**

198.   Defendant Gazda, as superintendent charged with implementing policies sanctioned by the School Committee, through June 2021, acted with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that a) Mr. Gazda knew that the DESE Guidance is not a legal mandate, but claimed that it requires that school staff conceal information from parents; b) Mr. Gazda knew that the DESE Guidance suggests only that school staff should speak to students before speaking to parents, but claimed that it supports Defendants' Protocol that parents are not to be told about children's gender-affirming social transitioning unless the child consents; c) Mr. Gazda knew that under Massachusetts law parents have sole control and access to information in their child's records until the child is age 14 or in the ninth grade, but directed school staff to deliberately conceal information from parents of children under age 14 unless the child consents; d) Mr. Gazda knew that under Massachusetts law, parents must be informed of and consent to medical/mental health care for their children who are under 18, but approved and implemented a Protocol that directs staff to facilitate and encourage gender-affirming social transitioning, a known mental health treatment, with children under age 18 without informing or obtaining consent from parents.

56

199.   Defendant Gazda, as superintendent charged with implementing policies sanctioned by the School Committee, through June 2021 acted with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that Mr. Gazda knew that Plaintiffs Foote and Silvestri had exercised their parental right to make mental health decisions for their children by securing a private therapist for B.F. and requested that school staff not engage with their children regarding mental health issues, but failed to adequately supervise and train employees to not implement the Protocol or actively encouraged employees to implement the Protocol and engage with Plaintiffs' children without notifying Plaintiffs.

200.   Defendant Gazda acted with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that Mr. Gazda publicly stated during School Committee meetings that parents with concerns about not being notified and their decisions not being honored regarding their children's gender identity issues were driven by "prejudice and bigotry," and "under the spell" of "outside groups," and that school officials would continue with their policies regardless of what parents thought or instructed.

**Allegations Against Defendant Nemeth**

201.   Defendant Nemeth, as interim superintendent charged with implementing policies sanctioned by the School Committee, since June 2021 has

57

acted and is acting with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that a) Ms. Nemeth knows that the DESE Guidance is not a legal mandate, but claims that it requires that school staff conceal information from parents; b) Ms. Nemeth knows that the DESE Guidance suggests only that school staff should speak to students before speaking to parents, but claims that it supports Defendants' Protocol that parents are not to be told about children's gender-affirming social transitioning unless the child consents; c) Ms. Nemeth knows that under Massachusetts law parents have sole control and access to information in their child's records until the child is age 14 or in the ninth grade, but directs school staff to deliberately conceal information from parents of children under age 14 unless the child consents; d) Ms. Nemeth knows that under Massachusetts law parents must be informed of and consent to medical/mental health care for their children who are under 18, but implements a Protocol that directs staff to encourage, facilitate, promote and implement gender-affirming social transitioning, a known mental health treatment, with children under age 18  without informing or obtaining consent from parents.

### Allegations Against Defendant Monette

202.   Defendant Monette, as principal of Baird Middle School charged with implementing policies sanctioned by the School Committee at the school, has acted with reckless disregard for Plaintiffs' fundamental parental rights in a manner that

58

shocks the conscience in that a) Ms. Monette knew or should have known that the DESE Guidance is not a legal mandate, but claimed that it requires that school staff conceal information from parents; b) Ms. Monette knew or should have known that the DESE Guidance suggests only that school staff should speak to students before speaking to parents, but claimed that it supports Defendants' Protocol that parents are not to be told about children's gender-affirming social transitioning unless the child consents; c) Ms. Monette knew or should have known that under Massachusetts law parents have sole control and access to information in their child's records until the child is age 14 or in the ninth grade, but directed school staff to deliberately conceal information from parents of children under age 14 unless the child consents; d) Ms. Monette knew or should have known that under Massachusetts law parents must be informed of and consent to medical/mental health care for their children who are under 18, but implemented a Protocol that directs staff to encourage, facilitate, promote and implement gender-affirming social transitioning, a known mental health treatment, with children under age 18 without informing or gaining consent from parents.

203.   Defendant Monette as principal of Baird Middle School acted with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that Ms. Monette knew that Plaintiffs Foote and Silvestri had exercised their parental right to make mental health decisions for their children by

59

securing a private therapist for B.F. and requested that school staff not engage with their children regarding mental health issues, but failed to adequately supervise and train employees to not implement the Protocol or actively encouraged employees to implement the Protocol and engage with Plaintiffs' children without notifying Plaintiffs.

**Allegations Against Defendant Foley**

204.   Defendant Foley as school counselor at Baird Middle School has acted and continues act with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that a) Ms. Foley knows or should have known that the DESE Guidance is not a legal mandate, but claims that it requires that school staff conceal information from parents; b) Ms. Foley knows or should have known that the DESE Guidance suggests only that school staff should speak to students before speaking to parents, but claims that it supports Defendants' Protocol that parents are not to be told about children's gender-affirming social transitioning unless the child consents; c) Ms. Foley knows or should have known that under Massachusetts law parents have sole control and access to information in their child's records until the child is age 14 or in the ninth grade, but deliberately concealed information and directed others to deliberately conceal information from parents of children under age 14 unless the child consents; d) Ms. Foley knows or should have known that under Massachusetts law parents must be informed of and

consent to medical/mental health care for their children who are under 18, but encouraged, facilitated, promoted and implemented gender-affirming social transitioning, a known mental health treatment, with children under age 18 without informing or gaining consent from parents; e) Ms. Foley knows or should have known that under Massachusetts law parents have sole control over their children's information until children are 14 years old or in grade nine and that parents must consent to mental health treatment for their children, but told Baird Middle School staff that the law did not require providing information related to gender identity to parents of children under age 14..

205.   Defendant Foley acted and continues to act with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that Ms. Foley knew that Plaintiffs Foote and Silvestri had exercised their parental rights to make mental health decisions for their children by securing a private therapist for B.F. and requested that school staff not engage with their children regarding mental health issues, but actively engaged with B.F. regarding her mental health issues related to  a discordant gender identity without notifying Plaintiffs.

206.   Defendant Foley acted and continues to act with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that Ms. Foley knew that Plaintiffs Foote and Silvestri had exercised their parental rights to make mental health decisions for their children by securing a private therapist for

B.F. and requested that staff not engage with their children, but actively defied the parents' instructions by soliciting and participating in private meetings with B.F. and questioning whether B.F.'s parents could keep her safe or provide proper therapeutic care.

207. Defendant Foley acted and continues to act with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that Ms. Foley knew that Plaintiffs Foote and Silvestri had exercised their parental rights to make mental health decisions for their children by securing a private therapist for B.F. and requested that staff not engage with their children, but actively defied the parents' instructions by soliciting and participating in private meetings with B.F. and referring B.F. to Defendant Funke for private meetings aimed at facilitating and promoting B.F.'s gender-affirming social transitioning to a discordant gender identity without the knowledge and consent of her parents.

**Allegations Against Defendant Funke**

208. Defendant Funke when school librarian at Baird Middle School acted with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that a) Ms. Funke knew or should have known that the DESE Guidance is not a legal mandate, but claimed that it requires that school staff conceal information from parents; b) Ms. Funke knew or should have known that the DESE Guidance suggests only that school staff should speak to students before

speaking to parents, but claimed that it supports Defendants' Protocol that parents are not to be told about children's gender-affirming social transitioning unless the child consents; c) Ms. Funke knew or should have known that under Massachusetts law parents have sole control and access to information in their child's records until the child is age 14 or in the ninth grade, but deliberately concealed information from parents of children under age 14 unless the child consents; d) Ms. Funke knew or should have known that under Massachusetts law parents must be informed of and consent to medical/mental health care for their children who are under 18, but encouraged, facilitated, promoted and implemented gender-affirming social transitioning, a known mental health treatment, with children under age 18 without informing or gaining consent from parents.

209. Defendant Funke acted with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that Ms. Funke knew or should have known that Plaintiffs Foote and Silvestri had exercised their parental rights to make mental health decisions for their children by securing a private therapist for B.F. and requested that school staff not engage with their children regarding mental health issues, but actively engaged with B.F. regarding gender-affirming social transitioning without Plaintiffs' consent.

210. Defendant Funke acted with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that Ms. Funke

actively defied the parents' instructions by meeting privately with B.F. and G.F. and encouraging them through conversations, materials, internet sites, and recommended activities to experiment with discordant gender identities and socially transition without the knowledge and consent of their parents.

### General Allegations

211.   Defendants' reckless disregard for Plaintiffs' rights has resulted in and continues to result in deprivation of their fundamental constitutional rights.

212.   Plaintiffs' constitutionally and statutorily protected rights to make decisions regarding the mental health of their children was violated as the plainly obvious consequence of Defendants' actions in adopting and implementing the Protocol that intentionally concealed from Plaintiffs information regarding their children's assertion of discordant gender identities and gender-affirming social transitioning, recognized mental health treatments.

213.   Plaintiffs' constitutionally protected right to make mental health decisions for their children was violated as the plainly obvious consequence of Defendants' actions in, *inter alia,* a) meeting secretly with their children to engage in counseling and advocacy related to mental health and discordant gender identity without parental notice and consent, b) deceiving parents by using one set of names and pronouns when communicating with them and another at school, c) directing children to speak untruthfully by instructing them to use alternate gender pronouns

and names for their peers, d) actively defying Plaintiffs' instructions to not engage in mental health discussions with their children, d) actively and intentionally nurturing distrust for parents through secret meetings in which parents' decisions and ability to provide for their children are questioned, and e) publicly dismissing and demeaning parents' challenges to the Protocol as "bigotry" driven by outside groups and pledging to continue to defy parental rights.

214.   Defendants cannot assert a compelling interest for disregarding Plaintiffs' long-established fundamental constitutional right to direct the medical and mental health care for their children.

215.   Defendants' prohibition against parental notification is not narrowly tailored.

216.   Defendants' violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

217.   Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their fundamental rights.

**THIRD CAUSE OF ACTION**
**VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983**
**(Violation of Plaintiffs' Right to Familial Privacy Under the U.S. Constitution)**
**(By All Plaintiffs Against all Defendants)**

218.   Plaintiffs incorporate the factual allegations in paragraphs 9-162 by reference as if set forth in full.

219.   The Due Process Clause in the 14th Amendment to the United States Constitution protects the sanctity of the family as an institution deeply rooted in this Nation's history and tradition through which moral and cultural values are passed down. *Moore v. East Cleveland*, 431 U.S. 494, 503-04 (1977). The Constitution protects the private realm of the family from interference by the state. *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944).

220.   In substituting their judgment regarding the mental health and identity of B.F., G.F., and other Ludlow Public Schools students for the judgment of their parents by implementing the Protocol to withhold information regarding children's assertion of a discordant gender identity and request to affirm that identity without notifying the parents, Defendants have impermissibly inserted themselves into the private realm of Plaintiffs' families by usurping Plaintiffs' rights to make decisions regarding their children's upbringing, mental health, and well-being.

221.   In substituting their judgment for the judgment of parents by refusing to inform parents or comply with parents' instructions when their children disclose a discordant gender identity and seek affirmation of the identity at school without notifying the parents, Defendants have impermissibly inserted themselves into the private realm of Plaintiffs' families by depriving B.F., G.F., and other minor Ludlow Public Schools students of their right to have decisions regarding their upbringing, mental health and well-being made by their parents.

222.   Defendants have infringed Plaintiffs' right to family privacy by adopting and implementing the Protocol and associated procedures which send the message to children that their parents cannot be trusted to be informed of or to make decisions related to their assertion of a discordant gender identity.

223.   Defendants School Committee, acting as final policymaker for the Town, and Gazda have explicitly evidenced their hostility toward Plaintiffs' rights to familial privacy and intent to infringe upon family privacy through public statements that Defendants' schools are the only safe space for many children, that parental concerns about their children proclaiming a discordant gender identities are rooted in bigotry, and that school officials will continue to defy parental requests to be informed about children's gender-affirming social transitioning.

224.   Through their implementation of the Protocol and public statements denigrating parents who disagree with the Protocol, Defendants have sent and continue to send the message to Plaintiffs' children that their parents cannot be trusted to make decisions or act in their children's best interests, thereby impermissibly inserting themselves into the private realm of Plaintiffs' family and creating discord between parents and their children.

225.   Defendants have acted and are acting with reckless disregard for Plaintiffs' rights to family privacy by their actions in intentionally casting doubt on parents' ability to respond appropriately to their children's expression of discordant

67

gender identities and excluding parents from decision-making related to their children's questions regarding their sex and gender identity.

226.  Defendants have acted and are acting with reckless disregard for Plaintiffs' rights to family privacy by their actions in giving children the power to determine whether their parents can be informed about their children's discordant gender identity and gender-affirming social transitioning, thereby disrupting the family dynamic in a way contrary to the law's provision of decision-making authority to parents.

227.  Defendants have acted and are acting with reckless disregard for Plaintiffs' fundamental right to family privacy in a manner that shocks the conscience as described *infra.*

**Allegations Regarding School Committee and Town**

228.  Defendant School Committee, acting as final policymaker for Defendant Town, has acted and is acting with reckless disregard for Plaintiffs' fundamental right to family privacy in a manner that shocks the conscience in that a) The School Committee knows that the DESE Guidance is not a legal mandate but claims that it requires that school staff conceal information from parents; b) The School Committee knows that the DESE Guidance suggests only that school staff should speak to students before speaking to parents, but claims that it permits the reversal of parent and child roles by providing that parents are not to be told about

children's gender-affirming social transitioning unless the minor child consents; c) The School Committee knows that under Massachusetts law parents have sole control and access to information in their child's records until the child is age 14 or in the ninth grade, but sanctions deliberately concealing information from parents of children under age 14 unless the child consents; d) The School Committee knows that under Massachusetts law parents must be informed of and consent to medical/mental health care for their children who are under 18, but have approved a Protocol that directs staff to encourage, facilitate, develop and implement gender-affirming social transitioning, a known mental health treatment, with children under age 18  without informing or gaining consent from parents.

### Allegations Against Defendant Gazda

229.   Defendant Gazda as superintendent charged with implementing policies sanctioned by the School Committee through June 2021 acted with reckless disregard for Plaintiffs' fundamental right to family privacy in a manner that shocks the conscience in that a) Mr. Gazda knew that the DESE Guidance is not a legal mandate but claimed that it requires that school staff conceal information from parents; b) Mr. Gazda knew that the DESE Guidance suggests only that school staff should speak to students before speaking to parents, but claimed that it permits the reversal of parent and child roles by providing that parents are not to be told about children's gender-affirming social transitioning unless the child consents; c) Mr.

Gazda knew that under Massachusetts law parents have sole control and access to information in their child's records until the child is age 14 or in the ninth grade, but directed school staff to deliberately conceal information from parents of children under age 14 unless the child consents, thereby reversing the roles of parents and children; d) Mr. Gazda knew that under Massachusetts law parents must be informed of and consent to medical/mental health care for their children who are under 18, but approved and implemented a Protocol that directs staff to encourage, facilitate, promote and implement gender-affirming social transitioning, a known mental health treatment, with children under age 18 without informing or obtaining consent from parents.

230. Defendant Gazda, as superintendent charged with implementing policies sanctioned by the School Committee, through June 2021 acted with reckless disregard for Plaintiffs' fundamental right to family privacy in a manner that shocks the conscience in that Mr. Gazda knew that Plaintiffs Foote and Silvestri had exercised their rights as parents to provide mental health care through a private therapist and requested that school staff respect their rights and not engage with their children, but failed to adequately supervise and train employees to not implement the Protocol or actively encouraged employees to defy Plaintiffs' directions and engage with Plaintiffs' children without notifying Plaintiffs.

231. Defendant Gazda acted with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that Mr. Gazda publicly stated during School Committee meetings that parents with concerns about not being notified and their decisions not being honored regarding their children's gender identity issues were driven by "prejudice and bigotry," and "under the spell" of "outside groups," and that school officials would continue with their policies regardless of what parents thought.

**Allegations Against Defendant Nemeth**

232. Defendant Nemeth, as interim superintendent charged with implementing policies sanctioned by the School Committee, since June 2021 has acted and is acting with reckless disregard for Plaintiffs' fundamental right to family privacy in a manner that shocks the conscience in that a) Ms. Nemeth knows that the DESE Guidance is not a legal mandate but claims that it requires that school staff conceal information from parents; b) Ms. Nemeth knows that the DESE Guidance suggests only that school staff should speak to students before speaking to parents, but claims that it permits the reversal of parent and child roles by providing that parents are not to be told about children's gender-affirming social transitioning unless the child consents; c) Ms. Nemeth knows that under Massachusetts law parents have sole control and access to information in their child's records until the child is age14 or in the ninth grade, but directs school staff to deliberately conceal

71

information from parents of children under age 14 unless the child consents; d) Ms. Nemeth knows that under Massachusetts law parents must be informed of and consent to medical/mental health care for their children who are under 18, but implements a Protocol that directs staff to encourage, facilitate, promote and implement gender-affirming social transitioning, a known mental health treatment, with children under age 18 without informing or gaining consent from parents.

**Allegations Against Defendant Monette**

233.   Defendant Monette, as principal of Baird Middle School charged with implementing policies sanctioned by the School Committee at the school, has acted with reckless disregard for Plaintiffs' fundamental  right to familial privacy in a manner that shocks the conscience in that a) Ms. Monette knew or should have known that the DESE Guidance is not a legal mandate but claimed that it requires that school staff conceal information from parents; b) Ms. Monette knew or should have known that the DESE Guidance suggests only that school staff should speak to students before speaking to parents, but claimed that it permits the reversal of parent and child roles by providing that parents are not to be told about children's gender-affirming social transitioning unless the child consents; c) Ms. Monette knew or should have known that under Massachusetts law parents have sole control and access to information in their child's records until the child is age 14 or in the ninth grade, but directed school staff to deliberately conceal information from parents of

children under age 14 unless the child consents; d) Ms. Monette knew or should have known that under Massachusetts law parents must be informed of and consent to medical/mental health care for their children who are under 18, but implemented a Protocol that directs staff to encourage, facilitate, promote and implement gender-affirming social transitioning, a known mental health treatment, with children under age 18  without informing or gaining consent from parents.

234.   Defendant Monette as principal of Baird Middle School acted with reckless disregard for Plaintiffs' fundamental  right to familial privacy in a manner that shocks the conscience in that Ms. Monette knew that Plaintiffs Foote and Silvestri had exercised their rights as parents to provide mental health care through a private therapist and requested that school staff respect their rights and not engage with their children, but failed to adequately supervise and train employees to not implement the Protocol or actively encouraged employees to defy Plaintiffs' directions and engage with Plaintiffs' children without notifying Plaintiffs.

**Allegations Against Defendant Foley**

235.   Defendant Foley, as school counselor at Baird Middle School, has acted and continues act with reckless disregard for Plaintiffs' fundamental right to family privacy in a manner that shocks the conscience in that a) Ms. Foley knows or should have known that the DESE Guidance is not a legal mandate but claims that it requires that school staff conceal information from parents; b) Ms. Foley knows or should

have known that the DESE Guidance suggests only that school staff should speak to students before speaking to parents, but claims that it permits the reversal of parent and child roles by providing that parents are not to be told about children's gender-affirming social transitioning unless the child consents; c) Ms. Foley knows or should have known that under Massachusetts law parents have sole control and access to information in their child's records until the child is age 14 or in the ninth grade, but deliberately concealed information and directed others to deliberately conceal information from parents of children under age 14 unless the child consents; d) Ms. Foley knows or should have known that under Massachusetts law parents must be informed of and consent to medical/mental health care for their children who are under 18, but encouraged, facilitated, promoted and implemented gender-affirming social transitioning, a known mental health treatment, with children under age 18  without informing or gaining consent from parents.

236.   Defendant Foley acted and continues to act with reckless disregard for Plaintiffs' fundamental  right to familial privacy in a manner that shocks the conscience in that Ms. Foley knew that Plaintiffs Foote and Silvestri had exercised their rights as parents to provide mental health care through a private therapist and requested that school staff respect their rights and not engage with their children on these matters, but intentionally defied Plaintiffs' directions and engaged with

Plaintiffs' children without notifying Plaintiffs, thereby inserting herself into the family dynamic in violation of Plaintiffs' right to family privacy.

237.   Defendant Foley acted and continues to act with reckless disregard for Plaintiffs' fundamental   right to familial privacy in a manner that shocks the conscience in that Ms. Foley knew that Plaintiffs Foote and Silvestri had exercised their rights as parents to provide mental health care through a private therapist and requested that school staff respect their rights and not engage with their children on these matters, but actively defied the parents' instructions by soliciting and participating in private meetings with B.F. and questioning whether B.F.'s parents could keep her safe or provide proper therapeutic care.

238.   Defendant Foley acted and continues to act with reckless disregard for Plaintiffs' fundamental parental rights in a manner that shocks the conscience in that Ms. Foley knew that Plaintiffs Foote and Silvestri had exercised their rights as parents to provide mental health care through a private therapist and requested that school staff respect their rights and not engage with their children on these matters, but actively defied the parents' instructions by referring B.F. to Defendant Funke for private meetings aimed at facilitating and promoting gender-affirming social transitioning to a discordant gender identity without the knowledge and consent of her parents.

**Allegations Against Defendant Funke**

239.   Defendant Funke, when school librarian at Baird Middle School, acted with reckless disregard for Plaintiffs' fundamental right to familial privacy in a manner that shocks the conscience in that a) Ms. Funke knew or should have known that the DESE Guidance is not a legal mandate but claimed that it requires that school staff conceal information from parents; b) Ms. Funke knew or should have known that the DESE Guidance suggests only that school staff should speak to students before speaking to parents, but claimed that it permits the reversal of parent and child roles by providing that parents are not to be told about children's gender-affirming social transitioning unless the child consents; c) Ms. Funke knew or should have known that under Massachusetts law parents have sole control and access to information in their child's records until the child is age 14 or in the ninth grade, but deliberately concealed information and directed others to deliberately conceal information from parents of children under age 14 unless the child consents; d) Ms. Funke knew or should have known that under Massachusetts law parents must be informed of and consent to medical/mental health care for their children who are under 18, but encouraged, facilitated, promoted and implemented gender-affirming social transitioning, a known mental health treatment, with children under age 18 without informing or gaining consent from parents.

240. Defendant Funke acted with reckless disregard for Plaintiffs' fundamental right to family privacy in a manner that shocks the conscience in that Ms. Funke knew or should have known that Plaintiffs Foote and Silvestri had exercised their parental rights by securing a private therapist for B.F. and requested that school staff not engage with their children regarding mental health issues, but actively engaged with B.F. regarding gender-affirming social transitioning without Plaintiffs' consent thereby impermissibly inserting herself into the Plaintiffs' family dynamic.

241. Defendant Funke acted with reckless disregard for Plaintiffs' fundamental right to family privacy in a manner that shocks the conscience in that Ms. Funke actively defied the parents' instructions by meeting privately with B.F. and G.F. and encouraging them through conversations, materials, internet sites, and recommended activities to experiment with discordant gender identities and socially transition without the knowledge and consent of their parents.

**General Allegations**

242. Defendants' deliberate indifference to Plaintiffs' rights has resulted in and continues to result in deprivation of their constitutional rights to family privacy.

243. Plaintiffs' constitutionally protected rights to family privacy were violated as the plainly obvious consequence of Defendants' actions in intentionally and explicitly withholding information in accordance with the Protocol that parents

were not to be notified when their children assert a discordant gender identity and seek to socially transition unless the children consent.

244.   Plaintiffs' constitutionally protected right to family privacy was violated as the plainly obvious consequence of Defendants' actions in, *inter alia,*  a) meeting secretly with their children to engage in counseling and ideologically-driven advocacy related to mental health and discordant gender identity without parental notice and consent, b) deceiving parents by using one set of names and pronouns when communicating with them and another at school, c) directing children to speak untruthfully by instructing them to use alternate gender pronouns and names for their peers, and d) nurturing distrust for parents through secret meetings in which parents' decisions and ability to act in the best interest of their children are questioned, thus disrupting the parent-child relationship.

245.   Defendants cannot assert a compelling state interest for recklessly disregarding Plaintiffs' constitutional rights to family privacy.

246.   Defendants' prohibitions against parental notification and unauthorized involvement in children's mental health decisions related to gender identity are not narrowly tailored.

247.   Defendants' violation of Plaintiffs' constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm in that Plaintiffs have been and are being denied their right to direct decisions concerning the

upbringing and mental health care for their children without interference from the state, and their children are denied the right to have upbringing and mental health decisions made by their parents in keeping with their family values, advice of the family's mental health professionals, and their sincerely held religious beliefs.

248.   Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their fundamental rights.

## FOURTH CAUSE OF ACTION
### Violation of Civil Rights, 42 U.S.C. § 1983
### (Violation of Plaintiffs' Right to Free Exercise of Religion Under the U.S. Constitution)
### (By Plaintiffs Feliciano and Salmeron Against all Defendants)

249.   Plaintiffs incorporate the factual allegations in paragraphs 9-162 by reference as if set forth in full.

250.   The Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits Defendants from abridging Plaintiffs' right to free exercise of religion.

251.   Plaintiffs have sincerely held Biblically-based religious beliefs that human beings are created male or female and that the natural created order regarding human sexuality cannot be changed regardless of individual feelings, beliefs, or discomfort with one's identity, and biological reality, as either male or female.

252.   Plaintiffs have Biblically-based sincerely held religious beliefs that parents have the non-delegable duty to direct the upbringing and beliefs, religious

training, and medical and mental health care of their children, that children are to respect their parents' authority, and that any intrusion of the government into that realm infringes upon the free exercise of their religion.

253.   Plaintiffs have sincerely held Biblically-based religious beliefs that all people are to be treated with respect and compassion, and that respect and compassion do not include misrepresenting an individual's natural created identity as either a male or a female.

254.   Plaintiffs have sincerely held religious beliefs that individuals are to speak the truth, including speaking the truth regarding matters of sexual identity as a male or female.

255.   Defendants' actions in excluding Plaintiffs Feliciano and Salmeron from decision making regarding their children's sexual and gender identity target the Plaintiffs' beliefs regarding the created order, human nature, sexuality, gender, parental authority, and morality which constitute central components of their sincerely held religious beliefs.

256.   Defendants' actions have caused a direct and immediate conflict with Plaintiffs' religious beliefs by prohibiting them from being informed of mental health issues their children are or might be experiencing and by denying them the opportunity to seek counseling and guidance for their children in a manner that is consistent with the beliefs sincerely held by their family instead of the government.

257.   Defendants' actions are coercive in that they deliberately supplant Plaintiffs' role as advisors of the moral and religious development of their children so that they are not able to direct their children's mental health care, counseling, and beliefs regarding sex and gender identity in accordance with their values because Defendants have substituted and supplanted the state's perspective on the issues of sex and gender identity for the perspective of Plaintiffs in violation of Plaintiffs' free exercise rights.

258.   Defendants' actions are neither neutral nor generally applicable, but rather, specifically and discriminatorily target the religious speech, beliefs, and viewpoint of Plaintiffs and, thus, expressly constitute a substantial burden on sincerely held religious beliefs that are contrary to Defendants' viewpoint regarding gender identity and affirmation of a discordant gender identity.

259.   No compelling state interest justifies the burdens Defendants have imposed and are imposing on Plaintiffs' rights to the free exercise of religion.

260.   Defendants' actions are not the least restrictive means to accomplish any permissible government purpose Defendants seek to serve.

261.   Defendants' violation of Plaintiffs' rights to free exercise of religion has caused, is causing, and will continue to cause Plaintiffs to suffer undue and actual hardships.

262.   Defendants' violation of Plaintiffs' rights to free exercise of religion has caused, is causing, and will continue to cause Plaintiffs to suffer irreparable injury. Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their most cherished constitutional liberties.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the following relief:

1.   A declaration that Defendants have violated Plaintiffs' fundamental rights as parents, under the United States Constitution and other laws to the extent that they: a) have approved and implemented a Protocol to conceal from parents when their children express a discordant gender identity and are being socially transitioned, unless the children consent; b) actively implement and reinforce the Protocol through surreptitious meetings with minor children to discuss gender identity, socially transition, and promote experimenting with alternative gender identities without the knowledge or consent of their parents; c) actively and intentionally nurture in children distrust of their parents by questioning the parents' care for their children during secret meetings of which the parents are not aware nor consent to; and d) actively and intentionally direct school staff to deceive parents by using given names and pronouns in communications with parents but otherwise affirming a minor child's preferred gender discordant name and pronouns.

2.  A declaration that teachers and staff: a) may not facilitate a child's social transition to a different gender identity at school without parental notification and consent; b) must communicate with parents if they have reason to believe their child may be dealing with gender confusion or dysphoria, without first obtaining the child's consent; and c) may not attempt to deceive parents by, *inter alia,* using different names and pronouns around parents than are used in school;

3.  A declaration that the Protocol and any associated policies, procedures, and practices are to be publicly rescinded and that parents be notified that the Protocol and associated policies and procedures have been rescinded.

4.  Preliminary and permanent injunctions prohibiting Defendants, their employees, agents and third parties acting at their direction, from: a) Using, referencing, relying on, or otherwise acting upon the Protocol and associated policies and procedures fostering secrecy from parents as guidance for Ludlow Public Schools' staff and administrators; b)   Training staff to exclude parents from discussions, meetings, and other interventions with the parents' children related to their children's assertion of a discordant gender identity and desire to socially transition; c) Failing to notify parents when their children express the belief that they have a discordant gender identity and want to take actions to affirm that identify; d) Failing or refusing to abide by parents' instructions concerning their children's discordant gender identity; e) Meeting with children to discuss, promote, or engage

in counseling regarding the children's discordant gender identity and desire to socially transition without notice to and the consent of their parents.

5.   Preliminary and permanent injunctions prohibiting Defendants, their employees, agents and third parties acting at their direction from instructing, directing, or encouraging Ludlow Public Schools staff to participate in programs, initiatives, activities, or discussions in which Ludlow Public Schools staff promise children that their parents will not be told about the children's disclosures about a discordant gender identity or that they are socially transitioning at school.

6.   For nominal damages;

7.   For compensatory damages according to proof for the injuries caused by Defendants' acts and omissions, as proven at trial;

8.   For attorneys' fees and costs under 42 U.S.C. § 1988;

9.   For such other relief as the Court deems proper.

Dated: June  21, 2022.

> Andrew Beckwith
> MA Bar No.  657747
> Massachusetts Family Institute
> 401 Edgewater Place, Suite 580
> Wakefield, MA 01880
> 781.569.0400
> andrew@mafamily.org
>
> */s/Mary E. McAlister*
> Vernadette R. Broyles (GA Bar No. 593026)*
> Mary E. McAlister (VA Bar No. 76057)*

CHILD & PARENTAL RIGHTS CAMPAIGN, INC.
5805 State Bridge Rd., Suite G310
Johns Creek, GA 30097
770.448.4525
vbroyles@childparentrights.org
mmcalister@childparentrights.org
*admitted pro hac vice
Attorneys for Plaintiffs

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed electronically with the Court on June 21, 2022. Service will be effectuated by the Court's electronic notification system upon all counsel or parties of record.

*/s/Mary E. McAlister*
Mary E. McAlister

There are a group of individuals in our community who continue to take exception to the inclusive practices of our schools. As an educational community, our staff strives to create an environment where every student and staff member feels safe, supported and free to be themselves regardless of their race, sexual orientation, disability or gender identity. We take pride in the fact that we are an inclusive public school system and the only message we are "pushing" is one of acceptance and inclusion.

Every action we take is in compliance with the laws and regulations of our state and the guidance on these issues released by the Massachusetts Department of Elementary and Secondary Education. However, we take the actions we do to support our students not because we are required to, but because we celebrate the diversity of our student and staff population. If anything, we do not do enough to support our LGBTQ students and staff and we need to do more.

Right now we have a situation where intolerance, prejudice and bigotry against LGBTQ individuals by members of our community is being thinly veiled behind a camouflage of what is being asserted as "parental rights". Half-truths, misrepresentations, incomplete information and false accusations are being put forth to support this façade.

Myself and other members of our Ludlow staff have been called, evil, sick, twisted and deviants. We have been accused of "grooming" students, implying we are pedophiles, for supporting an inclusive environment in our schools where all students and staff can feel safe and supported. Harassing phone calls have been made to our personal home phones and cell phones all in a pathetic attempt to intimidate and harass.

At it's core this current controversy isn't about sex, it's about identity. It is about ensuring a safe environment with caring adults that students can rely on to discuss problems, issues or questions they might have. For many of our students school **IS** their only safe place and that safety evaporates when they leave the confines of our buildings.

We will not support any action that denies our students the right to express who they are at the most basic level as an individual.  We cannot consider any requirement that would cause us to discriminate against members of our student body or staff by refusing to recognize them in the manner they wish to be identified as an individual.

This may be my last meeting as the superintendent of the Ludlow Public Schools, but I am confident that the Ludlow school committee, administrators, teachers and staff will stand up to this prejudice and bigotry and continue to create a safe, caring, supportive inclusive environment where all our students can grow as individuals.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WESTERN SECTION

STEPHEN FOOTE, et al.,        )
                             )
           Plaintiffs,       )
                             )   No. 3:22-CV-30041-MGM
vs.                          )
                             )
TOWN OF LUDLOW, LUDLOW SCHOOL )
COMMITTEE, et al.,           )
                Defendants.  )

Before the Honorable Mark G. Mastroianni
United States District Court Judge
Hearing held at Western New England University School of Law,
1215 Wilbraham Road, Springfield, Massachusetts
on Monday, October 17, 2022.

APPEARANCES:

FOR THE PLAINTIFFS:
         CHILD & PARENTAL RIGHTS CAMPAIGN, INC.
BY:      Mary E. McAlister
         5805 State Bridge Road, Suite G310
         Johns Creek, GA 30092
         -and-
         Andrew Beckwith
         5 Batchelder Park
         Wenham, Massachusetts 01984

FOR THE DEFENDANTS:
         ROBINSON DONOVAN, P.C.
BY:      David S. Lawless
         -and-
         Nancy Frankel Pelletier
         1500 Main Street, Suite 2300
         Springfield, Massachusetts 01115

                Leigh B. Gershowitz, RMR, CRR
                Official Federal Court Reporter
                   United States Courthouse
                  300 State Street, Room 303D
                Springfield, Massachusetts 01105

P R O C E E D I N G S

(Hearing commenced at 12:08 p.m.)

THE CLERK:  Your Honor, the matter before the Court civil case 22-30041, Foote, et al. versus Ludlow School Committee.

Counsel, can you please identify yourself for the record, starting with the plaintiff.

ATTORNEY McALISTER:  Yes, your Honor.  Mary McAlister, Child & Parental Rights Campaign.

ATTORNEY BECKWITH:  Your Honor, Andrew Beckwith, Massachusetts families.

THE COURT:  Okay.  Nice to meet you both.

ATTORNEY LAWLESS:  Good afternoon, your Honor. David Lawless for the defendants.

ATTORNEY PELLETIER:  Good afternoon, your Honor. Nancy Frankel Pelletier for the defendants.

THE COURT:  All right.  Good to see you.  Thank you. And thank you to all of the attorneys for being here at the law school.  It is a little bit different than the usual presentation.  The cases that are here at the law school provide a very good opportunity for an educational experience.  And you did receive notice that your presentation will include and take into consideration the identifying standards and defining standards for the purpose of the benefit of the students.  And so thank you very much

1    for undertaking that.  It is very much appreciated.  And

2    happy that it is here, the law school that I graduated from.

3         Welcome to everyone that is here to watch the

4    arguments today.  I am very happy to be here.  Very happy to

5    see some of my students here from this year and from previous

6    years and familiar faces from faculty, staff at the law

7    school, and, of course, students at the law school, and the

8    people who work here.  So thanks to everyone for being here.

9         All right.  In this matter of Foote versus the

10   Ludlow School Committee, motion to dismiss was filed on

11   behalf of the Ludlow School Committee, motion to dismiss

12   cites several theories.  Two of the theories are the subject

13   matter jurisdiction issue and 12(b)(6) issue.  Seems the

14   burden is on the plaintiff to address these issues.  I do

15   think that the argument will likely end up going back and

16   forth as issues arise.  I might want to hear from the other

17   side and then come back, whether we do that back and forth.

18   I may let you just go through with your argument.  We'll see

19   how it goes.  All right?

20        ATTORNEY McALISTER:  Yes, your Honor.

21        THE COURT:  Go right ahead.  Happy to hear from you.

22   Plaintiff.

23        ATTORNEY McALISTER:  You want plaintiff first?

24        THE COURT:  Yes.

25        ATTORNEY McALISTER:  It is their motion.

1          Thank you, your Honor.  On a standing issue, I

2     believe in our memo we indicated to the Court that two of the

3     plaintiffs, Feliciano and Salmeron, we're asking that they be

4     dismissed without prejudice.  And the standing issue really

5     went to their claims.

6          THE COURT:  Those are the claims on the religious

7     rights issue?

8          ATTORNEY McALISTER:  Religious rights issue, yes,

9     your Honor.  And they had -- didn't have as specific

10    allegations as did the Footes on -- regarding their children.

11         THE COURT:  All right.  Have you moved in writing

12    for those to dismiss, or are you just requesting those claims

13    be dismissed?

14         ATTORNEY McALISTER:  I requested it in our

15    memorandum.  So I'm requesting the claims as to Feliciano and

16    Salmeron will be dismissed without prejudice due to the

17    change in circumstances with their children.

18         THE COURT:  All right.  That will be allowed.  Is

19    there any issue as to with or without prejudice?

20         ATTORNEY LAWLESS:  No, your Honor.  They don't have

21    standing.  So dismissal without prejudice is probably

22    appropriate.  Thank you, your Honor.

23         THE COURT:  All right.

24         ATTORNEY McALISTER:  Thank you, your Honor.

25         And as to the 12(b)(6) standard, the standard, of

1  course, on 12(b)(6) motion, motion to dismiss, is that the

2  complaint must contain a short and plain statement of facts

3  and it must have facial -- have sufficient factual matter to

4  state a claim on -- for relief that is plausible on its face.

5  And a claim has -- and the courts have explained that a claim

6  has facial plausibility when the plaintiff pleads factual

7  content that allows the Court to draw the reasonable

8  inference that the defendant is liable for misconduct

9  alleged.

10         And this, of course, is a determination that is

11  context specific.  And in considering a motion to dismiss, of

12  course, the Court is to accept all well-pleaded factual

13  allegations as true and draw all reasonable inferences in our

14  favor.  And so --

15         THE COURT:  It just states the burden is on you to

16  show the plausibility.

17         ATTORNEY McALISTER:  Yes, your Honor.  So the -- the

18  three points that we'll raise today deal with the

19  substantive -- we have sought relief based on substantive due

20  process, and we have alleged three different parental rights

21  as substantive due process rights that we believe that have

22  been violated here.  One of those is the general fundamental

23  right of parents to direct the upbringing of their children

24  as in *Troxel* and cases before that, the other being the

25  parental right to direct mental and mental health -- medical

1  health care for their children.  And that's *Parham* and the

2  First Circuit case of *Colon*.  And then the third is the right

3  to family integrity that -- for parents and children to have

4  that right upheld and not interfered with by the state.

5       And, of course, determining whether the substantive

6  due process rights have been determined is a two-part

7  question, the first part being have the plaintiffs alleged

8  deprivation of constitutionally-protected rights.  Then

9  secondarily -- and the courts will sometimes take these in

10 different orders.  But the other factor that needs to be

11 determined is whether there have been allegations of conduct

12 that is -- can be seen to shock the conscience.  And so those

13 are the two major factors that need to be looked at here.

14 And we have alleged -- plaintiffs have alleged sufficient

15 facts for both of those standards.

16      And as to the parental rights, we have -- we have

17 alleged sufficient facts that the parental rights of

18 Mr. Foote and Ms. Silvestri, who are the two remaining

19 parents here, they've been hijacked by the defendants because

20 the defendants have made themselves arbiters of what

21 information parents can receive regarding a very intimate

22 aspect of their child's life with the child's gender identity

23 and whether that identity should be affirmed at school.

24 That's a very personal, private part of the child's identity.

25 It is not an academic matter.  It is not curriculum.  It is

1  not governance of the schools.  But it is a personal matter

2  that is within the purview of the parents.  And so for

3  defendants to determine that they have the right --

4       THE COURT:  Is what you're telling me now really

5  going to count 1, the parental right to direct the education,

6  or is the facts you're telling me specific to all three of

7  your counts?

8       ATTORNEY McALISTER:  Specific to all three.

9       THE COURT:  And so what's specifically alleged in

10  your complaint regarding the first count?

11       ATTORNEY McALISTER:  On the first count, being the

12  right to direct the upbringing of their children, we have

13  alleged that the defendants have interfered in the

14  plaintiffs' exercising of their right to oversee their

15  child -- the children's care.  They have -- they have taken

16  it upon themselves to determine that the parents are not

17  deserving of receiving information regarding their children.

18  And they are undertaking care and counseling of their

19  children with regard to this issue, rather than notifying the

20  parents and giving the parents the opportunity to care for

21  their children.

22       And there was -- the parents came to the school and

23  said, we are aware of -- that our children have -- are having

24  some issues.  We are addressing them.  We are getting

25  professional help.  So we ask the school not provide

1  any -- have any private meetings with our children about this

2  issue.  We are handling it as a family.  We are taking the

3  precautions that we need to take.

4        THE COURT:  Under your first count, are you

5  directing your first count specifically towards parental

6  right to upbringing or parental right to direct an education?

7        ATTORNEY McALISTER:  Upbringing.

8        THE COURT:  Upbringing?  Because for parental

9  education, the parent wouldn't have a right, for example, to

10  say, I don't want you, the school, to use a certain book or

11  to teach a certain class.  So you're focusing on the

12  upbringing?

13        ATTORNEY McALISTER:  On the upbringing, yes, your

14  Honor.  Of course, under *Brown* and *Parker* in the circuit, the

15  First Circuit has been very clear that the right to direct

16  education lies primarily with the school in terms of

17  governance, curriculum, the day-to-day of how school is

18  managed, that that is -- that that is within the purview of

19  the school.

20        THE COURT:  All right.

21        ATTORNEY McALISTER:  But when we get into the

22  personal, how the child is feeling and experiencing, that

23  goes to the upbringing and the values and what the

24  child -- how the child feels, how that is dealt with

25  appropriately.

1        THE COURT:  How the child feels and what they're

2   experiencing with emotional health issues, I mean, there's

3   an -- there's a crossroad, there's an intersection where that

4   is also part of the educational experience and responsibility

5   of educational providers to address.

6        ATTORNEY McALISTER:  In a limited circumstance, yes.

7   But when -- in terms of their having difficulties in school,

8   perhaps getting along with classmates or learning material or

9   that kind of thing, but this is a different animal, so to

10  speak.  This is their interior sense of who they are and that

11  their interior sense of who they are conflicts with their

12  bodies, and that is an inner struggle, mental, emotional,

13  psychological struggle the child is having.  And it really

14  doesn't have anything to do with their academics.  It has to

15  do with their personal well-being, and that's the purview of

16  the parents.  That's what *Troxel* says, if the parents are

17  fit.

18       THE COURT:  Certainly no doubt it is the purview of

19  the parents, but I think it is also the purview of the

20  schools as well.  And there's -- and I'm sure the defense

21  will cite to the discrimination statute.

22            ATTORNEY McALISTER:  Yes, of course, there's --

23       THE COURT:  So clearly it is the view of both.  Let

24  me ask you this for count 1.  Then we'll move on to count 2.

25  For count 1, shocking the conscience is still a

 1  requirement --

 2          ATTORNEY McALISTER:  Yes.

 3          THE COURT:  -- that you have to maintain, right?

 4          ATTORNEY McALISTER:  Yes.

 5          THE COURT:  And for count 1, is it necessary that

 6  there be a mental health condition that is present for your

 7  rights as you assert them to be litigated under count 1?

 8          ATTORNEY McALISTER:  Not necessarily because it

 9  is -- also is dealing with the fact that the parents have

10  notified the school that they are engaging in a certain -- a

11  certain care for their children.

12          THE COURT:  But you allege that care is mental

13  health care.

14          ATTORNEY McALISTER:  In part it is, yes.

15          THE COURT:  Well, not in part.  Your complaint

16  specifically describes it as mental health care.

17          ATTORNEY McALISTER:  Yes.

18          THE COURT:  So I'm asking you, does it -- for count

19  1, does the court have to find that engaging a student in

20  using different pronouns, engaging a student in education and

21  support regarding gender identity, your allegation in the

22  complaint is that that is mental health care?

23          ATTORNEY McALISTER:  Yes.  But also the defendants

24  have gone -- have gone beyond that because in many -- as far

25  as we know, because most of what they've done has been

1    hidden.  What we do know is that the counselor and many of

2    the other staff have gone farther than just affirming the

3    names and pronouns.  They've gone into talking to the

4    children about, are your parents adequately caring for you?

5    Is this counselor doing you any good?  Should I -- should you

6    get another counselor -- you should get another counselor,

7    you shouldn't necessarily rely on your parents' counselor.

8              THE COURT:  Well, the complaint in this is about

9    what happened to the two minors at issue in this case --

10             ATTORNEY McALISTER:  Yes.

11             THE COURT:  -- right?  It is not about what you want

12   to tell me the counselors did or said to other individuals,

13   do they?

14             ATTORNEY McALISTER:  What I'm talking about was to

15   these children.  There were conversations -- in the

16   complaint, we allege there are numerous conversations

17   with -- between the staff, particularly Mrs. Foley, and these

18   children, particularly BF, the daughter --

19             THE COURT:  Okay.

20             ATTORNEY McALISTER:  -- in which she gets very

21   intrusive in terms of what the parents are doing, getting

22   between the parents and the child.  And she's questioning

23   whether the parents are sufficiently caring for the child, to

24   the daughter, putting that question in her mind as to, are

25   your parents really caring for you?  Because I need to keep

1    you safe, and I don't know if you can be kept safe with your

2    parents.  And so those -- those statements go beyond just

3    affirming the names and pronouns, which is part of it as

4    well.

5          THE COURT:  All right.  But nonetheless, we come

6    back to the question, really, the statement, you have to

7    establish that the school was providing mental health

8    treatment; is that correct?

9          ATTORNEY McALISTER:  Not necessarily.  They're

10   interfering with the family unit, with caring for the family,

11   the family, the parents caring for it.

12         THE COURT:  At least for count 2, due process

13   violation, fundamental parent right to direct medical and

14   mental health decision-making for the children.

15         ATTORNEY McALISTER:  Yes.

16         THE COURT:  So is -- are you saying at least for

17   count 2, that you have to establish that what the school was

18   doing was considered mental health treatment?  I'm just

19   wondering if we need to develop -- it seems to me that we

20   need to look at this.  You alleged in paragraph 42 --

21         ATTORNEY McALISTER:  Yes.

22         THE COURT:  Paragraph 42 indicates that throughout

23   the time the defendants have known or reason to know that

24   social transition, including assertion of an alternate name

25   and pronoun is recognized as a medical, slash, mental health

1    treatment for children with gender dysphoria.

2            ATTORNEY McALISTER:  Yes.

3            THE COURT:  The defense, I'm sure, again, are going

4    to talk about this.  So there's the issue of how do you

5    establish -- is it necessary for you to establish that this

6    is mental health treatment?  That's the first question.  Do

7    you have to establish that?

8            The next question is, is your statement here in the

9    complaint simply conclusory?  Which would be insufficient

10   under the Iqbal/Twombly standard, that the children in this

11   case are suffering from mental health treatment just based

12   upon the social transitioning support and use of pronoun

13   interaction that they've had with the school.

14           The third issue is, it has been recognized and

15   briefed by both parties, the gender dysphoria would be a

16   medical condition, but neither of the minors in this case

17   have been alleged in the complaint to have been diagnosed

18   with gender dysphoria.

19           ATTORNEY McALISTER:  Right.  That allegation is not

20   in the complaint.  But the idea of this being mental health

21   care is not just for a diagnosis of gender dysphoria.  It is

22   when a child expresses that they have a disconnect between

23   their mental sense of who they are and their -- and their

24   physical bodies.

25           THE COURT:  Right.  And your allegation is that that

1   is a mental health condition, which the school was giving

2   treatment for without parental consent, that seems to be the

3   core of your argument.

4           ATTORNEY McALISTER:  Well, we're not saying that

5   transgenderism is a mental health condition.  We're saying

6   that when the school -- anyone takes on -- and this is under

7   the WPATH standards and all of the other standards -- it says

8   when a child says that they are experiencing a disconnect

9   between their belief, their gender identity, and their sex,

10  the treatment plan for that is first to social transitioning.

11  That is a first step in addressing these issues with

12  children.  And then beyond that, there are additional issues.

13          But because that is dealing with their identity,

14  their sense of being, to call them another name, another

15  pronoun, to permit them to be identified as either nonbinary

16  or the opposite sex of what their bodies are, that is

17  treating their mental and emotional well-being.  It is not

18  necessarily that they're mentally ill, it is just that they

19  have this mental and emotional sense that deals with their

20  mental and emotional well-being to say that inside I feel

21  like I'm a boy, even though my body is a girl, and school, I

22  want you to confirm that I am a boy.  Well, that then takes

23  sides on this issue.  The school is taking sides and saying

24  essentially we're going to agree with you that you have this

25  sense, and we are going to begin this procedure this -- these

1   transitions to be identified as this other sex that you feel

2   you are -- or nonsex or nonbinary or whatever the child says

3   they are.

4        THE COURT:  So you're saying that the school is or

5   is not providing mental health treatment?

6        ATTORNEY McALISTER:  Is providing mental health

7   treatment.

8        THE COURT:  Is?

9        ATTORNEY McALISTER:  Yes.

10       THE COURT:  All right.  That was a long explanation

11  where you seem to be saying it -- gender identification

12  issues, you start out by saying, are not a mental health

13  condition.

14       ATTORNEY McALISTER:  It is not -- being

15  transgender -- and that is the APA and the others -- it is

16  not a mental disease.  It is not a mental health problem.

17  But it certainly affects mental and emotional well-being of

18  the child because they're experiencing some -- obviously

19  some -- they wouldn't be bringing it up if they weren't

20  experiencing some discomfort, distress about their -- what

21  they're feeling.  And so that deals with their mental health.

22  It doesn't mean being transgender means you are mentally ill.

23  It means that they have a mental sense, a feeling, that needs

24  to be addressed.

25       THE COURT:  Have you alleged in your complaint that

1    gender identity issues is the equivalent -- is the equivalent

2    of gender dysphoria?

3              ATTORNEY McALISTER:  I don't believe that we have

4    alleged specifically that.

5              THE COURT:  Okay.

6              ATTORNEY McALISTER:  Because that's a medical -- I

7    mean gender dysphoria is a medical determination.  And

8    so -- but the idea of gender identity is still -- it is a

9    mind and emotional issue.

10             THE COURT:  All right.  And you've alleged that

11   while the school was interacting with the minors in this way

12   regarding gender identity, that the parents were not

13   informed -- despite the fact that the parents reached out and

14   made it clear to the school that they wanted to be involved,

15   they wanted to direct this, they wanted to -- they did not

16   want the school to take the lead in working with the children

17   and supporting the children on this, they wanted to as

18   parents.

19             ATTORNEY McALISTER:  Yes.

20             THE COURT:  You made that clear.  Now, how does the

21   Massachusetts regulations and statutes play into that?

22   Again, anticipating and knowing what the defendant briefed

23   regarding those issues.

24             ATTORNEY McALISTER:  Well, of course, Massachusetts

25   regulations and statutes say no discrimination on the basis

1  of gender identity.  And they spell out the -- the

2  regulations spell out guidelines for the schools to use to

3  carry that out.  But that doesn't -- nowhere in those does it

4  say that parents are not to be notified, that parents are to

5  be prohibited from knowing this about their child, that the

6  school --

7          THE COURT:  We're dealing with younger children.

8  We're not dealing with high school-aged children, which might

9  be a different conversation.

10          ATTORNEY McALISTER:  Exactly.  These are 11 and

11  12-year-olds.  These two minors were 11 and 12 at the time.

12  So when they're -- we're not talking about -- I know the

13  defendant has claimed we're trying to get them to

14  discriminate.  We're not.  We're merely saying the parents

15  need to be notified and involved when this issue comes up at

16  school, and then the school needs to not have private

17  meetings with an 11- or 12-year-old child and discuss these

18  issues that are very, very important issues, but that are

19  issues that the parents need to be able to address with the

20  children.  And so we're saying that -- especially with these

21  aged children, that it is necessary for the parents to be

22  notified and involved.

23          And the cases that defendants cite and the cases

24  that have dealt with gender identity in the public schools in

25  some of the other circuits, in all of those cases the parents

1    were involved with the children.  In fact, the parents in

2    some cases brought the claims on behalf of the children

3    because they were minors.

4         THE COURT:  And the defendant is relying upon

5    direction from regulation from the CMR that defendants are

6    saying they read to say "we do not have to inform the parent

7    unless the student wants us to inform the parent"?

8         ATTORNEY McALISTER:  Correct, of any age.  And, of

9    course, under the regulations, when you are dealing with

10   direct information and personal information, when a child

11   turns 14 or ninth grade, then they do have -- the child has

12   the right to direct that under the Massachusetts law.  But

13   before that time, it is only the parents that have -- that

14   have that right to direct that.  And the regulations -- what

15   the guidance -- the DESE Guidance -- talks about, is that it

16   recommends -- of course, it is guidance.

17        THE COURT:  Right.

18        ATTORNEY McALISTER:  It is not a regulation.  It is

19   not a statute.  It is guidance.  The guidance says the

20   parents should be -- or, excuse me, the child -- you should

21   talk to the child before you talk to the parents.

22        THE COURT:  That's right.  That's what it says, yes.

23        ATTORNEY McALISTER:  Well, the defendants have said

24   that means you don't talk to the parents unless the child

25   says it is okay.

1          THE COURT:  That is what the defendants are saying.

2          ATTORNEY McALISTER:  And that's not the way we would

3    read that.  We would read that to say -- is what it says

4    first but then the parents are notified.  And so there's

5    no --

6          THE COURT:  So you read it to be the parents get

7    notified, period, but they don't get notified until the

8    teachers tell the student first, we're going to be letting

9    your parents know about this, we're going to --

10          ATTORNEY McALISTER:  Yes, that is what the guidance

11    says.  And that's -- especially for a 11- or 12-year-old.

12    Because we're talking about children who are not even in high

13    school yet.

14          THE COURT:  All right.  So that's -- is that the

15    violation that is driving the substantive due process right

16    claims, that the parent was not notified?

17          ATTORNEY McALISTER:  That's part of --

18          THE COURT:  Because you're claiming a right of the

19    parents.  You're claiming the parents' rights were violated.

20          ATTORNEY McALISTER:  Correct.

21          THE COURT:  So that is -- is that it?  That is the

22    crux of the right, that the parent was not notified and that

23    drives your three counts?

24          ATTORNEY McALISTER:  That is part of it.  Also, the

25    fact that they just went beyond.  Then when the parents did

1  find out and the parents said, We don't want you having

2  private meetings with our children, you know, we want to deal

3  with this.  They went on and did that anyway, against the

4  parents' objections.  And they got very intrusive about it.

5  And they put in the children's minds that their parents

6  weren't caring for them, weren't providing them what they

7  needed, they weren't safe.  And so that's another aspect of

8  it, is that they were notified.  And they were never notified

9  directly by the schools.  A teacher came and note -- told the

10 parents, told Mr. Foote and Mrs. Silvestri.

11      THE COURT:  So didn't --

12      ATTORNEY MCALISTER:  But then she was fired.  So --

13      THE COURT:  -- didn't the school reach out to the

14 parents at the very beginning when there was a discussion and

15 an issue with depression with one of the children?

16      ATTORNEY McALISTER:  One teacher did.  One teacher

17 who was very close to the daughter particularly, who also

18 taught the son.  The daughter came to her and said, you know,

19 "I'm feeling depressed, I need to talk to my mom about it,

20 I'm not real sure how to do that," or whatever.  And so she

21 said, "Would you like me to mention it to your mom?"  And she

22 said, "Yes."  So the teacher -- that one teacher mentioned to

23 the mom, "your daughter is having some issues with

24 depression, wondering about her body and having problems with

25 that."  And mom said, "Thank you very much for telling me and

1    her dad, and I will get on that right away and begin caring

2    for the daughter in that regard."

3          That was the only notification -- that same teacher

4    later, after being told that the school prohibited anyone

5    telling the parents of these 11- or 12-year-old children that

6    they were having these issues, this one teacher did have a

7    conversation with the parent, one of the parents, and said,

8    "Your daughter has said that she wants to be called this

9    other name, she wants alternate pronouns.  I just think you

10   should know."  That's the way they found out.  Even to this

11   day they would not know, had this one teacher not done that.

12   Of course, it cost her her job.

13         So that's the problem, is that they had this

14   prohibition.  And then they -- even after the parents met

15   with the principal and the superintendent and said, "We are

16   taking care of this as a family, we don't want you having

17   these private meetings with our children," they kept on doing

18   it, even though that was explicitly against the parents'

19   wishes, the parents -- and the parents' rights to direct --

20   they were directing upbringing their children, they're taking

21   care of it --

22         THE COURT:  Explain to me in your complaint, where

23   your complaint alleges and what you allege in the complaint,

24   sufficient to the pleading standard regarding the shocking of

25   the conscience.

1          ATTORNEY McALISTER:  Okay.

2          Okay.  And, of course, we're dealing here with

3    shocking of the conscience.  Obviously, there's a

4    differential standard between immediate type actions like

5    when the police are pursuing a suspect or they're in a crime

6    scene and they have to act quickly, the shock the conscience

7    bar is very high because they have to make a split-second

8    decision and go on.  But when you have a situation like this,

9    where it is -- they have time to deliberate, the executive

10   agents have time to come up with a plan, then the First

11   Circuit has said deliberate indifference may be sufficient.

12   And in particular that if the conduct strikes at the basic

13   fabric of a fundamental right of the parent/child

14   relationship, that can be -- if you have deliberate

15   indifference, then that can be part of the deliberate

16   indifference standard, rather than the much higher standard

17   for police actions, et cetera.

18          So the -- in paragraphs 69 to 70, we talk about the

19   fact that they have -- the parents notified the school that

20   they had a private therapist working with their daughter,

21   they were aware of their concerns about her mental health,

22   and that there be no private conversations so that

23   they -- they could exercise the decision-making.  And, of

24   course, then that was completely disregarded.

25          In paragraphs 83 and 118 to 127, that details the

1   fact that the defendants completely disregarded the rights,

2   engaging in these intrusive private meetings with the

3   children, questioning the parents abilities.  And then in

4   paragraphs 116 to 117, Mrs. Foley, who was the counselor,

5   referred the children to Ms. Funke, who was the librarian at

6   the middle school at the time.  And Ms. Funke had further

7   private meetings and discussed these intimate personal

8   matters with the children that the parents specifically said

9   shouldn't be discussed.

10          They deliberately concealed this -- and this is

11  throughout the complaint -- they deliberately concealed from

12  the parents information related to their children's identity,

13  which are personal expressions of the children's sense of

14  self and a facet of their psychological and emotional

15  well-being.  They directed that all district staff

16  deliberately conceal information from Mr. Foote and

17  Mrs. Silvestri.  And that's alleged in paragraph 88.  And in

18  133 it is alleged that information and belief that the

19  teacher who violated this dictate was terminated.

20          So -- and then in paragraphs 99 to 114, we detail

21  how, even after Mr. Foote and Mrs. Silvestri met with

22  district staff, informed them that their parental rights were

23  being violated, and requested no further private meetings,

24  the defendants continued to meet privately with their

25  children and to question the parents' ability to care for

1    their children.

2            And then in paragraph 99 through 114, Mr. Gazda, who

3    was the superintendent at the time, defended the deliberate

4    concealment of information by saying that staff was acting

5    appropriately and they were acting as required under the DESE

6    guidelines, which, of course, were guidelines, so did not

7    require that they failed to notify parents.

8            And then, of course, in paragraphs 141 to 142,

9    Mr. Gazda, and also one of the committee members at the time,

10   publicly demean the parents, who were -- not only Mr. Foote

11   and Ms. Silvestri but other parents who raised issues about

12   this -- saying they were being intolerant of LGBTQ people and

13   they were hiding behind a camouflage of parental rights.  And

14   then he, Mr. Gazda, said that schools, not homes, are the

15   safe spaces for children, because only the schools have

16   caring adults who can -- who can support them in these -- so

17   undermining children's rights again.

18           And those are some of the allegations that --

19           THE COURT:  And how are the allegations of the

20   statement by the principal or the superintendent, you said

21   the last name was Gazda, that was after -- that was kind of

22   after the fact at a meeting.  How did that kind of go back

23   and support the counts that you filed in this case?  In other

24   words, consider what he said as the conscience shocking

25   behavior that is necessary to make your three counts viable.

1        ATTORNEY McALISTER:  Well, the first mention I had

2    of him was actually before that time, was when Mr. and Mrs.

3    Foote -- Mr. Foote and Mrs. Silvestri met with him personally

4    and he did that.  And then the meeting was before we brought

5    the claims.  It was as this was going on.  I mean, this is --

6    as far as we know, this behavior with the children is still

7    going on.  The parents are not being told.

8        And so this was going on -- the school board

9    meeting -- I mean, Mr. Gazda left the district, I believe, in

10   2021.  This was before that time.  And so it was right as

11   this was happening with the children and the -- and Mr. Foote

12   and Mrs. Silvestri were -- were trying to get the district to

13   stop doing it.

14       THE COURT:  All right.  Let me just move you along.

15   And what do you say about qualified immunity?

16       ATTORNEY McALISTER:  Well, the -- these three

17   substantive due process rights that we allege have been

18   violated in the complaint have all been well-established by

19   the Supreme Court and the First Circuit for many, many years.

20   Particularly -- you know, *Troxel* was 22 years -- was -- yeah,

21   22 years ago.  The other predecessors, which dealt more with

22   education, are almost 100 years old.  So the idea that

23   they're a -- a fit parent has the right, the primary duty,

24   for the upbringing their children is well-established.

25       And the medical and mental health decisions, 1979

1    was *Parham* and the *Colon* First Circuit case, which defendants

2    never brought up in their brief, said that parents' rights do

3    trump the certain rights of minor children when they're

4    making decisions related to their mental health.  Because in

5    both of those cases, groups of children brought actions

6    against the state -- and the Commonwealth of Puerto Rico in

7    one of them -- that the ability of the parents to

8    involuntarily commit their children to care violated the

9    children's rights of liberty and the children's rights of

10   privacy.

11          And the courts, both the Supreme Court and the First

12   Circuit, said, "no, when you're dealing with decisions about

13   their mental health, the parents have the rights, unless

14   they've been determined to be unfit," in which case then they

15   would become wards of the state and the state would make a

16   decision.  But if they have not been deemed unfit, the

17   parents have the right to make these decisions for the

18   children, even though it would limit the children's liberty,

19   it would limit the children's privacy rights, it is the

20   parent's prerogative.

21          THE COURT:  And, again, we keep -- I can't help but

22   keep going back to the consideration of whether or not you're

23   asserting that the children were receiving mental health

24   treatment for a mental health condition.  You just

25   referenced, again, mental health treatment.  You said they

1  were not receiving mental health treatment because gender

2  identity is not a mental health issue but -- I mean, I'm just

3  reading a lot of what is in your brief and in the complaint a

4  little bit differently than you're articulating it today.

5      ATTORNEY McALISTER:  Well, what *Parham* and *Colon*

6  talk about is mental health decisions, decisions that affect

7  the children's mental health.  So whether to get treatment,

8  whether not to get treatment, whether to -- which physician

9  to take them to.  Do they take them to a physician?  Do they

10  take them to a psychiatrist --

11      THE COURT:  Right.  So I'm sorry to keep asking you

12  this point, but I'm trying to get some clarity.  So as a

13  student, as in these circumstances, seeking support,

14  information, support and information regarding gender

15  identity issues, is that a mental health issue?

16      ATTORNEY McALISTER:  It is a mental health issue

17  because it deals with what is their mind, their being, and

18  how they identify, which is a core part of their being.  So

19  it is a mental health issue.

20      THE COURT:  Under that definition, anything that you

21  spend 10 seconds to think about is a mental health issue

22  because you use your mental health faculties to consider it.

23  You know that is not what I meant by the question.

24      ATTORNEY McALISTER:  Right.  No this -- gender

25  identity is a mental health issue because it goes to the core

1    part of the child and how they identify.  And then when you

2    take sides on that and you say, okay, we are going

3    to -- despite what your parents say, we are going to agree

4    with you, that you should receive -- you should get

5    these -- transition, you should be able to use alternate

6    names, you should be able to use alternate pronouns, you

7    should be able to use the boy's bathroom or whatever, all of

8    these things, we are going to say -- we are essentially

9    making the decision that you do have -- because an

10   11-year-old child says, "I think I might have a problem."  So

11   the school then says, "Okay, well, then you've diagnosed

12   yourself with this issue and we will take the steps that need

13   to be taken to affirm this," essentially a diagnosis,

14   gender --

              THE COURT:  Who made the diagnosis?

              ATTORNEY McALISTER:  The child.

              THE COURT:  The child diagnosed themselves with a

     mental health condition by saying they want to -- they want

     information and want to be referred to as a different

     pronoun?

              ATTORNEY McALISTER:  Not that they want information,

     that they identi -- not just that they want information.

              THE COURT:  All right.  So by saying I want to

     identify differently, I want to identify differently than I

     have in the past, the child is then self-diagnosed as having

1   a mental health condition?

2         ATTORNEY McALISTER:  They're

3   self-diagnosing -- well, yes, essentially.

4         THE COURT:  So I'm only going with this because I

5   think it is important that a determination be made from the

6   starting point in analyzing this issue as whether or not the

7   school is providing mental health and/or medical treatment.

8   In other words, to -- for us to do an analysis of the claims

9   here, I think that is one of the things we need to start

10  with, just almost as important and maybe as important as

11  whether or not there was conscience-shocking behavior.  It is

12  one of those things that we need -- needs to be tackled.  So

13  that's why I'm asking you over and over.

14        ATTORNEY McALISTER:  Right.  And, in essence, it is

15  mental health treatment.  I mean, that is what the -- all of

16  the cases, the standards of care, what WPATH standards of

17  care, that we referenced in our complaint, all of those

18  things say this is --

19        THE COURT:  Well, I don't know.  Where does your

20  complaint say that is non-conclusory about it being a mental

21  health treatment?  It just says talking with students about

22  using different pronouns is mental health treatment.

23        ATTORNEY McALISTER:  Well, we reference in our

24  complaint experts used by the Fourth Circuit, Third Circuit,

25  the Eleventh Circuit who have said that.

1          THE COURT:  Okay.

2          ATTORNEY McALISTER:  And so that is what we're going

3    from.  We're not just making that up out of thin air.  The

4    courts, these other courts, the *Grimm* court, *Adams* court,

5    have said this is recognized by the experts in the field as

6    mental health treatment.  So those courts have said that.  So

7    that's what we base our allegation on.

8          THE COURT:  All right.  Let me step you back for one

9    minute.  I think I might be coming back to you with some

10   questions.

11         ATTORNEY MCALISTER:  Okay.

12         THE COURT:  Let me hear from Attorney Lawless.

13   Thank you.

14         ATTORNEY LAWLESS:  Thank you, your Honor.

15         Let me begin -- excuse me.  Let me begin, your

16   Honor, by asking you a few questions at this point.

17         THE COURT:  I think you can use your best judgment

18   to pick up where you heard the conversations and the

19   discussion going.

20         ATTORNEY LAWLESS:  I will, thank you, your Honor.

21         Your Honor, if I may, before I launch into my

22   argument, we had attached, I believe it was Exhibit 3 to

23   defendants' reply, Mr. Gazda's statement that is at issue.

24   And the second page of that statement somehow

25   became -- became mixed up with a different document.  I did

1    bring the exhibit with the correct second page with me.  And

2    if I may, I'd like to hand it up and share it with my brother

3    and sister.

4              THE COURT:  Do you have a copy of what he is --

5              ATTORNEY McALISTER:  I'm not sure that we've got

6    those other pages.  Thank you very much.

7              ATTORNEY LAWLESS:  Essentially, your Honor, it is

8    the second page of the exhibit and it is one short paragraph

9    long.  Thank you, your Honor.

10             THE COURT:  Thanks.

11             ATTORNEY LAWLESS:  So, your Honor, as my sister

12   noted, defendants' motion is brought pursuant to Federal

13   Rules of Civil Procedure 12(b)(6).  The ultimate question on

14   a 12(b)(6) motion is whether plaintiffs' amended

15   complaints -- it is a complaint upon which relief can be

16   granted once the conclusory allegations contained in the

17   complaint are stripped away and based on plausibility

18   analysis that is conducted by the Court in light of, amongst

19   other things, the Court's common sense.  Here, as we heard

20   confirmed today, the amended complaint brings claims only on

21   behalf of the parents.  The minor children are named as

22   plaintiffs, but any claims brought on their behalf should be

23   dismissed because plaintiffs have confirmed, both in their

24   opposition to the motion and in the courtroom today, that

25   they're asserting only the parents' rights.

1     Being transgender is not a mental health condition.

2 My sister stood here and told you that in *Grimm* and in other

3 cases, the courts had recognized that being transgender is a

4 mental health condition.  In fact, the opposite is true.  As

5 your Honor pointed out, neither of these children is alleged

6 to suffer from gender dysphoria, which is a recognized health

7 condition.  However, in *Grimm*, which my Sister relies on, the

8 court said very specifically, "Although some transgender

9 individuals experience gender dysphoria and that could cause

10 some level of impairment, not all transgender persons have

11 gender dysphoria and gender dysphoria is treatable."

12     THE COURT:  And why is the mental health

13 distinction, that -- a very important term, not to use

14 overbroadly, but for its -- for its true meaning, mental

15 health condition, that is a condition recognized by the

16 psychiatric or psychological health care -- health and mental

17 health care communities as being a diagnosable and treatable

18 illness, why is it important --

19     ATTORNEY LAWLESS:  Because --

20     THE COURT:  -- to define is that what we're dealing

21 with?

22     ATTORNEY LAWLESS:  Because being transgender is

23 immutable, because being transgender is part of someone's

24 person.  Because nondiscrimination against transgender people

25 is required by Massachusetts statute and regulation, it is

1  required by the Equal Protection Clause, and it is required

2  by Title IX.

3         THE COURT:  But would it be a different analysis

4  here, if we're speaking in the hypothetical to discuss legal

5  principles, if the school was providing mental health

6  treatment and there was no dispute, yes, the school was

7  providing mental health treatment, would that have to have

8  been with the knowledge and consent of the parents for the

9  children of this age?

10         ATTORNEY LAWLESS:  In this context, your Honor, I

11  can only -- I mean, it is a hypothetical that is not

12  supported by the amended complaint.  What I can say is

13  plaintiffs have identified parental rights to direct the --

14         THE COURT:  I'm not asking you in the context of the

15  facts that we're dealing with here.  If we're dealing with,

16  whatever issue it might be and everyone says, yes, that was

17  mental health treatment, if the school is involved in

18  providing mental health treatment for children this age,

19  would they, necessarily, would they have to tell the

20  parents --

21         ATTORNEY LAWLESS:  In all likelihood, your Honor, if

22  you don't define mental health treatment --

23         THE COURT:  So the answer is yes?

24         ATTORNEY LAWLESS:  Yes, your Honor.

25         THE COURT:  Okay.  So that's why it is important in

1   this case to distinguish whether or not we're dealing with

2   mental health treatment or if the support being given to

3   children this age who are exploring and wanting information

4   about gender identity, you're saying that is not a mental

5   health illness and that is not mental health treatment when

6   the school supports them?

7          ATTORNEY LAWLESS:  Yes, your Honor.  That is the

8   defendants' position.  And I think the key allegations here

9   are that these children came to the school -- I believe it

10  was B.F.  I'm sorry.  I'm terrible with names, so once I get

11  into initials, it is really trouble.  But I believe it was

12  B.F. came to the school and said, "I'm gender queer and I'm

13  sharing this information with you because I trust you."  And

14  the allegations in the complaint are that the children, B.F.

15  and G.F., said, "Please don't share this with my parents."

16  And the school, according to the amended complaint, had a

17  policy that said, "where children ask that their gender

18  identities not be shared with their parents, the school would

19  comply with that request."

20         THE COURT:  Is that school policy supported by

21  statute or regulation?

22         ATTORNEY LAWLESS:  Yes, your Honor, it is.  Because

23  if you -- if the policy were, "Sorry, B.F. or G.F., you know,

24  we understand your request but we're going to go ahead and

25  tell your parents and maybe we'll be able to recognize your

1  gender identity, maybe we won't be able to," that would

2  violate Chapter 76 which requires nondiscrimination when it

3  comes to trans -- based on gender identity.  You don't

4  have -- there is no option -- the school can't not recognize

5  somebody's gender identity --

6  THE COURT:  So if the school told the parent about

7  that student issue, that would be discriminating against the

8  student?

9  ATTORNEY LAWLESS:  No, your Honor, it wouldn't be

10  discriminating against the student if the parent said,

11  "Please don't let my child use the bathroom that corresponds

12  to their gender identity," "please don't recognize the

13  pronouns that correspond to their gender identity," "please

14  don't use the name that they've asked" -- "the proper noun

15  they've asked to have been identified with," if they --

16  THE COURT:  But the school wouldn't have to

17  recognize that parental request just like the school -- or

18  would they?  Just like a school doesn't have to recognize a

19  parent saying, "I don't want that book used in history class"

20  or "I don't want a course on" whatever "being taught," the

21  school wouldn't have to recognize it --

22  ATTORNEY LAWLESS:  Exactly, your Honor.

23  THE COURT:  -- but the parents know.

24  ATTORNEY LAWLESS:  And here, your Honor, the parents

25  knew.  I mean, here the par -- the allegation is -- again, it

1  is a little -- I have to say it is a little ambiguous in the

2  complaint.

3        THE COURT:  Right.  They knew -- they knew but they

4  didn't know -- they didn't know in the formal information

5  transfer from the school.

6        ATTORNEY LAWLESS:  Yeah.

7        THE COURT:  They found out through the grapevine

8  from the school, right?

9        ATTORNEY LAWLESS:  Right, to -- yes.

10        THE COURT:  So how -- what says -- statute or

11  regulations, what says that the school had the authority not

12  to tell the parents?

13        ATTORNEY LAWLESS:  That they weren't going to comply

14  with their requests?

15        THE COURT:  Not to tell the parents that the

16  children were making these inquiries and looking for support

17  on the -- on a gender issue.

18        ATTORNEY LAWLESS:  In our particular context, your

19  Honor, the parents were aware of the gender identities of the

20  children --

21        THE COURT:  That wasn't my question.  The question

22  is what statute or regulation informs or gives the school the

23  authority not to have told the parent?  It is not a statute

24  or regulation to say, "Well, we know that you knew and you

25  found out, so" -- no, no, no.  The question is what statute

1    or regulation gave the school the right not to tell the

2    parents?

3              ATTORNEY LAWLESS:  I would phrase it a little

4    differently, your Honor.  And I would say there's no statute

5    or regulation that requires the school at any time to inform

6    anyone that it is not going to --

7              THE COURT:  Well, there's no statute, but what is

8    the language of the regulation?

9              ATTORNEY LAWLESS:  If you'll give me a moment, your

10   Honor.

11             THE COURT:  All right.

12             ATTORNEY LAWLESS:  I just want to have my

13   citations --

14             THE COURT:  I think the language is essentially the

15   student will be told or consulted, something to that effect,

16   before the parent is informed.

17             ATTORNEY LAWLESS:  That is really not what it says,

18   your Honor.

19             THE COURT:  Okay.  Well, tell me -- you're flipping

20   through the papers, so you can read it.

21             ATTORNEY LAWLESS:  You're referring to the DESE

22   Guidance, your Honor.

23             THE COURT:  Well, I'm referring to what I thought

24   was the closest thing to a regulation that covers it.  If

25   there's something else, tell me.

1    ATTORNEY LAWLESS:  Well, there are regulations that

2    cover it.  So, I mean, obviously, there's the general

3    antidiscrimination provision at 603 CMR 26.03.  But 603 CMR

4    26.07 also requires schools to undertake active efforts to

5    prevent discrimination.

6        The DESE Guidance states, "Some transgender and

7    gender nonconforming students are not openly so at home for

8    reasons such as safety concerns or lack of acceptance.

9    School personnel should speak with the student first before

10   discussing a gender's nonconformity or transgender status

11   with the student's parent or guardian.  For the same reason,

12   school personnel should discuss with the student how the

13   school should refer to the student, for example, appropriate

14   pronoun use in written communication to the student's parent

15   or guardian."

16       THE COURT:  And you read into that, that the school

17   can make a decision not to tell the parent if they decide

18   that might be the best?

19       ATTORNEY LAWLESS:  I would submit that I'm not

20   reading anything into it.  I think it is clear on its face

21   that the purpose for talking to the student is the

22   purpose -- the student may say, "No, please don't tell my mom

23   or dad."  And the point is to accept that request.  I mean,

24   again --

25       THE COURT:  That regulation does not include any

1    language that says that the school can choose not to inform

2    the parent.  It says it talked to the student first because

3    of these issues, to -- what seemed to be get ahead -- to get

4    ahead of the issues and to be able to deal with that.

5            ATTORNEY LAWLESS:  Well, it says, "For the same

6    reasons, school personnel should discuss with the student how

7    the school should refer to the student, e.g., appropriate

8    pronoun use, in written communication to the student's parent

9    or guardian."  So I think it is very clear that the DESE

10   Guidance doesn't contemplate a school outing a student to

11   their parents.

12           I just don't think you can read the DESE Guidance,

13   the applicable regulations, or any Massachusetts statute to

14   suggest that a school district can or should out a student to

15   their parents against their wishes at any time.  As long as

16   the student is old enough to advocate for him or -- his or

17   herself, that student is the person in the best position to

18   identify their gender, and their assertion of their gender

19   has to be respected.

20           THE COURT:  And your view is that the students at

21   this age, at the age of the students in this case, could make

22   their own decisions as to whether or not the parents should

23   know?

24           ATTORNEY LAWLESS:  Yes, your Honor.  Yes, your

25   Honor.

1          THE COURT:  All right.  So your clear position is

2    that the language you just read me stands for the proposition

3    that a school can decide not to tell the parents, that's how

4    you --

5          ATTORNEY LAWLESS:  Yes.  And specifically not to

6    tell the parents, "Sorry, you know, we've got your e-mail, we

7    know you don't want us dealing with this, we know you don't

8    want us to respect your children's position of their gender

9    identity, but we're going to."  No, there's no

10   requirement --

11         THE COURT:  Well, those are two different things.

12   And they're completely different things.  Whether or not the

13   parent -- the school has the obligation to tell the parents,

14   here's what -- here's what is going on with your student,

15   that is one thing.  The other thing is to be able to tell the

16   school, here's the information we just gave you and, no,

17   we're not -- you may want it treated this way, but in school,

18   this is how we, the school, are going to treat it.  Those are

19   two different things.  Two very different things.

20         So I hear you on what you are saying about

21   antidiscrimination.  And even if -- and I'm not talking about

22   this case, I'm talking about even if, hypothetically, parents

23   receive that information and said, no, no, no, no, no to

24   pronouns, no to using different bathrooms, no to all of that,

25   the school would say, "No, this is our policy.  We're

1  supporting this.  This is what we're doing while they're in

2  school.  You can't as a parent affect what we do in school,

3  but we notify."  So that's the difference I'm seeing.  The

4  complete lack -- your reading these together saying, because

5  we don't have to change for what you want us to do, parent,

6  while you're in school, we also don't even need to tell you.

7         ATTORNEY LAWLESS:  Right.  And I think what your

8  Honor -- and maybe I misunderstood you a little bit.

9  Basically what you're saying is, is there a requirement on

10  the part of the school to close the loop and say, "Okay,

11  thank you, parents, we heard you.  No," as you said, "this is

12  our policy and we're following it."  You know, I think in the

13  con -- there is no such requirement.  I could see how you

14  might, you know -- and, again, the defendants don't accept

15  the allegations in the complaint as true, except for purposes

16  of this motion.  But I can see how a -- you know, a person on

17  the street would say, "Yeah, they probably should say, you

18  know, no, sorry, we heard you, but, you know, go pound sand,"

19  at least as a courtesy.  But not extending that courtesy

20  doesn't shock the conscience.  The failure to extend that

21  courtesy doesn't rise to the level of conscience-shocking

22  behavior.

23         THE COURT:  Which is required.

24         ATTORNEY LAWLESS:  Yes.  And in this case, that

25  really should end the analysis.

1    THE COURT:  So even -- so even if -- not that you

2  are, certainly not, but even if you were conceding that your

3  reading of the regulation is creative and generous in saying,

4  "No, this is telling us that we, the school, can decide not

5  to tell the parent," even if you're conceding that might be a

6  little bit creative, maybe not on the most solid ground,

7  you're saying, fine, because that still doesn't rise to the

8  level of shocking the conscience?

9    ATTORNEY LAWLESS:  That's right, your Honor.  And,

10 again, I don't concede that that's a creative reading --

11   THE COURT:  Thank you for saying that again.  Even

12 if it were, you can say it five times.

13   All right.  Go ahead.

14   ATTORNEY LAWLESS:  Okay.  So in terms of behavior

15 that does or doesn't shock the conscience, you know, my

16 Sister focused --

17   THE COURT:  I'm sorry.  Before we talk about shock

18 the conscience, it is very important, but I spent a lot of

19 time asking plaintiffs about the mental health issue.  Can

20 you just frame in your mind, why -- and maybe it is not,

21 maybe I'm focusing on the wrong issue and I don't want to do

22 that.  But is it important to determine whether or not it is

23 being alleged in the complaint that the support for

24 consideration of using different pronouns, et cetera, is

25 mental health treatment?  Is it all about -- because if it is

1    not mental health treatment, the school has the -- has really

2    the obligation to support and help the students?

3              ATTORNEY LAWLESS:  I think it -- it is central to

4    all of plaintiffs' claims, the idea that mental health

5    treatment -- recognizing somebody's gender identity is the

6    provision of mental health care.  All of their claims rest on

7    that assertion in one way or another.

8              THE COURT:  So in this case, if there really

9    was -- and there's not, but if there really was a diagnosis

10   of gender dysphoria, with all of the attendant symptoms and

11   problems and issues that required treatment and help, would

12   that be a completely different situation where the parents

13   needed to have that information?

14             ATTORNEY LAWLESS:  No, your Honor, it wouldn't

15   because the gender identity of the child wouldn't change if

16   they had a diagnosis of dysphoria.  So it would still be a

17   violation of Massachusetts statutes and regulations to reject

18   somebody's assertion of their gender identity.  There's no

19   line you cross when you say, "Oh, you have a diagnosis of

20   dysphoria, one piece of treatment for that could be

21   recognizing your gender identity.  But because you have this

22   diagnosis and your parents don't like it, they don't want us

23   to recognize your gender identity, we're not going to do it

24   because that could be seen as providing mental health care."

25   It is just the logic is flawed.  It is the same logic that

would say, my kid is the shortest kid that ever tried out

for, you know, the middle school basketball team.  And when

he got to the tryout, the coach didn't laugh at him.  The

coach didn't make fun of him.  The coach let him do the

tryout.  My kid is a terrible basketball player.  He would've

felt horrible if -- even if he had been told the truth about

his lack of basketball skills.  So you didn't make my kid

feel bad, you let him try out for the team; therefore, you're

providing mental health care.  That -- it is the same logic

that applies, you know.

    If, you know -- here it is, you know, recognizing

somebody's gender identity and aiding them in the social

transition can be part of the treatment for gender dysphoria.

Well, it is equally treated as said that rejecting somebody's

gender identity could induce gender dysphoria.  Again, it is

not just that these kids aren't alleged to have been

diagnosed.  They're very clear about who they are, you know,

and what they're requesting.  You know, they -- it is as

plain as the nose on your face.

    So to simply recognize gender dysphoria -- strike

that.  I apologize, your Honor.

    I think it -- ultimately it comes back to the fact

that under Massachusetts law, any treatment that aims to

change the gender identity of a child is barred.  You know,

if you are a therapist, you can lose your license for

1    engaging in that therapy.  So merely -- again, it comes back

2    to the concept that acknowledging somebody's gender identity

3    can't be providing mental health care.  Trying to change

4    somebody's gender identity is providing mental health care

5    and is barred, but simply recognizing it can't be.

6            THE COURT:  And what about qualified immunity in

7    this case?

8            ATTORNEY LAWLESS:  Well, your Honor, all of the

9    cases that the plaintiffs rely on -- and I'll start because

10   my Sister -- they're fresh and my Sister ended on them and

11   they involve mental -- well, according to the plaintiffs,

12   they involve mental health, *Parham* and *Colon*.

13           *Parham* was a case that involved a Georgia -- I

14   believe it was a Georgia statute that allowed for the

15   involuntary commitment of children where, A, their parents

16   consented or requested it and, B, there was an evaluation

17   done by a licensed psychiatrist.  And the court -- the

18   Supreme Court there held that doesn't violate the procedural

19   due process rights of the children.

20           Similarly in *Colon*, there was a process in Puerto

21   Rico whereby a child who wasn't, quote, unquote, delinquent,

22   could nonetheless be sent to -- for lack of a better way of

23   putting it -- a juvenile detention center, where the

24   Department of Social Services had done an exhaustive study of

25   the child, the family, the circumstances, and then the

1    parents consented or requested this involuntary

2    incarceration.  And the First Circuit said that didn't

3    violate the children's procedural due process rights.

4         In both of those cases, what was key was that you

5    had an independent gatekeeper.  You had -- in *Parham*, you had

6    the psychiatrist, who is doing the intake procedure at the

7    mental health hospital.  In *Colon*, you had DSS doing this

8    exhaustive study of the child.  Those cases tell you nothing

9    about whether or not defendants' conduct here shocks the

10   conscience of the Court.  They tell you nothing about whether

11   there is a parental right to insist that a school not accept

12   a child's assertion of their gender identity.  And they

13   provide no guidance for a reasonable teacher, guidance

14   counselor, librarian.

15        You know, if the -- the Supreme Court, as I know

16   you're aware, your Honor, has made it very clear that the

17   clearly-established prong of the qualified immunity analysis

18   can't be conducted at a high level of generality.  So it is

19   not enough to say parents have the rights, have -- well, have

20   the right to direct the upbringing of their children.  It is

21   not enough to say that parents have the right to direct the

22   mental health care that is provided to their children.  You

23   need some actual guidance that a reasonable public official

24   can follow.

25        So cases -- to go beyond *Colon* and *Parham* just

1  briefly, cases that stem for the proposition that you have

2  the right to obtain foreign language instruction for your

3  children, that you have the right to send your child to

4  private school or military academy, those cases provide no

5  guidance for a reasonable public school official.

6          THE COURT:  Let me ask you this:  Kind of bringing

7  this back to the beginning.  Do you dispute the plaintiffs'

8  claim as alleged in the complaint?  Again, keeping in mind

9  we're at a 12(b)(6) hearing here.  Do you dispute that

10  parents have a substantive due process right to direct

11  education and upbringing?

12          ATTORNEY LAWLESS:  At a very high level of

13  generality, of course, they do.  And they're -- as my Sister

14  acknowledged, they can make curricular decisions, et cetera.

15  But at a very high level of generality, parents do have all

16  of the rights that have been asserted.  But no Court has ever

17  found that they have the rights that have been asserted in

18  the form in which they're asserted in this case.  That is

19  what is key for the qualified immunity analysis.

20          THE COURT:  What do you mean, "the form"?

21          ATTORNEY LAWLESS:  Well, even if the Court were to

22  acknowledge or to agree with the plaintiffs and find that

23  these underlying rights exist, no court has ever said, you

24  know, you -- your parental rights encompass the right to

25  require that a public institution not recognize your child's

1  gender identity.  You have the right to notice --

2              THE COURT:   Is that what they're asking --

3              ATTORNEY LAWLESS:  -- of nondiscrimination.

4              THE COURT:  I'm going to ask them again.  Is that

5  what they're asking, or is this about not being informed of

6  what was going on?

7              ATTORNEY LAWLESS:  It doesn't matter, your Honor.

8  Because even if it is -- if it is not being informed, there's

9  no case that stands for the proposition that, again, a school

10 district has to extend that courtesy, as I referred to it

11 earlier, saying, "Yes, we heard you, parents, we're not going

12 to do that."  There's no case that says that is required.

13             I am sure my Sister will reference -- there is a

14 District of Kansas case that is new that was filed I believe

15 roughly at the same time as this case.  And it was brought by

16 a teacher who objected to a school district's policy around

17 notification of parents and not notifying parents of their

18 children's gender identity when the children requested that

19 they not.  On a motion for preliminary injunction in dicta,

20 the Court said, "Yes, of course, the parents have the right

21 to notice."  But the case wasn't about the parental right to

22 notice, it was the teacher's First Amendment right as to

23 whether or not she should be involved in withholding

24 information from the parents which she alleged violated her

25 First Amendment rights, in particular her religious liberty

1      rights.

2              That case, though, it is notable, just settled.  A

3      stipulation of dismissal was filed.  And defendant's motion

4      to dismiss was pending while the -- you know, when that

5      stipulation was filed.  So the case has really -- it wouldn't

6      have provided notice to my clients because it is too new.

7      When you're doing a qualified immunity --

8              THE COURT:  So the qualified immunity wouldn't have

9      held in that situation?

10             ATTORNEY LAWLESS:  Yeah.  As you know, your Honor,

11     it is the state of the law at the time that the conduct is

12     undertaken.  It is not the state of the law as it develops

13     after the conduct --

14             THE COURT:  Sure.  Okay.  All right.  Thank you.

15     I'm conscious of the time because we have another case.  But

16     I want to give the plaintiffs -- do you want to do a quick

17     reply on any issues?

18             ATTORNEY LAWLESS:  Thank you, your Honor.

19             THE COURT:  Thank you.

20             ATTORNEY McALISTER:  Just a couple, your Honor.  I

21     did want to point out that, of course, gender dysphoria is a

22     mental health condition under the DSM-5.  Transgenderism is

23     not.  And my opposing counsel said, you know, being

24     transgender is immutable.  Well, that is not a statement of

25     fact.  And that is not anything that -- it is a debatable

1   subject.  It is going around in the literature.  So that is

2   not anything --

3          And as your Honor said, what we're looking at here

4   is notifying the parents.  And the parents have the right to

5   be notified about their children's -- particularly B.F.'s

6   announcement that she was gender queer and wanted different

7   pronouns and wanted whatever.  They have the right to be

8   notified of that.  And they were not until Ms. Manchester did

9   that.  And it is a different thing, of course, than saying,

10  well, they were going to demand that the school do something.

11  That -- that is not part of our complaint.  Our complaint is

12  they weren't notified and the school just went about doing

13  this --

14         THE COURT:  Right.  Okay.  So -- and that leads

15  necessarily to the consideration of taking what you said, if

16  pled in your complaint in that way, well-pled in your

17  complaint, if that is what the Court finds, then I would have

18  to determine that that behavior shocked the conscience?

19         ATTORNEY McALISTER:  Yes.

20         THE COURT:  Okay.  Thank you.  All right.

21         ATTORNEY LAWLESS:  Thank you, your Honor.

22         THE COURT:  Thank you very much.  Again, thanks very

23  much to the attorneys.

24         ATTORNEY McALISTER:  Thank you, your Honor.

25         THE COURT:  All right.  We're going to take a few

1    minutes.  Maybe the attorneys would talk to anybody if they

2    have questions, if you would like to.  And we'll start the

3    next case in about 10 minutes.

4     (Whereupon, the proceedings were concluded at 1:22 p.m.)

5

6

7                    CERTIFICATE OF OFFICIAL REPORTER

8

9

10             I, Leigh B. Gershowitz, Registered Merit

11   Reporter and Certified Realtime Reporter, in and for the

12   United States District Court for the District of

13   Massachusetts, do hereby certify that the foregoing

14   transcript is a true and correct transcript of the

15   stenographically-reported proceedings held in the

16   above-entitled matter, to the best of my knowledge and

17   ability.

18

19

20                        /s/ Leigh B. Gershowitz_____

21                        Leigh B. Gershowitz, RMR, CRR

22

23

24

25

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| STEPHEN FOOTE., et al., | * | |
| | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | Civil Action No. 22-30041-MGM |
| | * | |
| TOWN OF LUDLOW, LUDLOW SCHOOL | * | |
| COMMITTEE, et al., | * | |
| | * | |
| Defendants. | * | |

<u>ORDER ON DEFENDANTS' MOTION TO DISMISS</u>
(Dkt. No. 25)

December 14, 2022

MASTROIANNI, U.S.D.J.

## I.    INTRODUCTION

Stephen Foote and Marissa Silvestri ("Plaintiffs") have alleged that during the 2020-2021 school year, staff employed by Ludlow Public Schools (1) spoke about gender identity with two of their children, who were then eleven and twelve years old and students at Baird Middle School; (2) complied with the children's requests to use alternative names and pronouns; and (3) did not share information with Plaintiffs about the children's expressed preferences regarding their names and pronouns. Plaintiffs allege these actions, and inactions, violated their fundamental, parental rights protected by the Fourteenth Amendment to the United States Constitution. They filed this action pursuant to 42 U.S.C. § 1983 to seek redress for their alleged injuries.

Plaintiffs assert three claims against the Town of Ludlow; the Ludlow School Committee; Lisa Nemeth, Interim Superintendent; Todd Gazda, former Superintendent; Stacy Monette, Principal of Baird Middle School; Marie-Claire Foley, school counselor at Baird Middle School; and

Jordan Funke, former librarian at Baird Middle School (collectively "Defendants"). First, they allege Defendants violated their fundamental parental right to direct the education and upbringing of their children. Second, they allege Defendants violated their fundamental parental right to direct the medical and mental health decision-making for their children. Finally, they assert Defendants violated their fundamental right to familial privacy.

Defendants have moved for dismissal of Plaintiffs' claims.[1] The court grants Defendants' motion for the reasons that follow.

## II.   MOTION TO DISMISS STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)); Fed. R. Civ. P. 12(b)(6). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. The court accepts all well-pleaded factual allegations and draws all reasonable inferences in Plaintiffs' favor, but "do[es] not credit legal labels or conclusory statements." *Cheng v. Neumann*, 51 F.4th 438, 443 (1st Cir. 2022). Dismissal is appropriate if the complaint fails to establish at least one "material element necessary to sustain recovery under some actionable legal theory." *Centro Medico del Turabo, Inc. v. Feliciano de Melecio,* 406 F.3d 1, 6 (1st Cir. 2005) (internal citation omitted).

---

[1] The court has also received and reviewed amici curiae memoranda submitted by GLBTQ Legal Advocates and Defenders and the Massachusetts Association of School Superintendents in support of Defendants and the Family Institute of Connecticut in support of Plaintiffs.

### III.   FACTUAL ALLEGATIONS[2]

During the 2020-2021 school year, Plaintiffs' children B.F. and G.F. were eleven and twelve years old and were students at Baird Middle School in Ludlow, Massachusetts. Early in the school year, school librarian Jordan Funke gave students in B.F.'s sixth grade class an assignment to make biographical videos. Funke invited students to include their gender identity and preferred pronouns in their videos. The students also received instruction about language that is inclusive of students with different gender identities.

In December 2020, B.F. spoke with a teacher and asked for help talking to Plaintiffs about concerns about depression, low self-esteem, poor self-image, and possible same-sex attraction. The teacher spoke with Silvestri, B.F.'s mother, and shared B.F.'s concerns with her. Shortly after that conversation, Silvestri sent an email to B.F.'s other teachers, Stacy Monette, Todd Gazda, and several members of the Ludlow School Committee. In her email, she stated that Plaintiffs were aware of the teacher's concerns about B.F.'s mental health, they would be getting B.F. professional help, and requested that no one receiving the email "have any private conversations with B.[F.] in regards to this matter." (Dkt. No. 22, Am. Compl. ¶ 70.)

On February 28, 2021, B.F. sent an email to Gazda, Marie-Claire Foley, and several teachers. In that email, B.F. identified as genderqueer and announced a new preferred name, one typically used by members of the opposite sex, and a list of preferred pronouns. Foley met with B.F. and, after their meeting, sent an email stating that B.F. was "still in the process of telling" Plaintiffs about B.F.'s gender identity and instructed school staff that they should not use B.F.'s new preferred name and pronouns when communicating with B.F.'s parents. Foley's position was consistent with a

---

[2] Plaintiffs' Amended Complaint included a section entitled "Factual Allegations" that contained a mix of "non-conclusory, non-speculative factual allegations" together with conclusory statements about the legal significance of various factual allegations. *Cheng*, 51 F.4th at 443. The court summarizes the factual allegations, which the court must credit at this stage, but omits the legal conclusions promoted by Plaintiffs. *Id.*

policy sanctioned by the School Committee, pursuant to which school personnel would only share information about a student's expressed gender identity with the student's parents if the student consented to such communication. After Foley sent her email, teachers at Baird Middle School began using B.F.'s new preferred name and pronouns.

In early March, the same teacher who had spoken with Silvestri in December informed Plaintiffs about B.F.'s email, despite the policy and B.F.'s request that Plaintiffs not be told. On March 8, 2021, Foley sent another email to school staff in which she reiterated that B.F. had expressly requested that Plaintiffs not be told about B.F.'s new first name. Several days later, Foley gave B.F. permission to use boys' bathrooms, girls' bathrooms, or gender-neutral bathrooms. Around this same time, G.F. also began using a different preferred name and school staff did not inform Plaintiffs.

On March 18, 2021, Monette met with Plaintiffs. During their meeting, Plaintiffs asserted that Defendants had disregarded their parental rights by not complying with Silvestri's December 2020 request that staff not engage with B.F. regarding mental health issues and by failing to notify them about their children's use of alternate names and pronouns. Plaintiffs also conveyed to Monette their belief that school staff were acting improperly by affirming B.F.'s and G.F.'s self-asserted gender identities. Monette refused to discuss the issues raised by Plaintiffs and ended the meeting abruptly.

Plaintiffs met with Gazda on March 21, 2021. During that meeting, they expressed concerns about negative consequences their children might experience as a result of being able to use names and pronouns associated with the opposite sex. They objected to the way school staff had disregarded their instructions and supported the children's use of different names and pronouns at school. Plaintiffs also told Gazda that they believed school staff violated their rights with respect to their children's student records by concealing information about their children from them.

4

In response, Gazda told Plaintiffs that school staff acted appropriately and consistently with policies approved by the School Committee when they began using the children's new names and pronouns without consulting with or notifying Plaintiffs. Gazda also asserted that school staff had not violated the Massachusetts regulation protecting parents' "rights of confidentiality, inspection, amendment, and destruction of student records" for students under the age of fourteen and not yet in ninth grade. 603 C.M.R. § 23.01. Gazda took the same positions when he met with Plaintiffs again on March 26, 2021.

Foley met with B.F. weekly throughout the spring of 2021. They discussed B.F.'s gender identity and mental health issues. During their conversations, Foley consistently affirmed B.F.'s gender identity. On some occasions, Foley expressed concern about whether Plaintiffs were providing appropriate care for B.F. and whether B.F. had sufficient support to stay safe. She asked whether B.F. was as comfortable discussing issues with the counselor chosen by Plaintiffs as with her and encouraged B.F. to speak with another counselor to increase sources of support. Foley did not communicate with Plaintiffs about B.F.'s gender identity or any other issues they discussed. B.F. also talked about gender identity with Funke. Funke was affiliated with an organization that shares resources related to gender and gender identity and Funke encouraged B.F. to visit the organization's website.

Later in the spring, Gazda publicly defended the Ludlow Public Schools policy. During School Committee meetings on May 25, 2021 and June 8, 2021, Gazda expressed support for the policy that instructed school staff to respect students' expressed gender identities and follow a student's preferences about whether to share information about the student's gender identity with the student's parents. He described the types of "parental rights" concerns raised by Plaintiffs as thinly-veiled intolerance and asserted that for some students who are transgender or gender nonconforming, school is the only safe place to express who they are.

### IV.    STATE LAWS, REGULATIONS, AND GUIDANCE REGARDING GENDER IDENTITY

States enjoy a general power to regulate the schools they support. *Parker v. Hurley*, 514 F.3d 87, 102 (1st Cir. 2008). This includes the power to prescribe a curriculum designed to promote tolerance and provide a safe learning environment for all students. *Id.* While parents do not have to send their children to public school, those who make that choice "do not have a constitutional right to direct *how* a public school teaches their child." *Id.* (internal quotation marks omitted) (emphasis in original).

The Commonwealth of Massachusetts recognizes gender identity as a personal characteristic deserving of protection from discrimination. Since July 1, 2012, Massachusetts law has provided that "[n]o person shall be excluded from or discriminated against . . . in obtaining the advantages, privileges and courses of study of [a] public school on account of . . . gender identity." Mass. Gen. Laws ch. 76, § 5. As defined under Massachusetts law, "gender identity" means "a person's gender-related identity, appearance or behavior, whether or not that gender-related identity, appearance or behavior is different from that traditionally associated with the person's physiology or assigned sex at birth." Mass. Gen. Laws ch. 4, § 7.

A person's "gender-related identity may be shown by providing . . . any . . . evidence that the gender-related identity is sincerely held as part of a person's core identity; provided, however, that gender-related identity shall not be asserted for any improper purpose." *Id.*; *see also* 603 C.M.R. § 26.01.  Neither the statute defining gender identity, nor the statute prohibiting schools from discriminating based on gender identity, limit the age at which a person can assert a gender identity that "is different from that traditionally associated with the person's physiology or assigned sex at birth." *Id.* Similarly, a separate provision of Massachusetts law related to minors and gender identity does not distinguish between children of different ages and, instead, provides a blanket prohibition against health care providers engaging in any practice, with any patient under the age of eighteen,

6

"that attempts or purports to impose change of an individual's . . . gender identity." Gen. Laws ch. 112, § 275.

The regulations implementing the anti-discrimination statute applicable to schools state that "[a]ll public school systems shall, through their curricula, encourage respect for the human and civil rights of all individuals regardless of . . . gender identity." 603 C.M.R. § 26.05. School committees are also required to "establish policies and procedures . . . that insure that all obstacles to equal access to school programs for all students regardless of . . . gender identity, are removed." 603 C.M.R. § 26.07(1). Although these laws and regulations were adopted before there was universal support for the values they protect, none were written to provide exceptions to permit parents to override a school's decision to support students who identify as transgender or gender nonconforming.

Additional, non-binding guidance for schools has been provided by the Massachusetts Department of Elementary and Secondary Education (DESE). The DESE Guidance provides that "[t]he responsibility for determining a student's gender identity rests with the student, or in the case of young students not yet able to advocate for themselves, with the parent." DESE, GUIDANCE FOR MASSACHUSETTS PUBLIC SCHOOLS CREATING A SAFE AND SUPPORTIVE SCHOOL ENVIRONMENT (hereafter "DESE Guidance"), https://www.doe.mass.edu/sfs/lgbtq/genderidentity.html#5. Schools are advised that "[t]here is no threshold medical or mental health diagnosis or treatment requirement that any student must meet in order to have his or her gender identity recognized and respected by a school." *Id.* The DESE Guidance also encourages schools to "engage the student, and in the case of a younger student, the parent, with respect to name and pronoun use." *Id.* Other than describing younger students as unable to advocate for themselves, the DESE Guidance does not advise schools to treat students of certain ages or grades differently from older students.

The DESE Guidance advises that not all transgender and gender nonconforming students are open about their gender identities with their families for reasons that can include safety concerns

and lack of acceptance. *Id.* When students self-identify to a school as transgender or gender nonconforming, the DESE Guidance advises that "[s]chool personnel should speak with the student first before discussing a student's gender nonconformity or transgender status with the student's parent or guardian" and "discuss with the student how the school should refer to the student, e.g., appropriate pronoun use, in written communication to the student's parent or guardian." *Id.* The provisions of the DESE Guidance related to communications with a student's family do not distinguish between older and younger students.

## V.   DISCUSSION

Plaintiffs have alleged Defendants' conduct violated three different fundamental parental rights protected under the substantive due process clause of the Fourteenth Amendment: (1) the right to direct the education and upbringing of their children (Count I), (2) the right to make medical and mental health decisions for their children (Count II), and (3) the right to family integrity (Count III). Defendants have moved for dismissal, pursuant to Fed. R. Civ. P. 12(b)(6), of all three of Plaintiffs' claims, as to all Defendants. They assert that even when the court credits the well-pleaded factual allegations, Plaintiffs' Amended Complaint fails to identify a substantive due process claim cognizable under 42 U.S.C. § 1983. Defendants also argue that any claims asserted against the individual defendants should be dismissed pursuant to the doctrine of qualified immunity.

The court begins its analysis by assuming the truth of Plaintiffs' factual allegations and identifying any statements in the complaint that merely offer legal conclusions couched as fact, since such conclusory statements are not entitled to the presumption of truth. *See Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011). Many factual allegations set forth in Plaintiffs' Amended Complaint are followed by statements that draw a conclusion about the nature or significance of the alleged fact. For example, the Amended Complaint contains factual allegations

about Defendants' responses to B.F.'s and G.F.'s requests to use their preferred names and pronouns followed by brief descriptors identifying the actions as "social transitioning," "mental health treatment" and, in one instance, as "psychosocial treatment." (*See e.g.* Dkt. No. 22, Am. Compl. ¶¶ 42, 43, 45, 46, 56, 74, 78, 84.) At the hearing on Defendants' Motion to Dismiss, Plaintiffs were equivocal as to whether Defendants' actions constituted actual mental health treatment or if either of their children had an actual existing mental health condition related to gender identity. While Plaintiffs maintained that Defendants were providing mental health treatment when they "permit[ted] [B.F. and G.F.] to be identified as either nonbinary or the opposite sex of what their bodies are," the Amended Complaint alleges insufficient facts for the court to conclude that the conduct at issue constituted mental health treatment. (Dkt. No. 48, Tr. Oct. 17, 2022 Hr'g, 14.) Although "social transitioning," "mental health treatment," and "psychosocial treatment" all appear to be terms of art, Plaintiffs have not provided the context necessary for the court to infer the alleged conduct had clinical significance, as the Amended Complaint describes the terms in a conclusory manner and contains no allegations that either minor had a diagnosed mental health condition related to gender identity.

"Being transgender is . . . not a psychiatric condition, and implies no impairment in judgment, stability, reliability, or general social or vocational capabilities." *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 594 (4th Cir. 2020), as amended (Aug. 28, 2020) (internal quotation marks omitted). Gender dysphoria is a recognized mental health disorder, but Plaintiffs have not alleged either child has been diagnosed with gender dysphoria, or even that Defendants erroneously believed the children suffered from gender dysphoria. *Id.* at 594-95. Plaintiffs have not alleged Defendants' actions were undertaken as part of a treatment plan for gender dysphoria or explained how referring to a person by their preferred name and pronouns, which requires no special training or skill, has clinical significance when there is no treatment plan or diagnosis in place. Similarly, there

are no non-conclusory allegations that social transitioning was actually occurring or includes supportive actions taken by third parties, as opposed to actions a person takes to understand or align their external gender presentation with their gender identity. Addressing a person using their preferred name and pronouns simply accords the person the basic level of respect expected in a civil society generally, and, more specifically, in Massachusetts public schools where discrimination on the basis of gender identity is not permitted. *See* Mass. Gen. Laws ch. 76, § 5. This is true regardless of an individual's age, provided the individual does not have a fraudulent purpose for using a new preferred name or pronouns. *Id.*

In the absence of supporting factual allegations, such as a relevant medically-recognized diagnosis and treatment plan, the court disregards Plaintiffs' conclusory statements describing the use of preferred names and pronouns as mental health treatment. Plaintiffs have failed to adequately allege that Defendants provided medical or mental health treatment to B.F. and G.F. simply by honoring their requests to use preferred names and pronouns at school. Accordingly, Plaintiffs have not adequately stated a claim that Defendants usurped their right to make medical and mental health treatment decisions for their children. Count II is, therefore, dismissed.

The court next considers whether the factual allegations are sufficient to state the substantive due process claims asserted in Counts I and III. The substantive due process guarantees of the Fourteenth Amendment protect individuals from arbitrary government actions that interfere with "those fundamental rights . . . which are . . . deeply rooted in this Nation's history and tradition." *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (internal quotation marks omitted). The Due Process Clause protects against egregious abuses by government actors, but does not "impos[e] liability whenever someone cloaked with state authority causes harm" or guarantee that officials will use care when acting on behalf of the state. *County of Sacramento v. Lewis*, 523 U.S. 833, 848-49 (1998). The vehicle for enforcing the substantive rights guaranteed under the Fourteenth

Amendment is 42 U.S.C. § 1983, which "affords a private right of action in favor of persons whose federally assured rights are abridged by state actors." *Kando v. Rhode Island State Bd. of Elections*, 880 F.3d 53, 58 (1st Cir. 2018).

"To be cognizable, a substantive due process claim under 42 U.S.C. § 1983 must allege facts so extreme and egregious as to shock the contemporary conscience." *Abdisamad v. City of Lewiston*, 960 F.3d 56, 59-60 (1st Cir. 2020) (internal quotation marks omitted); *see also Martinez v. Cui*, 608 F.3d 54, 64 (1st Cir. 2010) ("[T]he shocks-the-conscience test . . . governs *all* substantive due process claims based on executive, as opposed to legislative, action."). "[C]onduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Lewis*, 523 U.S. at 849.

At the motion to dismiss phase, substantive due process claims "must be carefully scrutinized to determine if the alleged facts support the conclusion that the state has violated an individual's constitutional rights." *Rivera v. Rhode Island*, 402 F.3d 27, 33 (1st Cir. 2005). Courts in the First Circuit take a "two-tiered approach" to substantive due process claims based on the behavior of state actors. *Martinez*, 608 F.3d at 64. Under this approach, a plaintiff must establish both conscience-shocking behavior by the defendant and "that a protected right was offended" by the defendant's conduct. *Id.* at 65. Generally, courts first determine whether the alleged conduct was sufficiently egregious because it is "[o]nly after 'show[ing] a constitutionally significant level of culpability' [that] a plaintiff [may] 'turn to establishing that a protected right was offended.'"[3] *Abdisamad*, 960 F.3d at 60 (quoting *Martinez*, 608 F.3d at 65).

---

[3] Prior to *Abdisamad*, the First Circuit stated that while courts have "typically looked first to whether the acts alleged were conscience-shocking," the two-tiered process need not be applied rigidly. *Harron v. Town of Franklin*, 660 F.3d 531, 536 (1st Cir. 2011). However, as the Supreme Court explained in *Lewis*, courts do not need to determine whether "to recogniz[e] a substantive due process right to be free of [the alleged] executive action" unless they first determine the "necessary condition of egregious behavior" has been satisfied. *Lewis*, 523 U.S. at 847 n.8. There is no reason to depart from the typical analytical framework in this case given the relatively vague manner in which Plaintiffs have described the asserted fundamental liberty interests allegedly violated by Defendants and connected those interests to historically-established fundamental rights and liberties. *See Glucksberg*, 521 U.S. at 721 (1997); *see also Martinez*, 608 F.3d at 65 n.9

During the hearing on Defendants' Motion to Dismiss, the court asked Plaintiffs to identify the specific allegations of conscience-shocking conduct supporting their claims. Plaintiffs argued generally that Defendants' adoption and implementation of a policy of withholding information about a student's gender identity deprived Plaintiffs of their rights to make decisions about the upbringing of their children and intentionally undermined the parent/child relationship in a manner that shocks the conscience. The court understands this conduct, as alleged, to be offered in support of Plaintiffs' claims in Counts I and III.

There is no precise definition for conscience-shocking behavior that can be applied mechanistically to Plaintiffs' allegations. *See DePoutot v. Raffaelly*, 424 F.3d 112, 118 (1st Cir. 2005). However, a "stunning" level of arbitrariness that goes beyond "[m]ere violations of state law" is required. *Pagán v. Calderón*, 448 F.3d 16, 32 (1st Cir. 2006) (internal quotation marks omitted). Bad faith may help tip the scale, but "the contemporary conscience is much more likely" to be shocked by conduct that was "intended to injure in some way unjustifiable by any government interest." *DePoutot*, 424 F.3d at 119 (internal quotation marks omitted). The nature of the right violated and the government's competing interests, if any, may inform the determination of whether particular behavior shocks the conscience. *See Martinez*, 608 F.3d at 66. "Indeed, '[a] hallmark of successful challenges is an extreme lack of proportionality, as the test is primarily concerned with violations of personal rights so severe[,] so disproportionate to the need presented, and so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience.'" *Harron v. Town of Franklin*, 660 F.3d 531, 536 (1st Cir. 2011) (quoting *González-Fuentes v. Molina*, 607 F.3d 864, 881 (1st Cir. 2010)) (alterations in original).

(describing the two-tiered approach as beginning with the level of culpability, while also observing "some tension between how *Lewis* and *Glucksberg* described the order in which courts should proceed to identify whether a plaintiff has identified a protected right").

Often, "an exact analysis of circumstances" is needed "before any abuse of power [can be] condemned as conscience shocking." *Lewis*, 523 U.S. at 850. Here, the circumstances certainly include the facts Plaintiffs have alleged about the conduct of various defendants. These include: inviting students to provide their preferred pronouns as part of a personal biography project; sharing information about gender identity with B.F.; failing to respond to Silvestri's December 2020 email; engaging in supportive discussions with B.F. about gender identity; facilitating B.F.'s and G.F.'s use of their preferred names and pronouns while at school; deciding not to notify Plaintiffs when B.F. and G.F. began using different preferred names and pronouns; and publicly describing the views of individuals, including parents, who oppose Ludlow Public School policies for supporting transgender and gender nonconforming students, as intolerant and hateful. The relevant circumstances also include Massachusetts laws and regulations regarding gender identity, which establish a significant government interest in providing students with a school environment in which they may safely express their gender identities,[4] regardless of their ages or the preferences of their parents. Plaintiffs have not challenged the constitutionality of these laws.

Plaintiffs have framed their claims in the context of their rights as parents to make decisions for their children without state interference. Defendants have framed their actions in the context of obligations under Massachusetts law to provide a nondiscriminatory environment to all their students. At the hearing on Defendants' motion, Plaintiffs acknowledged that Defendants were not permitted to discriminate on the basis of gender identity, but asserted that Defendants' adoption and implementation of a policy of withholding information about their children's gender identity from parents went beyond what the law required and intentionally undermined the parent/child relationship in a manner that shocks the conscience.

---

[4] Provided, of course, that there was no evidence that a student had asserted a particular gender identity for an improper purpose. *See* Mass. Gen. Laws ch. 4, § 7.

On its face, the Massachusetts non-discrimination statute does not require such a policy and it is disconcerting that school administrators or a school committee adopted and implemented a policy requiring school staff to actively hide information from parents about something of importance regarding their child. Indeed, in an earlier case, this court recognized that deception by school officials could shock the conscience where the conduct obscured risks to a person's bodily integrity and was not justified by any government interest. *See Hootstein v. Amherst-Pelham Reg. Sch. Comm.*, 361 F. Supp. 3d 94, 112 (D. Mass. 2019). In that case, the plaintiff alleged school officials made deceptive statements about the safety of school drinking water that obscured the risks he faced when he drank water at the school and the deception violated his right to bodily integrity.[5] *Id.* Here, the court must consider the specific facts of this case—including the government interest, if any, served by Defendants' conduct—to determine whether Plaintiffs have met their burden of identifying conscience-shocking conduct.

In December 2020, B.F. talked with a teacher about mental health concerns and possible same-sex attraction and expressed relief and gratitude when the teacher offered to talk with Plaintiffs about those concerns. The teacher then contacted B.F.'s mother (Silvestri), who responded by sending an email to B.F.'s teachers, Monette, Gazda, and members of the School Committee, in which she stated that Plaintiffs were getting B.F. professional help and requested that school staff not have any further private conversations with B.F. related to the concerns the teacher and B.F. had discussed. Two months later, B.F. identified as genderqueer, announced a new preferred name and list of preferred pronouns and, in contrast to December, did not ask for help talking with Plaintiffs. Instead, B.F. asked school staff to wait to use the new name and pronouns with Plaintiffs until after B.F. told Plaintiffs about them. Despite B.F.'s request and the alleged policy, the same teacher who

---

[5] The plaintiff in *Hootstein* was a grandparent proceeding pro se and only his own bodily integrity claim survived the motion to dismiss because, as a pro se litigant, he could not bring claims on behalf of others.

talked with Silvestri in December 2020 informed Silvestri about Plaintiff's gender identity. This contact with B.F.'s parents was made in violation of school policy and without administrative approval. Upon learning that B.F. was using a new name and pronouns at school, Plaintiffs met with Monette. They asserted school staff were acting illegally by allowing their children to use preferred names and pronouns without parental permission. Following that meeting, Defendants deferred to the preferences of B.F. and G.F. and did not share any information about their gender identities with Plaintiffs.

Massachusetts has identified a strong government interest in providing all students, regardless of age, with a school environment safe from discrimination based on gender identity. Under Massachusetts law, a person may establish their gender identity with "any . . . evidence that the gender-related identity is sincerely held as part of [the] person's core identity," except that "gender-related identity shall not be asserted for any improper purpose." Mass. Gen. Laws ch. 4, § 7; *see also* 603 C.M.R. § 26.01. There is no statutory limitation on the age at which an individual may assert a gender identity "different from that traditionally associated with the person's physiology or assigned sex at birth," and no exception that would allow a parent's beliefs to supersede a minor's sincerely held beliefs. *Id.; see also* Mass. Gen. Laws ch. 112, § 275 (barring gender conversion therapy for all minors).

Though non-binding, the DESE Guidance related to gender identity also provides relevant context for Defendants' actions. The DESE Guidance emphasizes the importance of creating a safe and supportive environment for students and encourages schools to work with students to develop plans for use of preferred names and pronouns. "[I]n the case of a younger student," DESE advises schools to create a plan with input from parents, but DESE has not defined younger students, other than by describing them as "not yet able to advocate for themselves." DESE Guidance, https://www.doe.mass. edu/sfs/lgbtq/genderidentity.html#5. The DESE Guidance also

encourages schools to consult with students who assert a different gender identity at school before disclosing information about a student's gender identity to the student's family.

Plaintiffs assert the Ludlow Public Schools adopted and implemented a policy that went beyond the DESE Guidance and rigidly prohibited any communication with parents about a student's gender identity unless the student consented and this policy shocked the conscience, at least when applied to students in middle school. The court agrees that the policy, as described by Plaintiffs, was based on a flawed interpretation of the DESE Guidance and ignored the plain language advising that parents be informed after the student is advised that such communication will occur. *See id.* ("School personnel should speak with the student first before discussing a student's gender nonconformity or transgender status with the student's parent or guardian."). Students and parents would almost certainly be better served by a more thoughtful policy that facilitated a supportive and safe disclosure by the student, with support and education available for students and parents, as needed and when accepted. Such a policy should also consider the many complicated and emotional issues and scenarios that may arise when this type of information is shared. Beliefs, understanding, and opinions surrounding this subject may evolve in a positive way with the benefit of information and honest dialogue. But, currently, the topic may also evoke negative or harmful reactions, which also must be considered. This is especially true when, as in this case, the students are old enough to independently assert their transgender or gender nonconforming identity, but still many years away from adulthood. Unlike the alleged Ludlow Public Schools policy, a policy that facilitates communication between students and parents would be consistent with the DESE Guidance and its recommendation to avoid surprising students when informing parents about the matter.

However, even if Defendants' policy was imperfect and contrary to the non-binding DESE Guidance, the alleged policy was consistent with Massachusetts law and the goal of providing

transgender and gender nonconforming students with a safe school environment. This case involves a difficult and developing issue; schools, and society as a whole, are currently grappling with this issue, especially as it relates to children and parents. *See Martinez*, 608 F.3d at 66 ("[W]hether behavior is conscience-shocking may be informed . . . by the nature of the right violated."). While the court is apprehensive about the alleged policy and actions of the Ludlow Public Schools with regard to parental notification, it cannot conclude the decision to withhold information about B.F. and G.F. from Plaintiffs was "so extreme, egregious, or outrageously offensive as to shock the contemporary conscience," given the difficulties this issue presents and the competing interests involved. *DePoutot*, 424 F.3d at 119. As conscience-shocking conduct is a necessary element for a substantive due process claim, the court ends its analysis here, without assessing whether Plaintiffs have adequately identified their protected rights and established they were offended under these facts. *See Abdisamad*, 960 F.3d at 60.

Finally, having determined that Plaintiffs' Amended Complaint should be dismissed on substantive grounds, it is not necessary for the court to address Defendants' arguments regarding qualified immunity. However, the court briefly notes that had Plaintiffs' Amended Complaint survived the substantive analysis, qualified immunity would warrant dismissal of the claims asserted against all individual defendants. *See id.* ("Individual government officials may be sued 'for federal constitutional or statutory violations under § 1983,' though 'they are generally shielded from civil damages liability under the principle of qualified immunity.'"). Qualified immunity shields individual government actors from liability unless the plaintiff can demonstrate both that the "the defendant violated the plaintiff's constitutional rights" and that "the right at issue was 'clearly established' at the time of the alleged violation." *Est. of Rahim by Rahim v. Doe*, 51 F.4th 402, 410 (1st Cir. 2022).

To satisfy the "clearly established" prong, a "plaintiff must 'identify either controlling authority or a consensus of persuasive authority sufficient to put [a state actor] on notice that his

conduct fell short of the constitutional norm.'" *Id.* (quoting *Conlogue v. Hamilton*, 906 F.3d 150, 155 (1st Cir. 2018)). While "there need not be a case directly on point," a plaintiff must be able to identify "precedents existing at the time of the incident [that] establish[ed] the applicable legal rule with sufficient clarity and specificity" that the defendant was on notice that their conduct would violate the rule. *McKenney v. Mangino*, 873 F.3d 75, 82-83 (1st Cir. 2017) (internal quotation marks omitted). Here, Plaintiffs would have to identify authority addressing sufficiently similar facts occurring where similar state laws applied. That authority would either need to be binding in Massachusetts or demonstrate a consensus among persuasive authorities such that the individual defendants should have known their actions violated Plaintiffs' parental rights protected by substantive due process.

Having reviewed all the cases cited by Plaintiffs, the court finds they do not meet this burden. First, the court observes that legal protections for gender identity are a recent development and a broad awareness of issues surrounding the topic of gender identity is still growing. Second, as discussed above, Defendants did not provide mental healthcare to Plaintiffs' children when supporting their use of preferred names and pronouns. Finally, consistent with principles established in *Meyer v. Nebraska*, 262 U.S. 390 (1923) and *Pierce v. Society of Sisters*, 268 U.S. 510 (1925), Plaintiffs' right to direct the upbringing of their children allows them to "choose between public and private schools," but does not give them a right "to interfere with the general power of the state to regulate education." *Parker*, 514 F.3d at 102. Here, the individual defendants' respective decisions not to share information with Plaintiffs about their children's gender identities complied with a Ludlow Public Schools policy which, though not required by, was consistent with Massachusetts laws that have not been challenged by Plaintiffs.

## VI.   CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss (Dkt. No. 25) is

ALLOWED. Plaintiffs' Amended Complaint (Dkt. No. 22) is dismissed and this case may now be

closed.

It is so Ordered.

 /s/ Mark G. Mastroianni                
MARK G. MASTROIANNI
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| STEPHEN FOOTE, et. al. | ) | |
| Plaintiffs, | ) | |
| v. | ) | CASE NO. 3:22-cv-30041-MGM |
| | ) | |
| TOWN OF LUDLOW, LUDLOW | ) | |
| SCHOOL COMMITTEE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**NOTICE OF APPEAL**

Notice is hereby given that Plaintiffs in the above-captioned case appeal to the United States Court of Appeals for the First Circuit from this Court's December 14, 2022, Order granting Defendants' Motion to Dismiss [Doc. 51].

     Respectfully submitted,

Andrew Beckwith
MA Bar No.  657747
Massachusetts Family Institute
401 Edgewater Place, Suite 580
Wakefield, MA 01880
781.569.0400
andrew@mafamily.org

*/s/Mary E. McAlister*
Vernadette R. Broyles (GA Bar No. 593026)*
Mary E. McAlister (VA Bar No. 76057)*
CHILD & PARENTAL RIGHTS CAMPAIGN, INC.
5805 State Bridge Rd., Suite G310

1

Johns Creek, GA 30097
770.448.4525
vbroyles@childparentrights.org
mmcalister@childparentrights.org
*admitted pro hac vice
Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed

electronically with the Court on January 11, 2023. Service will be effectuated by

the Court's electronic notification system upon all counsel or parties of record.


*/s/Mary E. McAlister*
Mary E. McAlister

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on this 20th day of March, 2023.

*/s/ Mary E. McAlister*
Mary E. McAlister, Esq.